**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GENERAL ELECTRIC COMPANY**<br><br>        **Plaintiff,**<br><br>                **v.**<br><br>**STEPHEN L. JOHNSON, Acting Administrator, United States Environmental Protection Agency, and the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**<br><br>        **Defendant.** | **Civil Action No.  00-2855 (JDB)** |

**MEMORANDUM OPINION**

Plaintiff General Electric Company ("GE" or "plaintiff") has brought a broad constitutional challenge to section 106 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA" or "the Act"), 42 U.S.C. § 9601 et seq.  GE seeks a declaratory judgment that section 106, 42 U.S.C. § 9606, in tandem with sections 107(c)(3) and 113(h), 42 U.S.C. §§ 9607(c)(3), 9613(h), creates a regime that violates the Due Process Clause of the Fifth Amendment. Am. Compl. at ¶ 1.  Presently before the Court is the motion for summary judgment of defendants the United States Environmental Protection Agency and its acting administrator, Stephen L. Johnson (collectively "EPA" or "defendant").[1]

EPA's motion for summary judgment contends that GE's constitutional challenge to

_____

[1]  The Acting Administrator of EPA has been substituted pursuant to Fed.R.Civ.P. 25(d)(1).

CERCLA is a facial challenge limited to review of the text of CERCLA.  According to EPA, such a facial challenge to a statute is analyzed under the Salerno doctrine, which dictates that a plaintiff must establish that a statute is unconstitutional in every application.  See United States v. Salerno, 481 U.S. 739 (1987).  EPA argues that, at the very least, CERCLA is constitutional in emergency situations, and therefore GE's facial constitutional challenge must fail.

GE counters that it has alleged not only a due process violation based on the text of CERCLA, but also that EPA's pattern and practice of administering section 106 of CERCLA creates a procedural due process violation.  According to GE, its pattern and practice claim survives the jurisdictional bar of section 113(h) as interpreted in the D.C. Circuit's prior decision in this case.  See General Elec. Co. v. Environmental Protection Agency, 360 F.3d 188 (D.C. Cir. 2004).  GE also urges the Court to permit discovery on both its claims prior to considering EPA's motion for summary judgment.

For the reasons discussed below, the Court will grant EPA's motion for summary judgment on GE's facial challenge to the text of CERCLA.  The Court also concludes, however, that GE has alleged a "pattern and practice" constitutional claim, which is neither precluded by section 113(h) and the earlier decision of the D.C. Circuit nor the subject of EPA's motion.  Therefore, GE may proceed with discovery on that claim.

## BACKGROUND

I.      **The CERCLA Framework**[2]

CERCLA is "a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." Key Tronic Corp. v. United States, 511 U.S. 809, 814 (1994).  CERCLA requires that sites contaminated by toxic wastes be abated and cleaned up expeditiously by, or at the expense of, "those responsible for the hazardous condition." Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 936 (8th Cir. 1995).

CERCLA contemplates two distinct kinds of clean-up actions arising under its statutory framework:  removal actions and remedial actions.  See 42 U.S.C. §§ 9601(23)-(24).  Removal actions, which occur before remedial action is undertaken, are short-term actions taken to halt any immediate risks posed by hazardous wastes.  Id. § 9601(23).  Remedial actions are more permanent remedies taken to clean up contamination, and are "taken instead of or in addition to removal actions." Id. § 9601(24).

Section 122 of CERCLA authorizes EPA to initiate negotiations with potential responsible parties ("PRPs") to "allow [for] expedient and efficient settlements of potential liability." Dravo Corp. v. Zuber, 13 F.3d 1222, 1227 (8th Cir. 1994); 42 U.S.C. § 9622.  If negotiations fail, one option under CERCLA for cleaning a hazardous waste site is for EPA to perform the remediation itself, using money taken out of the Superfund established by Congress.  EPA would then bring an action in federal district court under section 107 of CERCLA to recover its costs from parties responsible for the contamination.  See 42 U.S.C. §§ 9607(a)(4)(A), 9611(a).

_____

[2] A more comprehensive discussion of the CERCLA framework is provided in the March 31, 2003 decision of this Court.  See General Elec. Co. v. Whitman, 257 F.Supp.2d 8, 12-14 (D.D.C. 2003).

On the other hand, section 106 allows EPA to order parties to clean a site contaminated with hazardous waste, and to file a civil action in federal district court to compel a party to comply with EPA's proposed remedy.  42 U.S.C. § 9606(a).  Section 106 administrative orders lie at the heart of GE's due process challenge in this case.  See Am. Compl. ¶ 2.  Before issuing a section 106 order, EPA must determine "that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility."  42 U.S.C. § 9606(a).

Under the penalty provision of section 106(b), any person who, "without sufficient cause," willfully violates a section 106 order, or fails or refuses to comply with such an order, may be fined up to $25,000 for each day the violation or non-compliance continues.  Id. § 9606(b).  In addition, under section 107, a party who fails to comply with a section 106 order also faces the possibility of punitive damages up to three times "the amount of any costs incurred by the [Superfund] as a result of such failure to take proper action."  Id. § 9607(c)(3).

These fines and penalties are not automatic under CERCLA -- EPA must bring a civil action in district court to compel compliance with its order.  Even then, the district court has discretion as to whether noncompliance warrants a fine, penalties, or punitive damages, and if so, how much.  Id.  Under the statute, if the district court determines that a party had "sufficient cause" for not complying with the order, no penalties or fines can be imposed.  See id. §§ 9606(b), 9607(c)(3).  Even if a party is unable to establish a "sufficient cause" defense, the statute does not mandate issuance of the prescribed fines and penalties, but rather the district court has discretion to determine the amount of civil fines or penalties up to the statutory maximum of $25,000 per day.  See id.

The scope, nature and limits of judicial review of EPA actions under CERCLA are set out in section 113.  See id. § 9613.  The thrust of section 113(h) is that one cannot obtain pre-enforcement review of EPA orders (including section 106 orders) or EPA response actions with respect to a contaminated site.

## II.    Procedural History

GE filed its Complaint on November 28, 2000, which it then amended on March 14, 2001.  GE's Amended Complaint contains a two-pronged "facial" challenge to CERCLA.  First, according to GE, the text of CERCLA itself gives rises to a procedural due process violation because PRPs are never afforded a meaningful hearing to challenge the issuance of an administrative order, and thus suffer a deprivation of property without a hearing; moreover, the CERCLA penalty scheme is so coercive it amounts to a due process violation under Ex Parte Young, 209 U.S. 123 (1908).  See Am. Compl. ¶¶ 21-28, 50, 54.  Second, GE contends that EPA's "pattern and practice" of administering CERCLA violates GE's due process rights.  Id. ¶¶ 17-20, 51-52, 54.  Under this second theory, GE alleges that EPA:  uses section 106 orders in non-emergency situations; administers the statute to affect a deprivation of property without a hearing; administers section 106 so that PRPs are not provided prompt hearings after suffering a property deprivation; and administers the fines and penalties provisions coercively to create a due process violation under Ex Parte Young.

In March 2001, EPA moved to dismiss GE's Amended Complaint for lack of subject matter jurisdiction.  EPA argued that this Court lacked subject matter jurisdiction to consider GE's constitutional challenges to CERCLA because section 113(h) operates to delay judicial review of any section 106 order until after the clean up is complete.  This Court granted EPA's motion to

dismiss, concluding that section 113(h) precluded judicial review of GE's claims as framed.  See

General Elec. Co., 257 F.Supp.2d at 12.  On March 2, 2004 the D.C. Circuit reversed that

decision, and instructed this Court on remand to consider the merits of what it called GE's facial

due process challenge to CERCLA.  See General Elec. Co., 360 F.3d at 194.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56(c).  The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion

by "informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Id. (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude

summary judgment, the court must regard the non-movant's statements as true and accept all

evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere

existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the

absence of evidence proffered by the non-moving party, a moving party may succeed on summary

judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

## ANALYSIS

According to EPA, GE makes only one constitutional challenge to CERCLA -- a facial challenge based on the text of the statute.  See Def. Mot. at 16.  With respect to that claim,  EPA moves for summary judgment on two grounds:  that under the Salerno doctrine GE's facial constitutional claim must fail because, at the very least, CERCLA is constitutional in emergency situations, and, alternatively, that GE cannot show that the challenged provisions of CERCLA violate due process.  EPA also contends that GE's "pattern and practice" claim is barred by section 113(h) as previously interpreted by the D.C. Circuit in this case.  GE counters that it has stated and can pursue both of its due process challenges to CERCLA -- textual and pattern and practice. GE thus argues that neither challenge is precluded and discovery should proceed.

**I.      Doe GE Present a Pattern and Practice Challenge?**

The threshold issue concerns the exact nature of GE's constitutional claim.  EPA characterizes GE's claim as a facial challenge addressed to the text of CERCLA.  See Def. Mot. at 3.  EPA contends that is how the D.C. Circuit understood GE's claim when it said "we remand the case to the district court to address the merits of GE's facial due process claim."  General Elec. Co., 360 F.3d at 194.  GE responds that its constitutional challenge to CERCLA is two-pronged. First, GE asserts that the text of CERCLA creates a procedural due process violation because PRPs suffer a deprivation of property but never receive a meaningful hearing under section 106, and the fines and penalties scheme of sections 106 and 107 is coercive under Ex Parte Young. Second, GE alleges that EPA has a pattern and practice of administering section 106 (in

conjunction with sections 107 and 113) in a manner that denies PRPs the necessary protections of procedural due process.

When assessing the claims made by a party in litigation, this Court is guided by the "generous rules governing federal pleading." Grogan v. General Maintenance Serv. Co., 763 F.2d 444, 449 (D.C. Cir. 1985).  Under notice pleading rules, it is not necessary for a party to articulate in its complaint, with specificity, "the legal theories upon which he or she bases the claim." See id. (citing Hanson v. Hoffmann, 628 F.2d 42, 53 (D.C. Cir. 1980)).  Applying those principles to GE's one-count Amended Complaint, the Court concludes that GE sets forth sufficient notice as to both of its theories challenging the constitutionality of CERCLA.  First, the parties do not dispute that GE alleges a due process violation based on the text of CERCLA.  See Am. Compl. ¶ 54 ("CERCLA fails to provide a prompt and meaningful opportunity for administrative or judicial hearing on an order after it has been issued.").  Second, there is language within GE's Amended Complaint to support its position that it has also alleged a due process violation based on the pattern and practice of EPA's administration of CERCLA.  In particular, the Amended Complaint makes several references to EPA administration of section 106.  See, e.g., Am. Compl.  ¶ 2 ("EPA can and does issue unilateral orders compelling massive and onerous remediations of merely potential environmental hazards."); ¶ 51 ("EPA has exercised and will continue to exercise vast discretion in issuing coercive and burdensome orders, often in a highly arbitrary manner, without any meaningful statutory standards or procedural or judicial safeguards to limit its power.").

Such language in GE's Amended Complaint provides sufficient confirmation for the Court that GE has pled a due process violation on both its legal theories -- the text of CERCLA as well as EPA's pattern and practice of administering the statute.  Although, over the course of this

litigation, the specifics of GE's constitutional challenge to section 106 have, to put it mildly, evolved, this Court will treat GE's Amended Complaint as raising both a textual challenge and a pattern and practice challenge to CERCLA.

     A.     The D.C. Circuit's Decision in <u>General Elec. Co.</u>

Acknowledging that GE has pled a pattern and practice claim is one thing.  Whether GE may pursue the merits of its pattern and practice claim in light of the D.C. Circuit's prior opinion in this case is a separate inquiry altogether.  EPA would have the Court find that to the extent GE has alleged a pattern and practice claim, such a claim is barred by that decision and section 113(h).  The opinion of the D.C. Circuit provides considerable support for EPA's position regarding the viability of GE's pattern and practice claim.  EPA emphasizes the holding of the decision: "[w]e hold that the plain text of § 113(h) does not bar GE's facial constitutional challenge to CERCLA."  <u>General Elec. Co.</u>, 360 F.3d at 189.  EPA also points to other instances in which the court characterized GE's existing claim as "facial."  <u>Id.</u> at 190, 191.  A facial challenge, argues EPA, is limited to the text of the statute.  <u>See</u> <u>Dep't of Taxation and Finance of New York v. Milhelm Attea & Bros.</u>, 512 U.S. 61, 69 (1994).  Moreover, the court of appeals observed that "GE's due process challenge to CERCLA's administrative orders regime is not a challenge to the way in which EPA is administering the statute . . . but rather it is a challenge to the CERCLA statute itself."  <u>General Elec. Co.</u>, 360 F.3d  at 191.  Finally, the court noted that GE "does not challenge any particular action or order by EPA."  <u>Id.</u>

It would be inconsistent with all this language, and the holding of the D.C. Circuit, says EPA, if the decision were read to permit GE to pursue a pattern and practice claim.  According to EPA, there are only two methods for challenging the constitutionality of a statute -- facial or as-

applied, see Def. Reply at 1-- and the D.C. Circuit was clear that GE may pursue its "facial" claim.

Therefore, argues EPA, only GE's challenge to the text of the statute is permitted.

Although the D.C. Circuit's decision frequently refers to GE's challenge as "facial,"

excessive reliance upon semantics or labels may confuse the thrust of the decision.  The court

draws an important descriptive and substantive connection between facial and systemic claims,

which supports GE's position that its pattern and practice claim is, like a facial claim, viable.  The

court uses language that draws an analogy between a "facial" and a "systemic" claim.  See General

Elec. Co., 360 F.3d at 192 ("our holding that GE's constitutional challenge is not barred by §

113(h) would comport with precedent distinguishing between facial, or 'systemic,' and as-applied,

or particularized challenges").  The court later distinguishes between "systemic and particularized

challenges" concluding that section 113(h) of CERCLA does not bar GE's claim.  See id. at 192-

93.

More importantly, the court builds on that analogy between facial and systemic claims

through relevant case law and the text and purpose of section 113(h) to confine the jurisdictional

bar to only those claims challenging a specific order.  See id. at 192-194.  Like a facial challenge,

a pattern and practice claim does not address only specific orders -- it is a broader systemic

challenge.  The D.C. Circuit has thus placed claims such as GE's pattern and practice claim within

the sphere of claims that can be brought notwithstanding section 113(h).

As the D.C. Circuit notes, other cases have permitted "facial or systemic" claims to

proceed, notwithstanding jurisdictional bars to judicial review similar to section 113(h).  See

Johnson v. Robison, 415 U.S. 361, 373-74 (1974); Lepre v. Dep't of Labor, 275 F.3d 59, 67-68

(D.C. Cir. 2001) ("the Secretary's generic use of the mailbox rule - is both 'structural' and

'systemic,' and therefore review is not barred by § 8128(b)'s bar on review of specific 'action' of

the Secretary").  The most revealing decision relied upon by the D.C. Circuit along this line is

McNary v. Haitian Refugee Center, Inc., 498 U.S. 479 (1991).  In McNary, the plaintiff class

brought a challenge to the manner in which the Immigration and Naturalization Service ("INS")

was administering the Special Agricultural Worker ("SAW") provision.  Although judicial review

of a specific application was barred, the Supreme Court held that the plaintiff class was not

precluded from challenging "unconstitutional practices and policies used by the agency in

processing applications."  See McNary, 498 U.S. at 492.  The D.C. Circuit in General Elec. Co.

directly applied the reasoning of the Supreme Court in McNary to find that a bar to judicial

review, such as that in section 113(h) of CERCLA, does not preclude the type of systemic claim

raised in McNary, and hence the facial and systemic claims here.  See 360 F.3d at 192.

    The D.C. Circuit found that the language of section 113(h) limits the jurisdictional bar

only to challenges of specific section 106 orders.  Id. at 192-193.  The court observed that if

Congress had wanted to delay judicial review of broader constitutional challenges to CERCLA,

i.e., systemic claims, Congress certainly could have used such language.  Id. at 192 ("As is no less

true for CERCLA, the Court in McNary stated, 'had Congress intended the limited review

provisions of [the jurisdictional bar] to encompass [systemic, collateral] challenges to [agency]

procedures and practices, it could easily have used broader statutory language . . .'") (quoting

McNary, 498 U.S. at 494).  The court's discussion of the limited scope of the text of section

113(h) thus provides further support of an intent to permit GE's pattern and practice claim.

    Finally, the D.C. Circuit observed that limiting section 113(h) to challenges to specific

section 106 orders comports with the purposes of section 113(h).  See General Elec. Co., 360 F.3d

at 194.  Section 113(h) is intended to prevent litigation from hindering or delaying a clean up

effect.  Id.  However, a claim such as GE's pattern and practice challenge does not impair those

important policy considerations underlying section 113(h), because a favorable decision for GE

would only require additional procedures to be provided to GE prior to the issuance of a section

106 order.  See id.  Although the pattern and practice claim may require discovery, it does not

require any site-specific facts, nor "does it depend on the type of information available only after

site clean-up is completed."  Id.  Most importantly, because GE's pattern and practice claim is not

based on any specific order, litigation of this systemic claim does not delay any specific clean up.

     EPA would have the Court disregard this discussion by the D.C. Circuit.  EPA argues that

the court's use of the term "systemic" and its discussion of McNary are simply illustrative of the

scope of possible claims in a statutory setting subject to a jurisdictional bar like section 113(h).

According to EPA, the two principal reasons GE's pattern and practice claim does not survive the

D.C. Circuit decision are the language the court used to describe GE's claim -- facial -- and the

fact that GE's pattern and practice challenge does not exist as an independent constitutional

theory.  These arguments do not convince this Court that GE's pattern and practice claim is

precluded by section 113(h) as construed and applied by the D.C. Circuit.

     If, as EPA argues, the D.C. Circuit in citing McNary was merely setting forth an example

of the type of claim that could be brought in a similar statutory setting, then it is implicit that

section 113(h) would not bar GE's pattern and practice claim.  Even if the court was not directly

addressing GE's pattern and practice claim through its discussion of McNary, that discussion

cannot be disregarded.  By setting out examples of the types of claims that can be brought

notwithstanding a section 113(h)-type jurisdictional bar, the court necessarily was indicating that

under section 113(h) a "systemic" constitutional challenge, like GE's pattern and practice claim, could be pursued.  Therefore, although the D.C. Circuit did not directly address GE's pattern and practice claim, this Court concludes that the court of appeals would not bar GE's pattern and practice claim in light of its analysis and application of McNary.

If the D.C. Circuit meant to remand only a narrow textual challenge, some discussion delineating GE's claims might be expected.  As discussed above, GE's Amended Complaint sets forth a basis for both of GE's legal theories.  Moreover, GE argues that it put before the D.C. Circuit both of its claims regarding CERCLA.  See Pl. Opp. at 9.  Nonetheless, the D.C. Circuit speaks broadly about GE's claim, never indicating it was remanding only a challenge to the text of CERCLA but not the systemic pattern and practice claim.  In fact, the court states that although a constitutional challenge to the administration of CERCLA may be subject to section 113(h), because GE's claim in this case does not challenge an order issued under section 106, "GE's amended complaint sets forth a 'constitutional challenge to the CERCLA statute [that] is not covered by [§ 113(h)].'"  General Elec. Co., 360 F.3d at 191 (quoting Reardon v. United States, 947 F.2d 1509, 1515 (1st Cir. 1991)).  This broad language casts significant doubt on EPA's interpretation that the court only remanded a textual claim.

EPA's assertion that GE's pattern and practice claim does not independently exist neglects the several citations in the appellate decision to other cases that have recognized such claims.  See 360 F.3d at 192.  In Lepre v. Dep't of Labor, for example, the court permitted a challenge to the "systemic procedures" utilized in the administration of the statute.  See 275 F.3d at 67-68.  In McNary, the plaintiff class was challenging the INS practice in administering the SAW provision.  See 498 U.S. at 492.  GE's legal theory of a pattern and practice claim has thus been recognized in

other cases, and presents a cognizable legal theory.

B.      Standing

EPA also argues that GE lacks standing to bring a pattern and practice claim.  In <u>McNary</u>

the broad challenge to INS's administration of SAW was brought by a class of plaintiffs.  <u>See</u> 498

U.S. at 487.  EPA asserts that GE's pattern and practice challenge necessarily raises third party

claims, for which it does not have standing.  Therefore, under EPA's reasoning, GE alone cannot

bring a pattern and practice claim because it cannot meet the constitutional standing  requirements

to raise third party claims -- injury in fact, causality, and redressability.

This argument fails to recognize the true nature of GE's claim.  GE does not make a claim

on behalf of other PRPs, and no relief is sought on their behalf.  Instead, GE alleges that EPA's

pattern and practice in administering the section 106 order regime in CERCLA violates due

process, and GE seeks broad declaratory and injunctive relief to address that violation, but no

relief as to specific section 106 orders.  GE's standing to bring this claim is based upon the fact

that this allegedly unconstitutional practice has been applied to and injured GE.  <u>See</u> Am. Compl.

¶¶ 29-47 (setting out instances in which section 106 orders have been issued to GE).  EPA's

alleged pattern and practice as it pertains to other PRPs is not an element of the claim for relief

raised by GE, although it certainly would be evidence of the alleged unconstitutional pattern and

practice.  Because GE has asserted that section 106 orders have issued against it in the past

pursuant to EPA's allegedly unconstitutional pattern and practice, GE satisfies the prerequisites

for constitutional standing.[3]

_____

[3]  EPA has acknowledged that its motion for summary judgment does not address GE's
pattern and practice claim, and hence the Court cannot consider the merits of that claim at this
time.  GE seeks discovery to develop the facts necessary to establish a pattern and practice claim.

## II.    Textual Challenge

EPA's motion for summary judgment argues that GE's constitutional challenge to the text of CERCLA should be decided exclusively based on the language in the statute, and therefore no discovery is necessary and the claim is ripe for adjudication.  Accordingly, EPA contends that GE's textual challenge to CERCLA fails under the <u>Salerno</u> standard because GE cannot establish that the section 106 order regime of CERCLA is unconstitutional in every application.  <u>See</u> <u>Nebraska v. EPA</u>, 331 F.3d 995, 998 (D.C. Cir. 2003).  Alternatively, EPA argues that GE cannot show any due process violation based on the text of CERCLA.

GE raises three textual constitutional problems with CERCLA:  (1) a PRP is deprived of property without a pre-deprivation hearing; (2) a PRP never receives a meaningful post-deprivation hearing; and (3) the civil fines and penalties that accompany administrative orders are so coercive that they constitute a due process violation under <u>Ex Parte Young</u>, 209 U.S. 123 (1908).  GE also asserts that it needs discovery to pursue its textual challenge to CERCLA, and therefore the Court should defer ruling on EPA's motion for summary judgment pending discovery.

GE has submitted an affidavit under Fed.R.Civ.P. 56(f) that identifies factual issues that GE believes must be resolved through discovery before the Court can consider EPA's motion for summary judgment.  GE argues in that affidavit that EPA has created factual issues  through assertions made in its motion for summary judgment.  <u>See</u> GE's Rule 56(f) Affidavit ¶ 11.  However, a facial challenge to the text of a statute does not typically require discovery for resolution because the challenge focuses on the language of the statute itself.  <u>See</u> <u>Café Erotica of Florida, Inc. v. St. Johns County</u>, 360 F.3d 1274, 1282 (11th Cir. 2004); <u>New Hampshire Motor</u>

Transport Ass'n v. Rowe, 324 F.Supp.2d 231, 232 (D.Me. 2004) ("discovery . . . [on state statute] not necessary to a ruling on a facial preemption challenge").  Furthermore, the factual issues raised by GE in its Rule 56(f) affidavit pertain to GE's pattern and practice claim, and are not relevant to resolution of GE's textual challenge.  Because there are no questions of fact that require resolution for GE's textual challenge, this Court will proceed to the merits of EPA's motion for summary judgment on that claim.

 A. Deprivation of Property

 GE's claim that it and other PRPs are deprived of property without the requisite pre-deprivation hearing is largely based on Mathews v. Eldridge, 424 U.S. 319 (1976), under which the competing interests are balanced to determine the process required prior to a deprivation of property or liberty.  GE invites this Court to engage in the three-part balancing test of Mathews, which weighs the private interest, the risk of error and the governmental interest to determine whether the procedure provided is sufficient to satisfy the constitutional requirements of due process.  See 424 U.S. at 335.  However, before the Court undertakes a Mathews balancing assessment, GE must first establish that under CERCLA a PRP suffers a deprivation of property upon the issuance of an order under section 106.[4]  See American Mfrs. Mut. Ins. Co. v. Sullivan,

---

  [4]  In Employers Ins. of Wausau v. Browner, 848 F.Supp. 1369, 1374-76 (N.D. Il. 1994), the district court engaged in a Mathews three-part balancing test in a procedural due process challenge to section 106 orders.  However, the district court acknowledged that the EPA can only force compliance with a section 106 order by going to court, and therefore there was no deprivation.  Id. at 1375 n.10.  Additionally, in Chemical Waste Mgmt. v. EPA, 56 F.3d 1434, 1437 (D.C. Cir. 1995), the D.C. Circuit applied the Mathews analysis to EPA's issuance of off-site rules.  In doing so, the court assumed a constitutionally protected property or liberty interest before proceeding to the three-part test.  Id.  Although these courts either disregarded or assumed away the threshold deprivation question, this Court will not engage in the three-part balancing test under Mathews if there is no deprivation of GE's constitutionally protected liberty or property interests.  See Reardon, 947 F.2d at 1517 ("If there is no significant property interest involved, the

526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'").  EPA argues that CERCLA does not affect a deprivation of property without a hearing, because until a court actually enforces compliance a PRP is not deprived of any property.

GE, on the other hand, contends that the mere issuance of a unilateral administrative order ("UAO") under section 106 triggers a deprivation of property.  Prior to the issuance of a UAO, GE's argument goes, the PRP is under no legal obligation to clean up the site, but once EPA issues the order, regardless of the PRP's response, the UAO imposes binding obligations upon the PRP. See Pl. Opp. at 24.  Indeed, penalties and fines may begin accruing shortly after the date on which the UAO is issued, depending on the specific compliance requirements.  See 42 U.S.C. § 9606(b)(1) (setting a fine of $25,000 per day that a PRP does not comply with a UAO).  GE analogizes the imposition of fines under a UAO to a judgment for money damages -- it may take a court order to enforce the judgment, but payment is due from the date of the judgment.  See Pl. Opp. at 24-25.[5]

GE contends that the UAO need not be self-executing to constitute a deprivation, citing the Supreme Court's decision Hodel v. Virginia Surface Mining, 452 U.S. 264, 298-301 (1982). In Hodel, an administrative order issued by the Secretary of Interior requiring the immediate cessation of mining operations was found to constitute a deprivation of property even though judicial intervention was required to collect penalties.  See also Fuentes v. Shevin, 407 U.S. 67,

_____

[due process] inquiry is at an end.").

[5]  The analogy is far from perfect, as a judgment has a much greater degree of finality than a penalty under a UAO, which is still subject to judicial assessment under "sufficient cause" and discretionary standards.  See 42 U.S.C. § 9606(b).

80 (1972) (holding replevin statute unconstitutional although it merely authorized the seizure of property, which occurred only after the order was given to the sheriff).

GE's arguments fall short of establishing that a PRP, under the language of the statute alone, suffers a cognizable deprivation of property upon the issuance of a section 106 order. Under 42 U.S.C. § 9606, EPA can issue a clean up order to a PRP, which then has two choices -- comply or refuse to comply.  If the PRP refuses, EPA can only force compliance by going to a district court.  See 42 U.S.C. § 9606(b)(1).  Therefore, while issuance of the section 106 order does require the PRP to make a decision regarding compliance, the mere issuance of the order does not create a cognizable deprivation of a significant property interest triggering the procedural due process analysis under Mathews.  The ability of the PRP to choose, under the language of the statute, whether to comply with a section 106 order is key.  Upon a refusal to comply with a section 106 order, EPA is powerless to deprive the PRP of property without judicial intervention. On the other hand, were the PRP to be deprived of any meaningful choice to refuse to comply with an order, that might pose a different situation in assessing whether a deprivation of property has occurred. [6]

GE's reliance on Reardon v. United States, 947 F.2d 1509 (1st Cir. 1991), to support its argument that issuance of a section 106 order causes a deprivation of property is misplaced, because the enforcement mechanisms in section 106 are quite different than the CERCLA lien

---

[6]  This decision regarding the deprivation of property or liberty upon issuance of a section 106 order in no way contemplates whether EPA's pattern and practice in the administration of section 106, i.e., the control over timing of review and use of the penalty provisions, may eliminate the choice available to a PRP.  This decision thus does not foreclose the possibility of GE establishing that EPA's pattern and practice in administering UAOs constitutes a deprivation of property.

provisions ruled unconstitutional by the First Circuit in <u>Reardon</u>.  The EPA can file a lien on real property without any prior hearing.  <u>See Reardon</u>, 947 F.2d at 1519.  The First Circuit, relying on <u>Connecticut v. Doehr</u>, 501 U.S. 1 (1991), noted that a lien significantly encumbers real property, and therefore amounts to a deprivation of property.  <u>See</u> 947 F.2d at 1518 (finding that a lien on property "cloud[s] title, limit[s] alienability, [and] affect[s] current and potential mortgages").  The mere issuance of a section 106 order, on the other hand, does not have that same tangible impact on a PRP or its property.  There is no immediate significant impact on a property interest, and no penalties need be paid at that time.  Under the statutory language and structure, EPA does not through the mere issuance of a UAO under section 106 deprive a PRP of a significant property interest without judicial intervention.  <u>Reardon</u>, with its limited focus on the unique consequences of a lien on real property, does not support a conclusion to the contrary.

GE's argument that a section 106 order need not be self-executing in order to effect a deprivation of property is unavailing.  The Supreme Court never actually considered in <u>Hodel</u> whether the order of the Secretary of the Interior halting mining operations amounted to a deprivation of property.  Moreover, the order challenged in <u>Hodel</u> affirmatively required an <u>immediate</u> cessation of mining operations.  <u>See</u> 452 U.S. at 300.  There is no similar deprivation when EPA issues an order under section 106, since compliance will generally entail a drawn out undertaking, which may not even commence in concrete terms for months.  In that setting, a PRP does not suffer a significant deprivation of property simply upon the issuance of a section 106 order.[7]

---

[7]  In <u>Oklahoma Operating Co. v. Love</u>, 252 U.S. 331, 336 (1920), also cited by GE on this issue, the Court struck down the rate setting provision because of the penalties for non-compliance were violative of <u>Ex Parte Young</u>.  The Supreme Court did not address the same

GE's citation to <u>Fuentes v. Shevin</u>, 407 U.S. 67 (1972), on the issue of self-executing orders is also inapposite.  Although the replevin statute in <u>Fuentes</u> required a sheriff to execute the order issued to an individual, the injured party still did not receive any type of hearing or opportunity to challenge the action until after the property has been seized.  <u>Id.</u> at 75.  The fact that the order required intervention by a sheriff to be effectuated does not make <u>Fuentes</u> analogous to this case.  The sheriff in <u>Fuentes</u>, upon executing the order, could not provide the injured party any opportunity to be heard.  <u>Id.</u>  In order for section 106 to have effect, the EPA must go to court to force compliance.  <u>See</u> 42 U.S.C. § 9606(b)(1).  At that time, before any deprivation occurs, the PRP has an opportunity to be heard.  <u>See</u> <u>Fuentes</u>, 407 U.S. at 80 ("The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. ").

GE, as part of its argument in favor of applying <u>Mathews</u>, also suggests that this Court should look to the reasoning of the court in <u>TVA v. EPA</u>, 336 F.3d 1236 (11th Cir. 2003), <u>cert. denied</u>, 124 S.Ct. 2096 (2004).  In that decision, the Eleventh Circuit held that the issuance of administrative compliance orders ("ACOs") by EPA under the Clean Air Act was unconstitutional.  GE argues that UAOs issued under section 106 are analogous to ACOs, and accordingly this Court should follow the lead of the Eleventh Circuit.  However, the reasoning of the court in <u>TVA</u> is inapposite to the question before this Court.  There, the Eleventh Circuit struck down the imposition of penalties for noncompliance with an ACO because the standard for EPA's determination to issue an ACO was "any information available."  <u>Id.</u> at 1256.  The court found that meaningful judicial review of EPA's determination based on "any information

---

deprivation of property issue currently before this Court.

available" could not be conducted.  Id. at 1255-59.  In the case of a section 106 order, however,

there is no similarly indefinite standard; instead EPA is required to make a finding that there is an

"imminent and substantial endangerment to the public health and welfare."  42 U.S.C. § 9606(a).

Fines and penalties are also not automatic because the PRP can present a "sufficient cause"

defense.  See 42 U.S.C. § 9606(b)(1).  Furthermore, a PRP can challenge the issuance of the

section 106 order as arbitrary and capricious on the administrative record.  See 42 U.S.C. §

9606(b)(2)(D).  The Eleventh Circuit in TVA, moreover, did not directly address the question

whether the issuance of an ACO constituted a deprivation of property.[8]  For all these reasons,

TVA does not provide much direction for resolving GE's procedural due process challenge to

CERCLA.

     In an analogous regulatory setting, the Second Circuit found that EPA's issuance of a

compliance order under a provision of the Clean Air Act, 42 U.S.C. § 7413(a)(3), did not amount

to a deprivation of property or liberty.  See Asbestec Constr. Servs., Inc. v. EPA, 849 F.2d 765,

770 (2nd Cir. 1988).  There, the compliance order issued by EPA found that the plaintiff was in

violation of the Clean Air Act, and required compliance in future asbestos abatement projects.  Id.

at 767.  Failure to comply with the order could result in EPA court action.  Id.  As GE does here,

the plaintiffs in Asbestec argued that the issuance of the compliance order without a prior

administrative hearing amounted to a deprivation of property or liberty without a hearing in

contravention of the Fifth Amendment.  Id. at 769.  The Second Circuit rejected that argument,

concluding instead that the issuance of a compliance order did not result in a deprivation of

---

   [8]  The TVA decision did note that other courts that have assessed the constitutionality of
an EPA order under the Clean Air Act or the Clean Water Act have concluded that such orders do
not constitute a deprivation of liberty or property.  336 F.3d at 1257 n.34.

property or liberty and therefore the due process requirements of the Fifth Amendment were not implicated. Id. at 770. This Court reaches a similar conclusion with respect to the issuance of a UAO under section 106 and GE's textual challenge.

B.      Sufficiency of Judicial Hearing

GE also asserts that regardless of whether there is a hearing before or after the issuance of a UAO, CERCLA's regime still violates due process because it never provides a meaningful judicial hearing to a PRP. According to GE, CERCLA's statutory scheme does not require EPA to bear the burden of persuading an impartial decision-maker that the specific section 106 order was the appropriate remedy, because EPA's decision to issue a UAO can only be challenged under the arbitrary and capricious standard of the Administrative Procedure Act ("APA"). See Pl. Opp. at 19. Review under the APA is based upon an administrative record compiled by EPA, without any specific opportunity for the PRP to present evidence. The APA procedure for review of EPA's decision to issue a UAO, GE argues, does not satisfy the requirements of due process.

There are two primary flaws in GE's attack. First, EPA is required under CERCLA to prove de novo in a federal court that the PRP is in fact the liable party. See Kelley v. EPA, 15 F.3d 1100, 1108 (D.C. Cir. 1994) ("Congress . . . has designated the courts and not EPA as the adjudicator of the scope of CERCLA liability"). Although this feature does not fully address GE's concern regarding APA review of EPA's selection of a section 106 order, the ability of the PRP to obtain de novo review of liability under CERCLA certainly provides a meaningful opportunity for judicial review. See id. at 1107 (EPA receives deference in its determination of appropriate clean up action, but courts decide liability issues). The second flaw in GE's argument is that it is well established that judicial review under the APA satisfies the requirements of due process. See,

e.g., Unification Church v. Attorney General, 581 F.2d 870, 878 (D.C. Cir. 1978).  Contrary to GE's assertion, moreover, the arbitrary and capricious standard of review does not necessitate a trial-like administrative procedure, and is sufficient to ensure GE's due process rights.  See Woods v. Federal Home Loan Bank Board, 826 F.2d 1400, 1410-11 (5th Cir. 1987) ("court review of agency action under the arbitrary or capricious standard is adequate to assure against the risk of mistaken deprivations").  Because the text of CERCLA clearly provides for a judicial hearing under an APA standard of review, see 42 U.S.C. § 9606(b)(2)(D), GE cannot sustain a constitutional challenge under the theory that CERCLA never provides a meaningful hearing to a PRP subject to a section 106 order.

      C.     Ex Parte Young

      On a related theme, GE next argues that the fines and penalties under sections 106 and 107 of CERCLA, which a PRP may incur if it does not comply with a UAO, are so coercive that the PRP is effectively forced to forgo judicial review of the UAO, and hence amount to a violation of procedural due process under Ex Parte Young and it progeny.  As discussed above, under 42 U.S.C. § 9606(b)(1) a PRP that refuses to comply with a section 106 order faces fines up to $25,000 a day for each day it does not comply with the order.  And if a PRP does not comply, and the EPA decides to conduct the cleanup itself, the PRP could face punitive damages up to three times the cost of clean up, in addition to the daily civil fines.  See 42 U.S.C. § 9607(c)(3).  Finally, the statute permits EPA to control the timing of any judicial intervention; thus, a PRP may incur years of accumulated fines before EPA completes the clean up and finally decides to seek a court order.  GE argues that this coercive penalty structure in CERCLA amounts to a procedural due process violation under Ex Parte Young because PRPs are forced to incur enormous penalties as

the price for pursuing judicial review.

A statutory scheme that imposes penalties when one seeks judicial review is unconstitutional if "the penalties for disobedience are by fines so enormous . . . as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation." Ex Parte Young, 209 U.S. at 147.  However, one firmly recognized method of saving a statute that imposes penalties upon a party seeking judicial review is to provide for a "good faith" defense. See Resiman v. Caplin, 375 U.S. 440, 446-47 (1964) (penalty provision of tax code was not due process violation because party did not face penalties if the challenge was made in good faith); see also Oklahoma Operating Co. v. Love, 252 U.S. 331, 338 (1920).   Under section 9606(b)(1), the daily penalties for a failure to comply with a UAO will only be imposed by the district court if the PRP fails to comply "without sufficient cause."  Furthermore, the district court, even if it finds that the PRP lacked sufficient cause to challenge the order, retains discretion whether to impose civil penalties or punitive damages, because the statute dictates the court "may" impose fines or penalties.  See 42 U.S.C. §§9606(b)(1), 9607(c)(3).

The availability of judicial discretion in combination with a "sufficient cause" defense under CERCLA cures any potential constitutional deficiency based on Ex Parte Young.  Other courts that have addressed this issue under CERCLA have found that the "sufficient cause" defense cures any possible constitutional problems stemming from the fines and penalties possible under sections 106 and 107.  See Employers Ins. of Wausau v. Browner, 52 F.3d 656, 664 (7th Cir. 1995) ("The risk of losing and being made to pay heavy sanctions, a risk mitigated by the defense of sufficient cause . . . would not violate the Constitution . . . ."); Solid State Circuits, Inc. v. EPA, 812 F.2d 383, 391 (8th Cir. 1987) (treble damages under section 107(c)(3) are

-24-

constitutional because of "sufficient cause" defense); <u>Wagner Seed Co. v. Daggett</u>, 800 F.2d 310, 316 (2nd Cir. 1986) (willfulness standard of section 9606(b) amounts to the requisite good faith defense).  This Court agrees.

GE contests the efficacy of the "sufficient cause" defense because a PRP is required to risk potentially millions of dollars in fines and penalties on a speculative judicial decision.  Along this line, GE argues that the "sufficient cause" defense has not been so fully developed in case law as to provide PRPs with any comfort in their ability to meet the standard and avoid escalating penalties.  GE further contends that section 106(b)(1) is deficient because it does not limit the time by which EPA must bring an enforcement action, and thus one could potentially face years of accumulating daily fines before EPA sought enforcement.  Although GE raises legitimate concerns regarding the timing of EPA's section 106(b)(1) enforcement effort, whether it is a one day penalty or a one thousand day penalty, the challenging party can still avoid it by showing it had "sufficient cause" to refuse compliance with the section 106 order.  Moreover, the party may persuade a judge to exercise discretion by not imposing fines even if the party fails to meet the sufficient cause standard.  GE's concerns may, on the other hand, warrant development in its pattern and practice case.  The Court concludes, however, in line with the considerable precedent cited above, that this timing issue does not condemn the section 106 UAO scheme under the Fifth Amendment based on GE's textual challenge to CERCLA.

D.    <u>Salerno</u> Doctrine

In addition to its direct response to GE's facial constitutional challenge, EPA also argues that GE's textual claim must be assessed under the <u>Salerno</u> doctrine, which instructs a court to uphold a statute against a facial constitutional challenge if the plaintiff cannot show that the

statute is unconstitutional in every application.  See Salerno, 481 U.S. at 745; Nebraska, 331 F.3d

at 998.   EPA asserts that GE essentially concedes that section 106 would be constitutional when

applied in true emergency situations and therefore GE's textual challenge must fail.  See Def. Mot.

at 19 (citing Am. Compl. ¶¶ 2, 5, 16, 29).   EPA also argues that when a PRP does not contest

EPA's determination of liability, there is no procedural infirmity.  See Chemical Waste Mgmt., 56

F.3d at 1437.  GE, on the other hand, resists EPA's application of Salerno, noting that the doctrine

is generally limited to challenges involving hypothetical ways in which a statute may be applied

see Pl. Opp. at 35, and that the Salerno doctrine has never been applied in a case of this type in

this Circuit.

GE's protests to the application of Salerno are founded on its belief that the doctrine is

inappropriate for its pattern and practice claim.  On this point, GE may be correct.[9]  However, for

GE's textual challenge to CERCLA, applying Salerno remains appropriate.  See Chemical Waste

Mgmt., 56 F.3d at 1437 (applying Salerno doctrine to facial challenge to EPA's off-site rule).

Although the Supreme Court in City of Chicago v. Morales, 527 U.S. 41, 55 n.22 (1999), debated

the appropriateness of Salerno's "no set of circumstances" prong, this Circuit has continued to

apply Salerno in appropriate circumstances, see Nebraska, 331 F.3d at 998, and GE's textual

---

[9]  The Court is not aware of a case where the Salerno doctrine was applied to a non-facial
challenge to a statute.  Other courts have noted that the rigorous Salerno doctrine is applied to
facial challenges because facial challenges to a statute are generally discouraged, at least outside
of the First Amendment overbreadth setting.  See Woman's Medical Professional Corp. v.
Voinovich, 130 F.3d 187, 218 (6th Cir. 1997) (Boggs, J., dissenting) ("the Salerno Court rested its
holding on the long recognized proposition that, except in the First Amendment context, facial
challenges to statutes are disfavored"); Sanjour v. EPA, 984 F.2d 434, 442 (D.C. Cir. 1993)
(noting that Salerno is one of the exceptions to the general rule that "facial challenges to
legislation are generally disfavored." (quoting FW/PBS, Inc. v. Dallas, 493 U.S. 215, 223, 110
S.Ct. 596, 603, 107 L.Ed.2d 603 (1990))).

challenge to CERCLA appears to be one of those circumstances.  It is not for this Court to disregard D.C. Circuit application of Supreme Court precedent simply because some Justices have expressed passing concern about aspects of <u>Salerno</u>.

Applying the <u>Salerno</u> requirement that GE establish that section 106 is not constitutional in any set of circumstances, GE's textual challenge must fail.  As discussed above, the language of section 106 does not create an unconstitutional deprivation of property, nor is it unconstitutionally coercive.  But even if GE were right that section 106 by its text offends due process in some settings, the Court can envision at least one scenario whereby section 106 would be constitutional -- true emergency situations.  Earlier in these proceedings, GE appeared to concede as much.  <u>See</u> EPA Mot. at 19-20.  In an environmental emergency, even if the issuance of a section 106 order constituted a deprivation of property, the lack of a pre-deprivation hearing would not violate due process.  <u>See</u> <u>Hodel</u>, 452 U.S. at 300 (denying due process challenge to statute, noting that in an emergency the agency may affect a deprivation without a hearing).  That constitutional application of the section 106 UAO regime defeats GE's facial textual challenge under <u>Salerno</u>.

## <u>CONCLUSION</u>

For the above reasons, EPA's motion for summary judgment on GE's textual challenge to CERCLA is granted.  However, the Court concludes that GE has also pled a "pattern and practice" challenge to EPA's administration of CERCLA, which survives the jurisdictional limitation of section 113(h).  That claim has not been contested by EPA in its current motion, and it remains viable under the earlier D.C. Circuit opinion in this case.  Therefore, GE may proceed with discovery on that claim.  A separate order has been issued.

_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Dated: ___March 30, 2005_____

Copies to:

Carter G. Phillips
Thomas G Echikson
Sidley Austin Brown & Wood
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8270
Fax : 202-736-8711
Email: cphillips@sidley.com
Email: techikson@sidley.com

Laurence H. Tribe
HARVARD LAW SCHOOL
Hauser Hall 420
1575 Massachusetts Avenue
Cambridge, MA 02138
(617) 495-4621
         *Counsels for plaintiff*

Angeline Purdy
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENTAL DEFENSE SECTION
601 D Street, NW
Suite 8000
Washington, DC 20004
(202) 514-0996
Fax : (202) 514-8865
Email: angeline.purdy@usdoj.gov
         *Counsel for defendants*

Lisa Emily Heinzerling
Georgetown University Law Center
600 New Jersey, NW
Washington, D.C. 20001-2022
(202) 662-9115

Fax : 202-662-9680

> *Counsel for movant NATURAL RESOURCES DEFENSE COUNCIL, INC.,*
> *HUDSON RIVER SLOOP CLEARWATER, NEW YORK RIVERS UNITED,*
> *RIVERKEEPER AND SCENIC HUDSON*

Raymond B. Ludwiszewski
Gibson, Dunn & Crutcher, L.L.P.
1050 Connecticut Avenue, NW
Washington, D.C. 20036-5306
(202) 955-8665
Fax : 202-467-0539

> *Counsel for amicus CHAMBER OF COMMERCE OF THE UNITED STATES*

Robert J. Kafin
Proskauer Rose, L.L.P.
1233 20th Street, NW
Washington, D.C. 20036
(202) 778-1100
Fax : 212-969-2900

> *Counsel for amicus WASHINGTON COUNTY CEASE, INC.*

Michael W. Steinberg
MORGAN, LEWIS & BOCKIUS, L.L.P.
1111 Pennsylvania Avenue, NW
6th Floor
Washington, DC 20004-2541
(202) 739-5141
Fax: (202) 739-3001
Email: msteinberg@morganlewis.com

> *Counsel for amicus AMERICAN CHEMISTRY COUNSEL*

Robert J. Kafin
Proskauer Rose, L.L.P.
1233 20th Street, NW
Washington, D.C. 20036
(202) 778-1100
Fax : 212-969-2900

> *Counsel for amicus WASHINGTON COUNTY CEASE, INC.*

Michael Ward Steinberg
Morgan, Lewis & Bockius, L.L.P.
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-5869
(202) 467-7141

Email: msteinberg@morganlewis.com
*Counsel for movant AMERICAN CHEMISTRY COUNCIL*