**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GENERAL ELECTRIC CO.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  00-2855 (JDB)** |
| **STEVEN JOHNSON, Administrator, United States Environmental Protection Agency, and the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,** | |
| **Defendants.** | |

<u>**MEMORANDUM OPINION**</u>

Presently before the Court is plaintiff General Electric Company's ("GE") motion to compel production of approximately 6,177 documents that defendants Environmental Protection Agency ("EPA") and Steven Johnson, in his capacity as administrator of EPA, claim are covered by the deliberative process privilege, attorney-client privilege, and work product doctrine.  GE has also requested the appointment of  a special master to conduct an <u>in camera</u> review of these documents.  A motions hearing was held with the Court on June 2, 2006, following which the Court ordered the parties to make two additional submissions.  Specifically, defendants were required to utilize a statistically-reliable method to generate a sample of approximately 100 documents that is representative of the various withholding claims and geographic regions at issue, to facilitate the Court's <u>in camera</u> review.  GE, on the other hand, was ordered to submit a list (organized by stamped document numbers) and a copy of all documents with respect to

which it claims that defendants have, by virtue of disclosing those documents, effected subject-matter waiver of any otherwise applicable privilege.  Based upon its in camera review of these documents in light of applicable law, and for the reasons that follow, the Court will grant GE's motion in part and deny it in part.

## BACKGROUND

### I.      Factual and Procedural Background.

This action was originally filed against defendants on November 28, 2000 as a challenge to the facial constitutionality of certain provisions of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9606(a) et seq., and to EPA's method of administering § 106(a) of that statute.  Section 106(a) empowers EPA to require responsible parties to clean up a contaminated site if it finds "that there may be an imminent substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility."  42 U.S.C. § 9606(a).  The usual course of conduct is for EPA to send the responsible party a "Section 106 order," also referred to as a "UAO."  Defs.' Mem. Opp'n at 3.[1]  If the recipient fails to comply with the UAO, then EPA may bring an action in federal court seeking to compel compliance, during which the recipient may present all of its challenges to the UAO.  If the court determines that the recipient lacked "sufficient cause" for refusing to comply, then the court may impose penalties and punitive

---

[1]The Court has chosen the following scheme for referencing the various memoranda of the parties: (1) "GE's Memorandum in Support of Motion to Compel" is cited as "Pl.'s Mem. Supp.;" (2) "Defendants' Memorandum in Opposition to the Motion to Compel" is cited as "Defs.' Mem. Opp'n."; (3) "GE's Reply Memorandum in Further Support of the Motion to Compel" is cited as "Pl.'s Reply;" (4) the memorandum filed by GE concurrently with its submission of waiver documents is cited as "GE's 2d Mem. Supp.;" and (5) "Defendant's Response to GE's Submission Regarding Waiver" is cited as "Defs.' Surreply."

damages.  42 U.S.C. §§ 9606(b)(1), 9607(c)(3); Defs.' Mem. Opp'n at 3.  A recipient that chooses

to comply with a UAO may petition EPA to reimburse the response costs from the Superfund,

see 42 U.S.C. §§ 9606(b)(2)(A), (C-D); Defs.' Mem. Opp'n at 3, and, in the event that EPA

denies the petition, may file an action for reimbursement in federal district court, see 42 U.S.C.

§§ 9606(b)(2)(B), (E); Defs.' Mem. Opp'n at 3.

   On March 31, 2003, this Court granted EPA's motion to dismiss GE's amended complaint

on the ground that § 113(h) of CERCLA barred pre-enforcement review of GE's constitutional

challenge to CERCLA.  See General Electric Co. v. Johnson, Civil Action No. 00-2855, dkt. no.

54 (D.D.C. Mar. 31, 2003) (Order).  That decision was overturned on appeal, and the case was

remanded to this Court.  See General Electric Co. v. EPA, 360 F.3d 188 (D.C. Cir. 2004).

Thereafter, discovery was stayed to allow the Court to rule on EPA's motion for summary

judgment.  See General Electric Co. v. Johnson, Civil Action No. 00-2855, dkt. no. 69 (D.D.C.

Nov. 22, 2004) (Order).  In its motion, EPA argued that GE's constitutional challenge to

CERCLA was a facial challenge limited to review of the statute's text and, accordingly, that GE

was required to establish that CERCLA is unconstitutional in every application, consistent with

United States v. Salerno, 481 U.S. 739 (1987).  EPA contended that GE could not carry its

burden under Salerno because CERCLA plainly was constitutional as applied in emergency

situations.

   GE vigorously opposed EPA's motion, arguing that the complaint advanced not only a

facial due process challenge based on CERCLA's text, but also a challenge based upon EPA's

pattern and practice of administering § 106, which, it asserted, was not foreclosed by the

jurisdictional bar of § 113(h) as interpreted by the D.C. Circuit on appeal.  See General Electric

Co., 360 F. 3d at 193-94.  Accordingly, GE moved the Court to permit discovery as to both of its

claims.  In its Memorandum Opinion of March 30, 2005, this Court held that although the

challenged statutory provisions are not unconstitutional "on their face," see General Electric Co.

v. Johnson, 362 F. Supp. 2d 327, 330 (D.D.C. 2005), GE had nonetheless sufficiently alleged a

"pattern and practice" challenge to the procedure that EPA employs in administering § 106, id. at

334, 337, 344.  The crux of GE's pattern and practice claim is that EPA's "enforcement first"

policy and administration has deprived GE of its constitutional right to procedural due process of

law.  The Court allowed the parties to begin discovery regarding this claim.

## II.    The Current Discovery Dispute.

On June 17, 2005, GE served a broad discovery request upon EPA, seeking tens of

thousands of documents dating as far back as 1980.  Defs.' Mem. Opp'n at 4.  The parties worked

together to narrow the scope of the requests, but these issues were not fully resolved until August

29, 2005, through the Court's order.  Id.; see General Electric Co. v. Johnson, Civil Action No.

00-2855, dkt. no. 93 (D.D.C. Aug. 29, 2005) (Order).  Thereafter, EPA conducted a five-month

nationwide search for, and then review and retrieval of, approximately 20,000 documents, which

occupied hundreds of employees and required 14,000 personnel hours to complete.  Defs.' Mem.

Opp'n at 4.  To date, EPA has produced a total of 12,866 documents from multiple regions, but

claims that the remaining 6,177 documents are protected by the deliberative process privilege,

attorney-client privilege, and/or work product doctrine.[2]  See id. at 1 n.1; Defs.' Exh. 2 (EPA's

---

[2]When GE filed its motion to compel, EPA was already undertaking an independent review of its
initial privilege determinations.  That review has resulted in the disclosure of additional
documents to GE that were initially indicated as privileged or protected.  These additional
disclosures are reflected in the totals provided here.

revised and cumulative privilege log).  GE argues that EPA's privilege assertions are overly broad

and inapplicable, and that EPA has implicitly waived some protections through its disclosure of

other documents that are similar in character and subject matter.  See, e.g., Pl.'s Mem. Supp. at 1.

Because these documents are allegedly "crucial" to the "core issues" of its pattern or practice

claim, GE requests that the Court issue an order forcing EPA to produce all remaining

documents.  Id. at 1, 3.  Moreover, GE seeks the appointment of a special master to conduct an in

camera review of any documents that remain the subject of dispute following the Court's rulings

as to the proper scope of the protections and privileges asserted.  Id. at 1.

The Court held a motions hearing on June 2, 2006.  That same day, the Court ordered GE

to submit a copy of all documents that it alleges were inadvertently disclosed by EPA and

therefore form the basis of GE's arguments for subject-matter waiver.  EPA was ordered to use a

statistically-viable method to generate a sampling of approximately 100 documents drawn from

the updated privilege log for the Court to review in camera.  EPA has generated that sampling

after first removing from its privilege log those documents that GE does not seek to obtain.  In

order to comply with the Court's direction that the sampling be a fair cross-section of the various

privilege assertions, geographic regions, and classes of documents included in EPA's privilege

log, EPA decided to include a total of ninety-nine documents in the following distribution:

twenty-five documents from the Office of Site Remediation and Enforcement; ten documents

from each of two other EPA Headquarters Offices (designated as "OGC" and "FFEO"); five

documents from the Department of Justice; eight documents from each of the EPA Regional

Offices for Regions Two, Five, and Nine; and five documents from each of the EPA Regional

Offices for Regions One, Three, Four, Six, Seven, Eight and Ten.  Defs.' Cover Letter of

06/14/2006 at 1.  To determine which documents would comprise this distribution, EPA assigned random numbers to each privilege log entry using the computer program Microsoft Excel.  Id. GE agreed that this sampling method was fair.  Id.  Following the in camera submission, the parties conferred further and decided that the documents designated as P.L. No. 975, P.L. No. 5002, P.L. No. 2215, and P.L. No. 2290 should be removed from the privilege log and, hence, the in camera sampling.  Defs.' Cover Letter of 6/16/2006.  In their place, the parties added four new documents, identified as P.L. No. 1042, P.L. No. 6535, P.L. No. 1724, and P.L. No. 546.  Id.

Based upon its in camera review of the documents submitted by the parties, the various legal memoranda, and EPA's most recent privilege log, the Court will grant GE's motion in part and deny it in part.  This Memorandum Opinion sets out the legal framework to be applied in making privilege determinations as to the over 6,000 documents for which EPA has claimed privilege.  Table T-1, attached hereto, summarizes the Court's privilege findings with respect to the sampling of documents reviewed in camera.  Table T-2, also attached, indicates the Court's determinations regarding the inadvertently-disclosed documents that form the basis for GE 's subject-matter waiver arguments.  Because there is no evidence of bad faith or noncompliance on the part of EPA, the Court denies GE's request for the appointment of a special master. However, in light of the errors identified by the Court during its in camera review, the Court directs EPA to perform the following tasks: (1) review all withholdings in light of the principles and findings set forth herein regarding the scope and possible waiver of the protections asserted; (2) make additional disclosures to GE consistent with the Court's analysis; (3) prepare an updated privilege log; and (4) submit a new statistically-representative sampling (consisting of no more than 50 of the documents identified on the final privilege log) for the Court to review in camera.

<u>ANALYSIS</u>

I.   **The Deliberative Process Privilege**

   A.  *Parameters of the Privilege*

   The deliberative process privilege "serves to assure that subordinates within an agency

will feel free to provide the decisionmaker with their uninhibited opinions and recommendations

without fear of later being subject to public ridicule or criticism."  <u>Coastal States Gas Corp. v.</u>

<u>Dep't of Energy</u>, 617 F.2d 854, 866 (D.C. Cir. 1980).  To this end, the privilege protects

documents or communications that are "predecisional" and "deliberative" in nature.  <u>See</u>, <u>e.g.</u>,

<u>Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce</u>, 907 F.2d 203, 207 (D.C.

Cir. 1990).  One important inquiry is whether the document constitutes "secret law" actually

applied by the agency in its dealings with the public.  <u>See Tax Analysts v. IRS</u>, 117 F.3d 607,

617 (D.C. Cir. 1997); <u>Coastal States</u>, 617 F.2d at 867.  The existence of "secret law" is ordinarily

evidenced by documents that "serve as 'law' in the specific case to which they are addressed" or

"serve as 'law'-like precedent in subsequent cases."  <u>Schlefer v. United States</u>, 702 F.2d 233, 237

(D.C. Cir. 1983).

   To be considered predecisional, the material must "'precede, in temporal sequence, the

'decision' to which it relates.'" <u>Hinckley v. United States</u>, 140 F.3d 277, 284 (D.C. Cir. 1998)

(quoting <u>Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice</u>, 823 F.2d 574, 585

(D.C. Cir. 1987)).   "'Accordingly, to approve exemption of a document as predecisional, a court

must be able to pinpoint an agency decision or policy to which the document contributed.'" <u>Id.</u>

(quoting <u>Senate of Puerto Rico</u>, 823 F.2d at 585); <u>see also</u> <u>Wilderness Society v. United States</u>

<u>Dep't of the Interior</u>, 344 F. Supp. 2d 1, 12 (D.D.C. 2004) (ordering disclosure because agency

failed to identify a specific, final agency decision).  As with all privilege assertions, the agency

bears the burden of demonstrating the final policy or decision that was reached at the end of the

particular deliberative process that the document plays into.  See SafeCard Servs., Inc. v.

Securities Exchange Comm'n, 926 F.2d 1197, 1204 (D.C. Cir. 1991).  "Documents which are

protected by the privilege are those which would inaccurately reflect or prematurely disclose the

views of the agency, suggesting as agency position that which is as yet only a personal position."

Coastal States, 617 F.2d at 866.

The purpose of the privilege is to protect the consultative process by guarding against the

deterrence of deliberative candor in future discussions.  See id.  At the very instant that an agency

aligns its policy or program congruently with the views expressed in a particular document, the

document is no longer seen as "reflect[ing] the personal opinions of the writer"; rather, it reflects

the position of the agency.  See Tax Analysts, 117 F.3d at 617-18; Coastal States, 617 F.2d at

868, 869.  Under such circumstances, the document is no longer considered "predecisional," see

Coastal States, 617 F.2d at 866, and the purpose of the privilege is not implicated -- it is the

agency, not the individual drafter, that may thereafter be exposed to ridicule or criticism if the

policy proves ill-advised.  See Sterling Drug, Inc. v. Fed. Trade Comm'n, 450 F.2d 698, 670

(D.C. Cir. 1971).  The law is unconcerned with scorn directed at the agency because "[w]henever

an agency's actions are opened to public view, the agency exposes itself to pressure and

criticism."  Tax Analysts, 117 F.3d at 618.

Hence, the agency must establish that it has never implemented the opinions or analyses

contained in the document, incorporated them into final agency policy or programs, referred to

them in a precedential fashion, or otherwise treated them as if they constitute agency protocol.

-8-

See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 161 (1975); see also Tax Analysts, 117 F.3d at 617-18; SafeCard, 926 F.2d at 1205; Coastal States, 617 F.2d at 866, 869.  The labels assigned to the documents by the agency (e.g., "formal," "binding," "precedential," "final," "adopted," "draft," or "deliberative") are not dispositive in this regard, and conclusory or general assertions contained in declarations are insufficient.  See Schlefer, 702 F.2d at 240-44; Coastal States, 617 F.2d at 867-68; see also Tax Analysts, 117 F.3d at 617.  The mere fact that the agency has accepted a document's conclusion, however, does not mean that the document is postdecisional. Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 358 (2d Cir. 2005).  Rather, the agency must have adopted the document's rationale.  See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975); see also La Raza, 411 F.3d at 359; Afshar v. Dep't of State, 702 F.2d 1125, 1143 n.22 (D.C. Cir. 1983).  The Supreme Court has recognized that agencies are engaged in a constant process of policy evaluation and revision.  Sears, 421 U.S. at 153 n.18; see also Wilderness Society, 344 F. Supp. 2d at 13.  Accordingly, a document that, in a "follow-up" capacity, discusses or analyzes a policy that was previously adopted by the agency will not be considered postdecisional unless its recommendations and assessments form the basis for the agency's continued maintenance, or subsequent abandonment or revision, of the pre-existing policy.  See Wilderness Society, 344 F. Supp.2d at 13.

Generally, material is considered deliberative if it "'reflect[s] the give-and-take of the consultative process.'"  See Tax Analysts, 117 F.3d at 617 (quoting Coastal States, 617 F.2d at 866).  There is some overlap between the "predecisional" and "deliberative" requirements, however.  Accordingly, the assessment of a document's deliberative nature may be a function of whether it is properly deemed predecisional.  Id.  Despite this seeming circularity, the D.C.

Circuit has held that documents that evaluate the relative "strengths and weaknesses of alternative views" are not protected -- despite appearing, at first blush, to qualify as deliberative -- if they constitute an agency's statement of the law.  See id.  This is because "[t]he government's opinion about what is not the law and why it is not the law is as much a statement of government policy as its opinion about what the law is."  Id.  Hence, a document that "reflects a view eventually rejected by a field [employee may] . . . still represent[] the opinion of the [agency]," in which circumstance "the public can only be enlightened by knowing what the [agency] believes the law to be."  Id.  It is incumbent upon the agency, then, to establish "'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'"  Coastal States, 617 F.2d at 869; see also Senate of Puerto Rico, 823 F.2d at 585-86.  Documents that do not provide advice to a superior, suggest the disposition of a case, discuss the relative pros and cons of a specific approach, or constitute "one step of an established adjudicatory process," but rather constitute "straightforward explanations" of an agency's pre-existing policy or regulations against the backdrop of specific or hypothetical factual situations, are not deliberative.  Coastal States, 617 F.2d at 868.

    To determine whether a document is recommendatory in nature, courts often consider the following traits:  language; tone; circulation stream; apparent purpose; relative hierarchical positions of the drafter and recipients; depth and extent of subsequent adherence or reference to, or citation of, the document; and whether the agency has ever used the document to train personnel, treated it as precedential, or described it as having been "amended" or "rescinded," for example.  See, e.g., Coastal States, 617 F.2d at 860, 868; see also Arthur Andersen & Co. v. Internal Revenue Serv., 679 F.2d 254, 257 (D.C. Cir. 1982) ("The designation of . . . documents

as 'drafts' does not end the inquiry."); Wilderness Society, 344 F. Supp. 2d at 13 (citing the

agency's failure to tie the documents to particular authors and recipients, and to provide their

titles, as a partial basis for ordering disclosure). As a general rule, the party invoking the

deliberative process privilege is only entitled to withhold the deliberative and predecisional

portions of the document -- that is, purely factual information is ordinarily considered segregable.

This is not the case, however, when the disclosure of the factual material would inappropriately

expose the deliberative process, or when the material is otherwise incapable of being extracted

without compromising the deliberative process. See Heartwood, Inc. v. United States Forest

Serv., 431 F. Supp. 2d 28, (D.D.C. 2006) (citing Wash. Res. Project, Inc. v. Dep't of Health, Ed.

& Welfare, 504 F.2d 238, 249 (D.C. Cir. 1974)); Petroleum Info. Corp. v. Dep't of the Interior,

976 F.2d 1429, 1434 (D.C. Cir. 1992)).

"The [deliberative process] privilege was fashioned in cases where the governmental

decisionmaking process is collateral to the plaintiff's suit." In re Subpoena Duces Tecum, 145

F.3d 1422, 1424 (D.C. Cir.), modified, 156 F.3d 1279 (D.C. Cir. 1998) (citing In re Subpoena

Served Upon the Comptroller of the Currency, 967 F.2d 630 (D.C. Cir. 1992)). Accordingly, the

privilege may not apply if the plaintiff's cause of action is "directed at the government's intent."

Id.; see also Dep't of Econ. Dev. v. Fetherston, 139 F.R.D. 295, 299 (S.D.N.Y. 1991); Grossman

v. Schwarz, 125 F.R.D. 376, 385 (S.D.N.Y. 1989); United States v. AT&T Co., 524 F. Supp.

1381, 1389-90 (D.D.C. 1981). Quite simply, under such circumstances, "the privilege's raison

d'etre evaporates." In re Subpoena Duces Tecum, 145 F.3d at 1424; see also 156 F.3d at 1280.

Here, GE submits that the privilege "is a nonsequitur" because the pattern and practice claim is

squarely directed at EPA's intent. Specifically, GE points to its supporting allegations, which it

claims assert that

> EPA intentionally uses its UAO authority so as to (1) impose an
> immediate deprivation on UAO recipients; (2) to prolong UAOs to
> deprive respondents of any meaningful opportunity to be heard on
> challenges to EPA's action; (3) to penalize [potentially responsible
> parties] that seek to pursue judicial review of UAO decisions; and
> (4) to compel respondents to take actions that are not justified by
> any environmental emergency.

Pl.'s Mem. Supp. at 11, 12.

GE notes that the applicable legal standard under which the merits of its pattern and

practice claim will ultimately be evaluated is the test set forth in Mathews v. Eldredge, 424 U.S.

319 (1976).  Under this test, the Court must balance the private interest affected by the

enforcement-first program, the risk of an erroneous deprivation of that interest (along with the

value of any additional or substitute safeguards), and the value of the program to the government.

GE contends that Mathews directly calls for a demonstration of EPA's subjective intent because

the pattern and practice claim alleges that EPA has misused its UAO authority in order to

> pursue less weighty interests, such as shifting the bill to 'deep
> pockets' with little or no connection to a site, alleviating political
> pressures by compelling [PRPs] to take actions that are not
> justified by environmental needs, and protecting its effectively
> unreviewable UAO authority by strategically leveraging and
> maximizing potential penalties to discourage if not preclude any
> meaningful opportunity for a hearing. . . . EPA's intentional
> decisions to use its UAO authority for political and strategic
> purposes without regard to any true environmental emergency has
> resulted in an increased risk and actuality of erroneous
> environmental response decisions.

Pl.'s Mem. Supp. at 12.

Despite the surface appeal of GE's argument, the Court disagrees.  Although the nature of

a pattern and practice claim is somewhat different from a plain vanilla procedural due process

claim, the challenge nevertheless remains directly focused on procedure, the deprivation that has

resulted from the procedure, and the value of the procedure to the government.  It may well be

that EPA's subjective intent is relevant to the "value" inquiry, but it is certainly not the essence of

GE's challenge.  Even assuming that exposure of EPA's subjective intent might assist GE in

making a more convincing case, such a showing is not <u>required</u> in order for GE to prevail.  Quite

simply, the program either does or does not have certain characteristics; it either does or does not

deprive PRPs of property or liberty; it either does or does not have a certain value to the

government; and that value either is or is not greater than the PRPs' interest in an alternative or

more traditional procedure.  That assessment does not turn on EPA's subjective intent.  At no

point, then, is the Court called upon directly to probe EPA's actual motivation.

 Indeed, the fact that the D.C. Circuit has chosen to use discrimination claims as

illustrative of the type of case in which the privilege is rendered inert is particularly telling.  <u>See</u>

<u>In re Subpoena Duces Tecum</u>, 145 F.3d at 1424.  In a cause of action arising under Title VII, for

example, the employer's motivation is "<u>the</u> issue."  <u>Id.</u> at 1424; <u>cf.</u> <u>Jones v. City of Modesto</u>, 408

F. Supp. 2d 935, 963 (E.D. Cal. 2005) (stating that "a due process claim does not consider the

[d]efendant's motive," but suggesting that motive is relevant to whether punitive damages are a

proper remedy for a due process violation); <u>Williams v. Wilkinson</u>, 122 F. Supp. 2d 894, 904

(S.D. Ohio 2000) (stating, with respect to a claim of deliberate indifference brought pursuant to

42 U.S.C. § 1983, that "subjective intent is not an element of a claim of deprivation of procedural

due process under the Fourteenth Amendment," although intent must be considered objectively);

<u>Howard v. Grinage</u>, 82 F.3d 1343, 1352 (6th Cir. 1996) (finding, in the context of a deliberate

indifference claim under § 1983, that "[i]f the conduct resulting in the deprivation [meets the

objective standard for deliberate indifference, then] a constitutional violation results even if the decision to deprive was made with the best of motives"); Franco v. Moreland, 805 F.2d 798, 801 (8th Cir. 1986) (holding that "[n]either justification nor good motive is a defense when a liberty interest gives one a right to notice of charges and an opportunity to explain").  In this case, the Court cannot say that the procedural due process claim, dressed in the garb of a pattern and practice challenge, is sufficiently analogous to an action focused on the government's intent so that the deliberative process privilege is unavailable to EPA.

Where, as here, the deliberative process privilege does apply, it is still only a qualified protection, however, and it yields in the face of a party's overriding need.  See Hinckley, 140 F.3d at 285; see also In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997).  A "key insight[]" that underscores the privilege is that "governmental decisionmakers will frequently disagree and debate many options before they reach any final conclusion, and that such predecisional and deliberative discussions and disputes should be protected from public review." Hinckley, 140 F.3d at 285-86.  A sufficient showing of need may be found "'where there is reason to believe the documents sought may shed light on governmental misconduct . . . on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government.'" Id. at 285 (quoting In re Sealed Case, 121 F.3d at 738).  However, the privilege is not denied whenever someone seeking the information at issue establishes that "there was disagreement within the governmental entity at some point in the decisionmaking process." Id. at 285.  Rather, the Court must engage in "'a balancing of the competing interests, taking into account factors such as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity

-14-

[that would compromise deliberative candor] by government employees.'"  Id. at 286 (quoting In re Sealed Case, 121 F.3d at 737-38).

B.  *EPA's Sampling*

In an effort to carry its burden to establish that the documents at issue are deliberative and predecisional, EPA has submitted declarations from senior officials at the Office of Enforcement Compliance Assistance (hereinafter "OECA") and each of EPA's ten regions.  See, e.g., Defs.' Exh. 10 ("Nakayama Decl."); Defs.' Exh. 13 ("Varney Decl.").  From the declarations, the Court has ascertained that lower-level officials reviewed all of the documents for which their regions or offices claimed the privilege, while higher-level officials typically reviewed a smaller representative sampling generated by the lower-level officials.  The declarations of the higher-level officials address the documents by category, describing their general nature, listing the particular documents in that category that comprise the sampling, reciting the elements of the deliberative-process privilege, and stating that the elements are satisfied with respect to the documents in the sampling (and, accordingly, with respect to all documents in that category).  Documents that do not comfortably fit within the enumerated categories are addressed individually, in similar fashion.  Within and among regions and offices, the declarations are nearly identical in terms of language, structure, and approach.

It is, of course, undeniable that categorical declarations may only go so far in establishing the applicability of the privilege.  The deliberative-process privilege is extremely document-specific, and, as EPA has repeatedly asserted in its memoranda, it is difficult to assess the propriety of privilege determinations based just on categorical assertions.  To be sure, some of the documents addressed in the declarations are included in the sampling that EPA has provided

to the Court, but that is not true for the entirety of the sampling.

One deficiency in the declarations is their conclusory analysis.  The declarations frequently attempt to satisfy the elements of the privilege merely by using those elements as "buzz words" in their privilege assertions.  For example, the Ergener Declaration for OECA states that "the[] documents reflect the personal opinions of Agency staff and the internal, pre-decisional deliberation of Agency staff and officials leading to the development of final Agency positions on policy and case-specific CERCLA enforcement issues."  Defs.' Exh. 20 ("Ergener Decl.") at 4.  But this statement does not by itself establish that the documents are predecisional as contemplated by the deliberative process privilege.  See also Ergener Decl. at 5.  Specifically, the broad assertion fails to identify the particular CERCLA enforcement policy (or some step in the development thereof) that the documents relate to, and makes clear that the agency has (as confirmed by the Court's in camera review) withheld documents as predecisional and deliberative simply because they precede and relate to a decision in a particular case.  This is insufficient, because straightforward applications of pre-existing law or policy to particular factual situations are not considered deliberative.  See Coastal States, 617 F.2d at 868.  Documents that simply "play into" a case- or investigation-specific decision do not fall under the privilege's protective umbrella because the final decision in the specific case or investigation is reached by applying policies, procedures, and laws that have already been established.  Id.  The deliberative-process privilege is concerned with the development and revision of the policies, procedures, or laws that would be used to shape case-specific determinations.

Moreover, the law is clear that declarations containing conclusory or general assertions that certain materials "have no official or binding effect," "are not treated as authority or

precedent in other matters under consideration", "can be freely rejected by decision-making

officials," or are created by persons who "do not have authority to make final decisions on the

matters," e.g., Ergener Decl. at 4, are insufficient alone to satisfy the burden of establishing that

the documents are deliberative.  See Schlefer, 702 F.2d at 240-44; Coastal States, 617 F.2d at

867-68; see also Tax Analysts, 117 F.3d at 617.  Even assuming that the assertions in the

declarations are correct, they do not establish that agency employees have not implemented the

viewpoints in the documents or acted pursuant to them.  When a specific rationale forms the

basis for an employee's dealings with the public, it has become the "law" at least with respect to

those particular dealings, whether or not the agency has formally adopted it, intended to follow it,

or assigned it "precedential" or "binding" status.  See Schlefer, 702 F.2d at 237.  Quite simply,

agencies act only through their employees.  If the recommendations in the documents have

actually been routinely followed by agency employees, they do not qualify for protection under

the deliberative-process privilege, because they have become the agency's position by virtue of

their implementation in specific cases against members of the public.  EPA's declarations do not

convince the Court that although its employees are theoretically free to reject the positions

articulated in many of the documents, they have actually done so.

The insufficiency of the declarations is particularly evident with respect to those

documents that use authoritative, rather than suggestive, language and tone, with an apparent

purpose of establishing or articulating policy rather than merely recommending it.  In a similar

vein, the fact that a document is a draft, rather than final, memorandum does not (standing alone)

establish that it is not a statement of agency policy or position.  The drafting process is not

always substantive in nature, often concerning such technical, minor matters as whether to use a

comma rather than a semi-colon.  Finally, there is an insufficient indication that EPA has

withheld only those portions of the documents that fit within the privilege.  Not only does the

Court's in camera review suggest that no segregability analysis has been undertaken, but EPA has

never challenged GE's assertion that it failed to engage in such a process.  Hence, EPA must re-

assess its deliberative-process privilege assertions regarding the material identified by the Court

in Table T-1 as possibly protected.[3]  The Court has, wherever possible, otherwise made

determinations, as reflected in Table T-1, on assertions of deliberative process privilege for the

sample documents based on the legal principles set forth in this Memorandum Opinion.

## II.    **The Work-Product Doctrine**

A.  *Parameters of the Doctrine*

The purpose of the work-product doctrine is to ensure that "a lawyer [can] work with a

certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel,"

and to permit attorneys to "assemble information, sift what [they] consider[] to be the relevant

from the irrelevant facts, prepare [their] legal theories and plan [their] strateg[ies] without undue

and needless interference."  Hickman v. Taylor, 329 U.S. 495, 510-11 (1947).  To this end, it

"provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and

evidence, candidly evaluate a client's case, and prepare legal theories," Coastal States, 617 F.2d

---

[3]Because the Court cannot determine, at this juncture, whether some documents are actually covered by the deliberative process privilege, it would be premature to assess GE's assertion that the privilege should yield to its showing of sufficient need.  If, after re-assessing its privilege assertions, EPA fails to convince the Court that the privilege applies, then the Court need not consider whether GE has made a sufficient showing to overcome it.  On the other hand, however, if EPA does satisfy the Court as to the privileged nature of the documents, then GE would need to establish that its need for the privileged material is, when viewed in light of the Hinckley factors, greater than the interests the privilege is designed to protect.  At that time, the Court will consider the arguments already made by the parties.

at 864, so long as the document at issue was "created for use at trial or because a lawyer or party

reasonably anticipated that specific litigation would occur and prepared [it] to advance the party's

interest in the successful resolution of that litigation," Willingham v. Ashcroft, 228 F.R.D. 1, 4-5

(D.D.C. 2005); see Delaney, Migdail & Young, Chartered v. IRS, 826 F.2d 124, 127 (D.C. Cir.

1987) (identifying "the function of the documents as the critical issue").  To determine whether a

document was "prepared in anticipation of litigation," a court must examine the nature of the

document, the factual situation in the particular case, and whether the lawyer had a subjective

and reasonable belief (as judged by objective standards) that "litigation was a real possibility." In

re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998).  If the document "would have been prepared

in essentially similar form irrespective of the litigation[,] . . . it [cannot] fairly be said that [it

was] created because of actual or impending litigation." Id.

     Because the purpose of the doctrine is to protect the integrity of the adversarial process,

documents should not be withheld if their disclosure would not fairly be expected to impact

pending or impending litigation.  See Evans v. Atwood, 77 F.R.D. 1, 8 (D.D.C. 1997).

Documents prepared for some purpose other than litigation, moreover (for example, material

generated in the ordinary course of business), likewise do not fall within the doctrine's ambit.

See Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC, 5 F.3d 1508, 1515 (D.C. Cir.

1993).  With respect to a document that was generated for more than one purpose, the work-

product doctrine will only apply if litigation played a substantial role in its creation.  See

Willingham, 228 F.R.D. at 4 (citing Jumpsport, Inc. v. Jumpking, Inc., 213 F.R.D. 329, 347-48

(N.D. Cal. 2003)).  Under the work-product doctrine's shield, materials prepared by or for

parties, or by or for the parties' representatives (including attorneys, consultants, sureties,

-19-

indemnitors, insurers, and agents), are protected.  Judicial Watch, Inc. v. Dep't of Justice, 432

F.3d 366, 369 (D.C. Cir. 2005).  The term "litigation" is interpreted broadly to encompass not

only trials and other judicial proceedings, but also adversarial administrative matters, settlement

negotiations, and the avoidance of anticipated litigation.  See, e.g., Public Citizen, Inc. v. Dep't of

State, 100 F. Supp. 2d 10, 30 (D.D.C. 2002), overruled in part on other grounds, 276 F.3d 634

(D.C. Cir. 2002); Cities Serv. Co. v. FTC, 627 F. Supp. 827, 832 (D.D.C. 1984); Carey-Canada,

Inc. v. Aetna, 118 F.R.D. 250, 251-52 (D.D.C. 1987).  Although one must be cautious not to

sweep all attorney efforts on the entire § 106 program at EPA within the umbrella of the work-

product doctrine, presumably "litigation" includes the issuance and enforcement of specific

UAOs, the development and enforcement of specific Consent Decrees, and other specific

CERCLA-related regulatory proceedings or actions.

The documents need not have been prepared in anticipation of a particular claim, see

Schiller v. NLRB, 964 F.2d 1205, 1209 (D.C. Cir. 1992) (citing Delaney, 826 F.2d at 127), but

there must be some specificity to an assertion of work-product protection.  It is not enough for

the documents to relate to some unspecified claim that may conceivably be brought by some

unidentified party at an unknown point in the future.  Hence, documents that relate only generally

to a broad agency program that is investigatory or adversarial in nature are not properly

considered to have been "prepared in anticipation of litigation."  See Coastal States, 617 F.2d at

865 ("To argue that every audit is potentially the subject of litigation is to go too far.  While

abstractly true, the mere possibility is hardly tangible enough to support so broad a claim of

privilege.").  Such a broad interpretation of the doctrine would shield all materials prepared by

lawyers working for agencies that have significant law enforcement or investigatory duties, and,

therefore, would foreclose the liberal discovery contemplated by the Federal Rules of Civil

Procedure.  Id.  The focus, then, is whether, under the totality of the circumstances surrounding

the document, it may fairly be said to have been created with an eye toward advancing the client's

interest in specific litigation.  See Willingham, 228 F.R.D. at 4.

Accordingly, a work-product assertion must be supported by some articulable, specific

fact or circumstance that illustrates the reasonableness of a belief that litigation was foreseeable.

Compare In re Sealed Case, 146 F.3d at 885-86 (protecting documents created with awareness

that the FEC was investigating and initiating civil actions concerning possible statutory

violations where press coverage indicated that litigation against specific party was probable);

Schiller, 964 F.2d at 1208 (protecting an internal NLRB memorandum that "contain[ed] advice

on how to build an [Equal Access to Justice Act] defense and how to litigate EAJA cases," as

well as other documents that outlined instructions for preparing and filing pleadings, contained

legal arguments, and identified supporting authorities); Delaney, 826 F.2d at 126-27 (protecting

IRS documents that identified the "types of legal challenges likely to be mounted against a

proposed program, potential defenses available to the agency, and the likely outcome"); and

SafeCard, 926 F.2d at 1202-03 (protecting documents prepared by SEC lawyers "in the course of

an active investigation focusing upon specific events and a specific possible violation by a

specific party"), with Coastal States, 617 F.2d at 864-66 (refusing to shield advice memoranda

prepared by agency attorneys in response to requests from agency auditors investigating

regulatory compliance because they only contained interpretations of agency law, not advice

regarding how to proceed with particular investigations), and Evans, 177 F.R.D.at 7 (refusing to

shield agency manual and guidelines that were "promulgated as general standards to guide the

Government lawyers in determining whether or not to bring an individual to trial in the first place").  Sufficient specificity is typically inferred from, for example, the document's identification or discussion of a particular violation, alleged violator, investigation, or legal challenge, defense, strategy, or argument.  See Equal Employment Oppty. Comm'n v. Lutheran Social Servs., 186 F.3d 959, 968-69 (D.C. Cir. 1999). This is particularly important when the document was created by a government lawyer who was acting as a prosecutor or investigator. See In re Sealed Case, 146 F.3d at 885-88.  "Where . . . lawyers claim they advised clients regarding the risks of potential litigation, the absence of a specific claim represents just one factor that courts should consider in determining whether the work-product privilege applies." Id. at 887.  "In some cases, [however], the absence of a specific claim will suggest that the lawyer had not prepared the materials 'in anticipation of litigation.'" Id.

When the work-product doctrine applies, its reach is broad.  Even the factual portions of a document may be withheld, so long as the document as a whole was created in anticipation of litigation.  See Tax Analysts, 117 F.3d at 620 (citing Martin v. Office of Special Counsel, 819 F.2d 1181, 1184-87 (D.C. Cir. 1987)); see also Tax Analysts v. Internal Revenue Serv., 391 F. Supp. 2d 122, 129 & n.8 (D.D.C. 2005).  In contrast, if a document was not as a whole created in anticipation of litigation, but a specific portion of that document was, then a court may order disclosure of the document with the work-product material redacted.  See Tax Analysts, 117 F.3d at 620; see also Willingham, 228 F.R.D. at 6 & n.3.  A party may only overcome the doctrine's protection by making a sufficient showing of need.  See Fed. R. Civ. P. 26.  Opinion work product -- defined as an attorney's thoughts, impressions, interpretations, and analysis -- is guarded with particular fervor.  See Willingham, 228 F.R.D. at 5.  Accordingly, a much higher

threshold showing of necessity is required to obtain this type of protected material.  See id.

B. *EPA's Sampling*

The Court concludes that EPA has withheld documents that are akin to broad, general

training manuals and guidelines.  See, e.g., P.L. No. 83; P.L. No. 678.  Those are not protected

work product and must be disclosed.  See Evans, 177 F.R.D. at 7, 8.  Similarly, Coastal States

forecloses EPA from invoking the doctrine with respect to documents that relate only to broad

agency programs or policies.  See, e.g., P.L. No. 93; P.L. No. 160; P.L. No. 2814.  These

documents lack the requisite specificity to have been created in anticipation of litigation that was

foreseeable to a reasonable attorney.  Essentially, they are the very documents this Circuit has

indicated a reluctance to protect.  See In re Sealed Case,146 F.3d at 887 (stating that although a

specific claim is not always required, its absence in certain cases may illustrate that the document

was not prepared in anticipation of litigation).  In accordance with the D.C. Circuit's decision in

SafeCard, however, documents that were created with a particular site, PRP, investigation, event,

or violation in mind are generally protected because they possess a reasonable nexus to the

anticipation of foreseeable and specific litigation.  See, e.g., P.L. No. 2304; P.L. No. 2358; P.L.

No. 1425.  Documents which are less specific, but nonetheless analyze legal claims, arguments,

strategies, or defenses for future litigation, may be withheld in accordance with the decisions in

Delaney and Schiller.  See, e.g., P.L. No. 4771.  Finally, the documents that appear to have been

created for some other purpose than to assist in reasonably foreseeable litigation are not properly

withheld as work product.  See, e.g., P.L. No. 1094; P.L. No. 5638.  Any portions of  documents

that satisfy the doctrine's elements, however, may be withheld.  Table T-1 includes the Court's

determinations on the application of the work-product doctrine to the representative sample of

EPA documents.

## III. __The Attorney-Client Privilege__

    A. *Parameters of the Privilege*

    "The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." In re Lindsey, 158 F.3d at 1267.  It "reflects society's judgment that promotion of trust and honesty within the relationship is more important than the burden placed on the discovery of truth." Coastal States, 617 F.2d at 862.  The underlying purpose of the privilege is to protect a client's disclosures so as to foster the full and frank communications that are necessary for effective legal representation, and its protective umbrella extends to written, as well as spoken, communications.  Id.  In this vein, the privilege only extends to "'those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" Id.  The scope of the privilege is not limited to the litigation context or to specific disputes; rather, it encompasses "all situations in which an attorney's counsel is sought on a legal matter." Id.

    The protections of the privilege "are not lost because an attorney consults other attorneys about the subject-matter of the communication," and will extend to "communications between attorneys and all agents or employees of the organization[al client] who are authorized to act or speak for the organization in relation to the subject-matter of the communication." Mead Data Central, Inc. v. Air Force, 566 F.2d 242, 253 n.24 (D.C. Cir. 1977).  To be protected under the privilege, the information must have been confidential at the time of the communication, and that confidentiality must have been preserved since.  Coastal States, 617 F.2d at 863.  The agency bears the burden "to demonstrate that confidentiality was expected in the handling of the[]

communications, and that it was reasonably careful to keep this confidential information protected from general disclosure." Id. Information that is obtained from third parties and communicated to agency lawyers by agency employees is not protected if "no new or confidential information concerning the Agency is imparted in the process." See Schlefer, 702 F.2d at 245. Under such circumstances, the purpose of the privilege is not furthered because the communication between the agency and its attorneys does not "contain private information concerning the agency." Coastal States, 617 F.2d at 863.   Likewise, the legal conclusions of the agency or its lawyers are not protected if they rest on such third-party information. See id. at 862-63; see also Tax Analysts, 117 F.3d at 619; Schlefer, 702 F.2d at 245.  Just as in the context of the deliberative process privilege, the attorney-client privilege dissolves if the communication has been adopted as agency policy.  See La Raza, 411 F.3d at 360-61.  Presumably, this rule is a hybrid outgrowth rooted in the privilege's purpose (to protect confidential matters), the law's intolerance for the maintenance by a federal agency of a body of "secret law," and the fact that the privilege applies only when attorneys are acting as attorneys.

GE's contention that government lawyers are categorically less entitled than private lawyers to invoke the attorney-client privilege as a basis for withholding information is without merit.  See Pl.'s Mem. Supp. at 8-10; Pl.'s Reply at 3-4.  GE's reliance on In re Lindsey to this end is misplaced.  That case addressed a unique situation not presented here: whether White House counsel could invoke attorney-client privilege during an ongoing grand jury investigation in order to shield information concerning possible criminal activity by a government officer.  In re Lindsey has a far more limited scope, then, than GE acknowledges.  Indeed, that decision clearly confirms that "government officials will still enjoy the benefit of fully confidential

communications with their attorneys <u>unless the communications reveal information relating to possible criminal wrongdoing</u>." <u>In re Lindsey</u>, 158 F.3d at 1276 (emphasis added); <u>id.</u> at 1273 (stating that the "obligation of a government lawyer to uphold the public trust reposed in him or her strongly militates against allowing the client agency to invoke a privilege <u>to prevent the lawyer from providing evidence of the possible commission of criminal offenses within the government</u>") (emphasis added).

To be sure, GE is correct that when government attorneys are "in effect . . . making law," they may not properly invoke the protections of the attorney-client privilege.  In that context, the communications are made not for the purpose of securing legal advice or services, but rather for the purpose of developing policy.  When government attorneys are functioning in the same capacity as do private attorneys, however, then the ordinary protections available to private clients and attorneys apply no differently to government agencies and attorneys.  <u>See</u>, <u>e.g.</u>, <u>In re Lindsey</u>, 158 F.3d at 1269 (quoting <u>Coastal States</u>, 617 F.2d at 863; <u>Mead Data Central</u>, 566 F.2d at 249, 253, 255 n.32).  If an agency "'is dealing with its attorneys as would any private party seeking advice to protect personal interests, [then it] needs the same assurance of confidentiality so [that] it will not be deterred from full and frank communications with its counselors,'" <u>In re Lindsey</u>, 158 F.3d at 1269 (quoting <u>Coastal States</u>, 617 F.2d at 863), and confidentiality of the communication may be inferred, <u>see</u>, <u>e.g.</u>, <u>Electronic Privacy Information Ctr. v. Dep't of Homeland Security</u>, 384 F. Supp. 2d 100, 116 (D.D.C. 2005) (citing <u>Coastal States</u>, 617 F.2d at 863).  In this context, "'the 'client' [is] . . . the agency and the attorney [is] . . . the agency lawyer." <u>Tax Analysts</u>, 117 F.3d at 618.  There is no authority or justification, then, for extending the

principle established in In re Lindsey beyond the narrow context that it was meant to address.[4]

With respect to organizational clients (such as government agencies), attorneys often have more than one role, and the line between those functions is not always easily ascertainable.  For example, no private attorney has the power to regulate the rights, responsibilities, or conduct of the public by setting policy.  Private attorneys do, however, perform functions that evaluate the legality (or legal advisability) of actions proposed by the client (as when a company asks its attorney to assess whether a particular method of calculating its federal taxes comports with the law, or whether it would be prudent and legal to deal with its business partners in a specific manner).  Quite simply, to be protected under the privilege, the communication must relate to some legal strategy, or to the meaning, requirements, allowances, or prohibitions of the law.  Accordingly, a memorandum from an agency attorney that assesses whether the facts surrounding a particular alleged violation satisfy the applicable legal standards for pursuing a PRP, or whether the provisions in a draft UAO are consistent with the law, may be protected.   A draft UAO created by an attorney, however, may not be protected by the attorney-client privilege because it is not legal advice; instead, it amounts to an affirmative determination by the agency that the party is legally responsible for a specific violation, and assigns certain attendant responsibilities and penalties.[5]

---

[4]To the extent that GE also argues that In re Lindsey dilutes the availability of the work-product doctrine and deliberative process privilege for agency lawyers, the Court rejects those arguments as well.

[5]Due to the unique nature of EPA's enforcement-first regime, EPA attorneys do not function as ordinary prosecutors.  Ordinary prosecutors certainly "enforce" the law in that they decide to initiate proceedings against a suspected violator.  In doing so, however, they advocate for the agency (or the public) against the suspected violator, with a neutral third-party as the arbiter -- they do not themselves regulate or adjudicate liabilities, rights, responsibilities, or penalties.

It is the province of a lawyer within the bounds of the privileged attorney-client relationship to weigh the legal risks associated with certain undertakings, tailor those undertakings to the requirements of the law, prevent a client from running afoul of the law, and zealously represent the client's legal interests.  But the privileged role of an attorney does not encompass the establishment of broad agency policy, adjudication of responsibilities, assessment of penalties, or other functions that create the law.  Hence, when an attorney is acting more in the nature of a business advisor, legislator, adjudicator, or regulator, the attorney-client privilege generally does not apply.  See In re Lindsey, 158 F.3d at 1269; Coastal States, 617 F.2d at 863; Mead Data Central, 566 F.2d at 249, 253, 255 n.32.  Tellingly, these types of communications also would not commonly reflect confidential information concerning the client agency.  See, e.g., P.L. No. 3211; P.L. No. 5995; P.L. No. 767; P.L. No. 2408.

B.  *EPA's Sampling*

Some of the documents EPA has withheld do not involve agency attorneys functioning in the same fashion as do private attorneys.  Rather, they involve agency attorneys drafting or establishing broad policy, recommending a regulatory action or determination, or otherwise performing tasks that are in the nature of adjudication or regulation.  See, e.g., P.L. No. 2358; P.L. No. 2408; P.L. No. 2814; P.L. No. 2831; P.L. No. 3211.  In the context of this case and GE's pattern or practice due process challenge, such documents do not reflect the provision of

---

Prosecutors, then, do not function in any materially different way from private attorneys -- it is the nature of their client that differs.  EPA attorneys in UAO proceedings, however, may function in a materially different way.  UAOs may essentially be viewed as condensed prosecutions and adjudications: they initiate adversary proceedings against a PRP, but simultaneously constitute a statement that the PRP is legally responsible for the violation and require the PRP to remedy wrongs through the fulfillment of certain responsibilities and penalties (i.e., UAOs regulate the conduct of PRPs).

confidential legal advice to the client agency, they do not concern legal strategy, and they do not

reflect information that is confidential with respect to the client agency.  To the contrary, when

they reflect any confidential information at all, it is most often information provided by a third-

party -- the PRP.

EPA has failed to identify recipients for some of the documents in the sampling.  See,

e.g., P.L. No. 5239; P.L. No. 1094.  The purpose of the attorney-client privilege is to foster the

full and frank communication required to enable effective legal representation through the

protection of client confidences.  When non-essential third-parties (for example, agency

personnel who are not authorized to act or speak on behalf of the agency with respect to the

subject matter addressed in the document and who are not lawyers providing legal advice) are

made privy to protected material, the privilege dissolves.  EPA -- the party that bears the burden

of establishing its privilege assertions -- has provided the Court with little information to support

a finding that certain documents have been shielded from exposure to non-essential third-parties.

It is worth reiterating that the privilege protects communications, not necessarily the

underlying subject matter of the communications.  For example, a conversation, a recording of a

conversation, or a written communication may be protected, but an attorney's notes regarding the

subject matter may not be protected if they do not reflect the confidential communication.  Put

another way, it is not necessarily the case that when a client contacts an attorney for legal advice,

anything the attorney has produced regarding the subject matter of that contact is covered by the

attorney-client privilege.  Accordingly, for documents that do not take a form that is apparently

communicative, or that do not by themselves reflect the fact of a confidential communication,

some showing that the documents were prepared for transmission to someone else -- even if they

were never actually sent -- will ordinarily be required.  For some documents, EPA has failed to identify any intended or actual recipients.  See, e.g., P.L. No. 1482; P.L. No. 1724; P.L. No. 1823; P.L. No. 5009.  Again, the Court's application of attorney-client privilege law to the sample of EPA documents is found in Table T-1.

With respect to the particular documents and unique factual context of this case, application of the attorney-client privilege and work product doctrine have occasionally produced results that may, on the surface, seem inconsistent because some documents (involving specific UAOs, for example) are protected work product but do not come within the attorney-client privilege.  To be sure, there is some tension inherent in this result.  However, it is an odd but unavoidable consequence of the distinct purposes and requirements of the two protections -- where one is generous, the other is restrictive.  Although the attorney-client privilege does not require that a document have been created in anticipation of specific litigation, it does require that the attorney act in a legal (rather than, for example, a regulatory or business) capacity.  The work product doctrine, on the other hand, does not so constrain an attorney who fills more than one role, so long as the document at issue was created in anticipation of "litigation."  The doctrine broadly defines "litigation" to include nearly any adversarial agency proceeding as long as there is some specificity regarding a particular party, offense, or proceeding.  Hence, some materials can be work product (i.e., created by an attorney in anticipation of broadly-defined litigation) yet not be within the attorney-client privilege because the attorney is performing a regulatory or enforcement role at the agency.

## IV.  Subject-Matter Waiver

GE argues that, based upon the concept of subject-matter waiver, EPA's inadvertent

disclosure of documents that are "substantively identical" to other documents that have been

withheld has waived any otherwise-applicable privilege or protection with respect to withheld

documents of the same type.  The Court ordered GE to submit the documents that were allegedly

disclosed inadvertently by EPA.  Of the ninety-two documents submitted, EPA actually asserts

privilege over just twenty-four.[6]

A. *Waiver of the Deliberative Process Privilege*

The concept of subject-matter waiver is almost uniquely a function of the attorney-client

relationship.  There is no authority for applying the waiver rule to the deliberative process

privilege.  As EPA argues, disclosure of a deliberative document waives the privilege only as to

that document, not as to others dealing with the same subject matter.  Defs.' Mem. Opp'n at 19.

Interestingly, GE acknowledges this, but then subtly attempts to persuade the Court that, based

upon principles and considerations that apply in the context of other privileges and protections,

the waiver rule should be expanded to encompass the deliberative-process documents at issue

here.  However, there is no indication that EPA has attempted to manipulate the discovery

process, or has acted inequitably or otherwise in bad faith.  To the contrary, the record shows that

EPA carefully considered its privilege claims, has acquiesced in GE's requests that it reconsider

those claims, and has even made additional disclosures when warranted.   This demonstrates a

good faith effort to work with GE and to operate within the confines of the deliberative process

privilege's contours.  The fact that EPA has also sought to protect its interests by using available

---

[6]Because the remainder of the documents were intentionally produced without any privilege
claim, their disclosure does not effect any subject-matter waiver as to other documents for which
a privilege is asserted.  Nonetheless, EPA must be consistent and principled in its privilege
assertions, and cannot claim privilege for another document that is in all relevant respects
identical to the one that it now asserts is not privileged and thus was intentionally produced.

privileges to avoid disclosing anything more than it reasonably believes necessary does not

persuade the Court otherwise.  This case, then, does not present circumstances that would justify

the unprecedented action of importing the waiver rule into the realm of the deliberative process

privilege.

      B. *Waiver of the Work-Product Doctrine*

"[A] waiver of the . . . work product [doctrine] as to particular documents does not extend

to other documents addressing the same subject matter."  In re United Mine Workers of Am.

Employee Benefit Plans Litig., 159 F.R.D. 307, 310-11 (D.D.C. 1994); see Hertzberg v.

Veneman, 273 F. Supp. 2d 67, 81-82 & n.8 (D.D.C. 2003); Mineba Co., Ltd. v. Pabst, 228

F.R.D. 34, 36-37 (D.D.C. 2005).  To be sure, notions of implicit waiver have, on occasion,

surfaced in the work-product case law with respect to inequitable conduct by the disclosing party.

But the doctrine's protective umbrella is only compromised when setting it aside would directly

further its underlying policy.  See, e.g., U.S. ex rel. Fago v. M&T Mort. Corp., 235 F.R.D. 11,

16-17 (D.D.C. 2006);  Bowles v. Nat'l Ass'n of Home Builders, 224 F.R.D. 246, 258-59 (D.D.C.

2004); In re United Mine Workers, 159 F.R.D. at 312.  Hence, if a party seeks to use the doctrine

not as the "shield" that it was intended to be, but rather as a "sword" to unfairly influence the

outcome of the proceedings, then the integrity of the adversarial system is most effectively

preserved by removing the doctrine from that party's litigation arsenal.  See In re Sealed Case,

676 F.2d 793, 818 (D.C. Cir. 1992).  That, however, is not the factual setting presented here.

The Court will not ignore the purpose and function of the work-product doctrine simply because

doing so would make it easier for GE in this litigation.  In this case, the integrity of the

adversarial system is furthered not by rendering the work-product doctrine inert, but rather by

allowing it to function reasonably.  As discussed above, there are no circumstances presented here that would justify an unprecedented extension of the waiver rule to the work-product context.

C. *Waiver of the Attorney-Client Privilege*

"[T]he confidentiality of communications covered by the [attorney-client] privilege must be jealously guarded by the holder of the privilege lest it be waived.  The courts will grant no greater protection to those who assert the privilege than their own precautions warrant."  In re Sealed Case, 877 F.2d 976, 980 (D.C. Cir. 1989).  Hence, a privilege holder's inadvertent disclosure of privileged materials will effect a waiver that "'extends to all other communications relating to the same subject matter.'"  Id. at 980-81 (citing In re Sealed Case, 676 F.2d at 809).  Of the twenty-four inadvertently-disclosed documents, EPA asserts attorney-client privilege over eighteen.[7]  EPA concedes that, with the exception of perhaps one document, its disclosures were inadvertent.[8]  Moreover, EPA acknowledges that the inadvertent disclosures have regretfully

---

[7]For example, Pl.'s Exhs. 7 and 40 do not involve attorney-client privilege assertions.  See Defs.' Surreply at 9 ¶ 7, 22 ¶ 40.  Similarly, EPA only claims work-product protection for Pl.'s Exhs. 20, 39, 84, and 89.  See id. at 13 ¶ 20, 21 ¶ 39, 28 ¶ 84, 30-31 ¶ 89.  It is unclear whether EPA makes any privilege assertions over Pl.'s Exh. 92, as it has failed to address this document in its supplemental memorandum.

The Court has not blindly deferred to EPA's assertion of the privilege, notwithstanding GE's decision not to argue directly against these privilege assertions for the limited purpose of subject-matter waiver analysis.  It must be remembered that subject-matter waiver applies only to those documents for which EPA has properly asserted attorney-client privilege.  Accordingly, Table T-2 includes the Court's findings with respect to whether the documents are actually protected by the attorney-client privilege.

[8]EPA asserts attorney-client privilege over Pl.'s Exh. 33, but argues that its production of the document should not provide the basis for subject-matter waiver.  Specifically, EPA submits that the document was produced in connection with the agency's response to a FOIA request that did not involve the personnel working on the discovery effort in this case.  EPA admits, however, that it does not know whether the document was inadvertently produced in the FOIA response.

caused some subject-matter waiver of the privilege, but resists GE's expansive interpretation of that concept.  According to EPA, subject-matter waiver should extend only to the inadvertently-disclosed documents themselves, to copies of those documents, and to other documents that are virtually identical.  GE, on the other hand, suggests that the scope of waiver here encompasses all documents of the same type as the inadvertently-disclosed materials, as well as those that relate to the broader content of the documents, defined generically by GE as UAOs and enforcement.

The question, then, is how broadly or narrowly to define the subject matter of the inadvertently-disclosed documents.  Not surprisingly, the Court resolves this issue between the extremes advanced by the parties.  The scope of subject-matter waiver is a matter that rests within the Court's discretion.  See M&T Mort. Corp., 2006 WL 845847, at *5 (citing United Mine Workers, 159 F.R.D. at 309); see also In re Sealed Case, 877 F.2d at 981.  Ordinarily, a court's decision will be informed by the particular circumstances of the case and the conduct of the party seeking to avail itself of the privilege.  See In re Sealed Case, 877 F.2d at 980-81; Bowles, 224 F.R.D. at 260.  In light of these principles, the Court concludes that the scope of waiver urged by GE is unduly broad in the context of this case.  GE's reliance upon the label assigned to the categories of documents and a broad description of the issues addressed therein, rather than the precise content of the documents, is misplaced.  Hence, the accidental release of one workgroup document does not automatically remove the privilege for other workgroup documents unless those documents address the same subject matter and are not covered by other

---

The Court is required, under the law of this Circuit, to construe subject-matter waiver broadly.  In light of EPA's inability to represent that the disclosure of this document -- regardless of its context -- did not result from carelessness that could jeopardize the sanctity of the attorney-client relationship, the Court finds that the subject-matter waiver rule must be applied as to the document.

protections.  Similarly, the inadvertent disclosure of Document A, which discusses Element 1 of
UAO enforcement, does not waive the attorney-client privilege with respect to portions of
Document B that focus on Element 2 of UAO enforcement, because Element 2 is not within the
reasonably-defined subject matter of Document A.  The  broad approach advocated by GE is
particularly unwarranted where, as here, there is no indication that EPA has acted in bad faith or
has disregarded the sanctity of the attorney-client relationship.  Indeed, it appears that the
inadvertent disclosures were the inevitable result of EPA's attempt to respond conscientiously to
GE's extremely broad document requests within a compressed time frame while operating within
the confines of its limited resources.

This is not to say, however, that the Court adopts wholesale the waiver interpretation
urged by EPA.  Although the Court is confident that, despite the inaccuracies that have come to
light, EPA has made reasonable efforts zealously to guard its attorney-client privilege, it must be
remembered that the raison d'etre of the subject-matter waiver doctrine is to deter careless
treatment of documents that should have been more carefully guarded.  Hence, the rule makes
available to the adversary a broader universe of information than that which is yielded by the
inadvertently disclosed documents themselves.  In light of EPA's substantial efforts, there is
arguably not much carelessness to deter.  Nevertheless, mistakes were made, and the waiver
rule's purpose is thus implicated.  To accept EPA's very narrow interpretation would be to render
that purpose a nullity.

Mindful of the parties' competing views, and having considered the specific
circumstances of the case, the Court concludes that the subject matter of a specific disclosed

document for waiver purposes consists of only the information that is contained within,[9] or has

by its terms been brought within, the document's four corners.  Hence, the inadvertent production

by EPA of the eighteen privileged documents has caused a waiver of the attorney-client privilege

with respect to: (1) the inadvertently-disclosed documents themselves, and other copies thereof;

(2) all drafts and revisions of the inadvertently-disclosed documents, to the extent that they

address the same subject matter; (3) comments on, and discussions of, the inadvertently-

disclosed documents; (4) those portions of other allegedly-privileged materials that address the

precise subject matter of the inadvertently-disclosed documents; and (5) those portions of other

allegedly-privileged materials that are incorporated in, or cited for substantive support by, the

inadvertently-disclosed documents.  This waiver does <u>not</u>, of course, extend to those portions of

documents that are subject to another claim of protection, such as the work-product doctrine or

deliberative process privilege.  Accordingly, EPA will be directed to review the documents

identified on its privilege log and to disclose all portions of those documents that fit the Court's

subject-matter waiver description, as explained here and applied in Table T-2, attached.

In the end, very little subject-matter waiver has occurred.  This is a direct result of the fact

---

[9]For example, the inadvertently-disclosed document entitled "Memorandum: Guidance on Enforcement of CERCLA Section 106 Administrative Orders," EPA-5-ORC-003169, GE's Suppl. Exh. 3, discusses certain factors that EPA considers when it decides whether to pursue judicial enforcement of an order.  As Table T-2 makes clear, this portion of the document is privileged; hence, the waiver rule is implicated.  The "subject matter" of this document for purposes of the waiver rule includes the factors themselves, as well as any factors that are identified by reference to relevant portions of other documents.  Accordingly, EPA may still claim attorney-client privilege to protect those portions of other documents that address <u>additional</u> factors that do not fit within this description.  Similarly, the scope of waiver would not encompass a document that discusses a particular factor mentioned in the inadvertently-disclosed document, but in a different context.  For example, there would be no waiver with respect to a document that evaluates such a factor in the context of a specific proceeding.

that most of the waiver documents are not, as the Court has concluded, covered by the attorney-client privilege in the first instance.  Hence, the waiver rule does not apply to those documents. The Court recognizes that there is some latent tension in this result -- although EPA has chosen to assert privilege over the documents, it is actually to EPA's benefit in this context that those documents are not, in the Court's view, actually privileged (because there then is no subject-matter waiver reaching beyond the disclosure of the documents themselves).  Nevertheless, the application of the privilege principles developed by the D.C. Circuit to the unique context of this case, the peculiar nature of the UAO enforcement policy developed by EPA, and the specifics of each document mandate the conclusions reached in Table T-2.  Of course, in the long run, a narrower scope to the attorney-client privilege than EPA has heretofore asserted will mean that more documents must be produced.

## VII.  Appointment of a Special Master

The appointment of a special master is, as EPA insists, an "'extraordinary action.'"  EPA Mem. Opp'n at 42 (quoting Alexander v. FBI, 186 F.R.D. 128, 133 (D.D.C. 1998)).  In its discretion, a court may decide to appoint a special master if it determines that such an action is warranted under the circumstances of the particular case.  See Meeropol v. Meese, 790 F.2d 942, 961 (D.C. Cir. 1986); Alexander, 186 F.R.D. at 133.  Here, the Court concludes that there is no justification for the assertions of bad faith that implicitly underlie GE's request.  Cf. Cobell v. Norton, 224 F.R.D. 1, 4 (D.D.C. 2004) (referring to "abuses" on the part of the government agency -- specifically, lying about its failure to clean up several rodent infestations, spoliation of evidence relevant to plaintiff's claim, and failure to produce documents that were responsive to plaintiff's discovery requests -- as the driving force behind the court's decision to appoint a

special master).

Although EPA's privilege assertions may on occasion have been erroneous or overly broad, they were made in good faith, pursuant to individual, document-specific review.  In those instances where EPA realized that its previous assertions were misguided, it has reversed or amended its determinations and disclosed unprotected documents.  The errors are, in the Court's view, simply the result of EPA's misinterpretation of how certain privileges and protections apply in the amorphous context of agency attorneys who act not only in a fashion similar to private attorneys, but also as regulators, adjudicators, or policymakers.  There is no reason to predict that, having reviewed the proper scope of those privileges and protections as set forth in this Memorandum Opinion, EPA will refuse to reevaluate its withholdings consistent with the Court's decision.  On the contrary, EPA's voluntary reassessments throughout the discovery process illustrate a willingness to act in accordance with the law.  The Court, therefore, agrees with EPA that prior mistakes by a government agency during the disclosure process should not be used presumptively to justify subsequent distrust of that agency's determinations where, as here, the agency has taken steps to correct the earlier mistakes.  See Meeropol, 790 F.2d at 952.  Beyond the doubts as to the need for a special master, the Court is also not satisfied that appointing one would facilitate a more efficient discovery process.  After all, "[i]f the master makes significant decisions without careful review by the trial judge, judicial authority is effectively delegated to [a non-Article III official]; if the trial judge carefully reviews each decision made by the master, it is doubtful that judicial time or resources will have been conserved to any significant degree."  Id. at 961.

It is clear, however, that the need for additional and adequate review of EPA's privilege

assertions remains.  In this regard, EPA will be required to update its current privilege log to

remove (i.e., produce) all documents that the Court has determined are not properly withheld,

and to reflect only the grounds for withholding that the Court has upheld.  EPA should review all

of the documents on the updated privilege log in accordance with the proper basis for the

withholdings, and then create a final privilege log that includes only those documents that, in

light of the principles set forth above, EPA now maintains are properly withheld.  From these

documents, EPA will be required to generate a new sampling that consists of no more than 50 of

the privilege log documents.  The Court will then review this sampling and the corresponding

entries on the new privilege log in camera.

## **CONCLUSION**

For the foregoing reasons, the Court concludes that GE's motion will be granted in part

and denied in part.  EPA shall review its privilege log assertions for all documents in conformity

with the principles and findings set forth in this Memorandum Opinion, and generate a fresh

sampling for the Court to review in camera.  A separate order has been posted on this date.

/s/ John D. Bates

JOHN D. BATES<br>United States District Judge

Dated:   September 12, 2006

### TABLE T-1:

### SUMMARY OF WITHHOLDING DETERMINATIONS DOCUMENTS REVIEWED IN CAMERA

| Log ID Number (per June 16, 2006 "Revised" Log) | EPA's Withholding Assertions | Findings of the Court |
|---|---|---|
| 5 | work-product doctrine ("wpd") | Properly withheld as work product because it discusses specific legal concerns and strategies regarding particular ongoing cases, and the status of those cases.  Even if created at least partly for administrative case management and review reasons, litigation was certainly a substantial factor in its creation. |

| 83 93 | attorney-client privilege ("acp"); wpd | These documents are different versions of the guidance document submitted as Pl.'s Exh. 3 (discussed in Table T-2, below).  Only the last pages of P.L. Nos. 83 and 93 are protected as work product because they address the parameters of a specific legal defense that may be raised by a PRP in particular litigation; although comprised of excerpts from a court decision, disclosure would reveal the mental impressions of the attorney by indicating that the attorney considered the decision important.  The remainder of the documents, however, is not protected as work product because those portions are akin to the documents at issue in <u>Evans</u> and <u>Coastal States</u> -- they are general guidance for agency employees regarding broad standards to be used when deciding whether to pursue enforcement.  Such material lacks the requisite specificity to evidence that their creation was motivated by foreseeable and specific litigation.  The judicial enforcement sections of these documents are, however, protected by the attorney-client privilege (as are the "general considerations" sections) because the decision whether to pursue judicial enforcement is a traditional legal assessment that includes the analysis of governing law.  These portions of the documents advise the enforcement team as to the legal merits of defenses, litigation risks, and the legitimacy of certain arguments in the litigation context.  For the reasons discussed below in Table T-2 regarding Pl.'s Exh. 4, however, there has been a waiver of the attorney-client privilege regarding these items.  No other portion of these documents is protected by the privilege because the handwritten notations are technical and editorial, rather than substantive and legal, and because the authors appear to be stating enforcement goals and regulatory policy rather than providing legal advice. |
| --- | --- | --- |

| 160 | acp; wpd | Not work product because the document lacks sufficient specificity with respect to particular foreseeable litigation; simply sets forth general guidance regarding a broad class of cases, without providing any nexus to a specific PRP, investigation, violation, or site. The attorney-client privilege also does not apply because the document does not provide legal advice or address the parameters of the law; rather, it sets broad policy regarding the agency's regulatory goals. |
|---|---|---|
| 173 | acp; wpd | Properly withheld as work product.  The document concerns an ongoing mediation and potential resolution with respect to a specific site and suspected violation.  The document consists of attorney recommendations, analyses, and mental impressions regarding whether the proposed resolution is consistent with current and proposed guidance.  The document therefore is also within the attorney-client privilege. |
| 226 | acp; wpd | Properly withheld as work product and under the attorney-client privilege.  The author initiated the e-mail because a particular course of action is contemplated in a case, and sought legal consultation regarding whether the proposed action would be proper under the law. |
| 370 | acp; wpd | Properly withheld as work product.  May not qualify under attorney-client privilege because EPA has failed to identify any recipients, and its format is not indicative of a communication. |

| 539 | deliberative process privilege ("dpp") | Only the "Vision for the Cleanup Program" and "Common Themes" sections (pages 2873-76) appear to be deliberative and recommendatory in nature, and hence privileged.  The remainder of the document does not appear to be deliberative based upon its format, tone, language, and content; rather, it appears to recite policies and to recount the events leading up to the establishment of those policies.  In fact, the document purports to be an "accurate description of the current program," see EPA-4-ORC-A0002871 (footnote). |
|---|---|---|
| 546 | acp; wpd; dpp | Properly withheld as work product because it assesses the agency's settlement options with respect to a particular PRP, site and violation. It is not, however, protected in its entirety by the attorney client privilege, since some parts provide policy guidance rather than legal analysis.  Only the legal analysis may be withheld under the attorney-client privilege. Finally, the document constitutes a straightforward application of the agency's existing interpretation of the law to a particular fact pattern, and hence it is not deliberative.  It is not predecisional because it does not precede the development of the policy or agency legal interpretation that is being applied.  Hence, this document is not protected by the deliberative process privilege. |

| 548 | acp; wpd | This item actually consists of two documents. The cover message forwards a memorandum from the Director of the Regional Support Division (who does not appear to have a legal title or to be functioning in a legal capacity). The memo simply reviews a court decision, stating the procedural and factual background and the court's rulings.  It is not work product because it does not evidence an objectively reasonable belief of foreseeable and specific litigation.  The document also does not contain legal advice or any information that is confidential to the agency, and does not qualify under attorney-client privilege. |
| --- | --- | --- |
| 599 | acp | The document does not appear to involve legal advice or to communicate information that is confidential, and therefore is not properly withheld under the attorney-client privilege. |
| 625 | dpp | Paragraphs 1 and 2 represent personal views of individual employees regarding the development or revision of agency policy or law.  So long as they have not subsequently been adopted or implemented (whether formally or informally) by the agency, they may be withheld under the deliberative process privilege.  The remainder of the document, however, either does not include substantive information regarding the employees' personal views (in which case, disclosure would not chill future communications) or simply states straightforward applications of pre-existing policies and procedures to a specific fact pattern. |

| 678 | acp; wpd | Improperly withheld as work product because there is no nexus to specific, foreseeable litigation -- rather, the document discusses how best to compel parties in general to sign onto consent decrees rather than UAOs.  The document also is not properly withheld under attorney-client privilege because it contains no information that is confidential to the agency, does not appear to be legal advice concerning the parameters of the law (rather than regulatory strategy), and instead simply sets forth agency policy for implementing regulatory authority. |
| --- | --- | --- |
| 767 | acp | Improperly withheld because it is not confidential information concerning the agency or legal advice.  Rather, it presents the arguments of a PRP in ongoing litigation and seeks to ascertain how many regions have included a particular practice in their UAOs. Although perhaps work product, EPA has not claimed that protection. |
| 777 | acp; dpp | The attorney-client privilege does not apply because this document does not contain any information that is confidential to the agency or legal advice.  The attorney is acting to help form agency policy, which is a function that private attorneys cannot perform.  The document may, however, be withheld pursuant to the deliberative process privilege, because it contains an employee's personal assessments and recommendations for the development or revision of agency policy (so long as not subsequently adopted or implemented). |

| 800 | dpp | The handwritten notes may be withheld as deliberative and predecisional in nature because they reflect the personal opinions of agency staff (provided that they have not subsequently been adopted, implemented, or otherwise relied upon by the agency).  The typewritten portions (except for the very last question and answer) appear to be statements regarding the Region's current and prior practice and resource constraints.  This is factual, not deliberative, material. |
| --- | --- | --- |
| 839 | acp; wpd | Properly withheld as work product because it contains an attorney's interpretation of a recent court decision and how it could be used to defend EPA policy from attack in future litigation, as well as its pertinence to another, specific type of claim.  Because it involves such legal analysis and interpretations, it is also properly withheld under the attorney-client privilege. |
| 899 | acp | Properly withheld under the attorney-client privilege because it assesses whether a particular settlement strategy is legally permissible -- analogous to a memorandum prepared by corporate counsel regarding whether a particular strategy would violate the law. |
| 1002 | acp; wpd | Properly withheld as work product because the document is a discussion regarding preparation for a court hearing in ongoing litigation, consisting of both facts and attorney mental impressions.  Also properly withheld under the attorney-client privilege, because it concerns the development of legal advice among the agency's attorneys regarding the legality of a particular UAO provision in connection with ongoing litigation. |

| 1013 | acp; wpd | Properly withheld as work product because it is an outline of the attorney's mental impressions regarding the practical impact of a Supreme Court case and legal issues to be addressed in specific litigation.  It may not properly be withheld under the attorney-client privilege, however, because the EPA has not advised to whom, if anyone, the document was transmitted. |
| 1042 | acp; wpd | Protected work product because it appears to address issues that have arisen in the course of an investigation or enforcement proceeding regarding a specific site, PRP, or violation.  It is also attorney-client privileged because the author was seeking legal advice regarding "what the courts have ruled on in the past." |
| 1094 | acp; wpd; dpp | The document is a contact sheet to facilitate administrative ease.  It is not protected work product because it lacks sufficient specificity to establish that it was prepared in anticipation of litigation.  It appears to be simply a case management or internal oversight tool.  It is also not protected by the attorney-client privilege because EPA has failed to identify any recipients, it does not appear to contain confidential information regarding the agency, and it does not appear to concern legal advice, services or strategy.  Nothing about the document appears to be deliberative or predecisional in nature -- the portions that have any relevance to agency policy at all seem simply state the preexisting agency policy or protocol -- and hence, the deliberative process privilege does not apply. |
| 1204<br>1210 | wpd | Properly withheld as work product because it is a draft letter to a specific PRP requesting certain action regarding a specific, previously-issued UAO. |

| 1214 | wpd | Properly withheld as work product because it was created in connection with a specific site, UAO, and PRP. |
|------|-----|-----|
| 1222 | wpd | Properly withheld as work product because it evaluates and discusses a particular option for modifying a specific, preexisting UAO. |
| 1230 | wpd | Protected work product because it is a draft UAO for a specific site/PRP/violation. |
| 1290 | acp; wpd; dpp | The work product assessment for the typewritten draft of the memorandum is the same as that for P.L. Nos. 83 and 93, above, except that the "Validity of Sufficient Cause" defense section and footnote 6 may also be withheld as protected work product.  The handwritten notes may be withheld as protected work product, as they discuss options with respect to specific types of claims and noncompliance, and appear to contemplate a specific UAO.  The material is not protected by the attorney-client privilege because EPA has failed to identify any intended or actual recipients, thereby preventing the Court from assessing whether the documents are actual communications that have been treated as confidential.  Regarding the deliberative process privilege, the handwritten notes appear to be interpretations of already existing policies and law as applied to the facts of the case involving the UAO. Hence, they are not predecisional or deliberative -- they merely assist with ongoing litigation.  The typewritten memorandum does not appear, based on its language, tone, or format, to be deliberative or predecisional and EPA has not established that the views in the document have not been relied upon, implemented, or otherwise subsequently adopted. |

| 1326 | wpd | Protected work product because it discusses strategies, anticipated steps/difficulties, and possible defenses regarding a specific site. |
|---|---|---|
| 1425 | acp; wpd | Protected work product because it was prepared in connection with a specific ongoing proceeding against a particular PRP, and it recommends a procedure for resolution. This document is also protected by the attorney-client privilege because it involves government lawyers functioning in much the same way that private attorneys do in assessing the use of alternative dispute resolution and the likelihood of prevailing through it under the circumstances. |
| 1482 | acp; wpd | Protected work product because the handwritten notations concern a specific UAO in connection with a specific site.  EPA has not, however, established that the document is protected under the attorney-client privilege because it has failed to provide the Court with a list of intended or actual recipients. |
| 1724 | acp; wpd | Protected work product because it involves a specific site, PRP and violation.  It is mostly fact work product, but there are some mental impressions and legal arguments/positions. The document essentially reads as though it provides excerpts for inclusion in a legal brief.  However, EPA has failed to identify any intended or actual recipients, and the Court thus cannot assess whether the document is an actual communication (from its format and content it does not appear to be) or whether it has been treated confidentially -- EPA therefore has not carried its burden of convincing the Court that the attorney-client privilege applies. |

| 1730 | acp; wpd | Protected work product because it is a draft UAO for a specific PRP, site, and violation. It is not, however, covered by the attorney-client privilege because it does not appear to be a communication to the client or to other attorneys regarding legal advice or strategy; rather, it is a communication to the PRP, and it serves to regulate the conduct of the PRP and to assign liability, not to provide legal advice. |
|---|---|---|
| 1781 | acp; wpd | Protected work product because it is a legal product concerning a specific site, PRP, and violation.  The document is not covered by the attorney-client privilege, however, because it recommends regulatory enforcement action (rather than addressing the parameters of the law) and does not communicate legal advice or information that is confidential to the agency. |
| 1823 | acp; wpd | Protected work product because it was drafted with respect to a specific settlement, PRP, site, and violation.  It sets a schedule and discusses issues to be addressed during mediation.  It does not, however, fall under the attorney-client privilege because EPA has not identified any recipients and it does not appear to have been a communication of confidential legal advice between attorneys or between an attorney and a client. |

| 1842 | acp; dpp | This document is not protected by the attorney-client privilege because it does not involve legal advice or analysis -- it simply argues for the adoption or revision of agency policy based on the drafter's views regarding its effectiveness.  The attorney is acting as a decisionmaker or regulator, and concerns addressed are sensibility, prudence, and cost-effectiveness.  The document does, however, appear to recommend new or revised policy (not to set that policy).  If the document has not subsequently been relied upon, adopted, or implemented by the agency, then it may be withheld under the deliberative process privilege. |
|---|---|---|
| 1939 | acp; wpd; dpp | Protected work product because it concerns a settlement proposal for a specific site, PRP and violation.  It is also protected by the attorney-client privilege because it concerns the provision of legal advice and contains information that is confidential to the agency; it seeks pre-approval of settlement terms, mentions colorable claims, and analyzes litigation risk.  It is not, however, deliberative or predecisional, because it does not precede the establishment of the policies and principles being applied to arrive at the conclusion indicated. |
| 2233 | acp; wpd | Protected work product because it contains recommendations regarding a specific UAO draft in connection with an ongoing investigation.  It is also protected by the attorney-client privilege because it contains legal advice (discussing whether the agency can legally order certain action by the PRP). |

| 2304 | acp; wpd; dpp | Protected work product because it discusses specific settlement options regarding a specific violation and PRP.  For the same reasons, the memorandum involves an attorney functioning as a private attorney would; confidentiality may therefore be inferred, and the document is protected by the attorney-client privilege.  Only paragraph 2 in the "Note" section, however, appears to meet the predecisional and deliberative tests for application of the deliberative process privilege. |

| 2358 | acp; wpd | Protected work product because the document is an analysis of a proposed consent decree for settlement with respect to a specific violation, PRP, and site.  Parts of the document are also protected by the attorney-client privilege.  At first blush, the document appears to be in the nature of other documents determined not to be protected (which forwarded drafts of and requested signatures for UAOs).  But there is a fundamental difference between the consent decree process and the UAO process, and that difference justifies the protection of P.L. No. 2358 even though other documents are not protected.  This document reflects a full legal analysis of proposed action in an adversarial setting.  When drafting consent decrees and forwarding them (with an analysis) for review, the government attorney is acting no differently than is the private attorney for the PRP -- both attorneys are negotiating, reviewing, and recommending the acceptance or rejection of the consent decree.  In the UAO context, however, there is no private analog because the PRP is not given a choice; the UAO is the agency's non-negotiable, unilateral assignment of legal repercussions against a PRP.  In this way, the EPA attorney's involvement in the consent-decree process is legal, but his involvement in the PRP process is more regulatory. |

| 2408 | acp | This document is not protected by the attorney-client privilege because it does not seek or provide legal advice or services. Rather, it seeks a consensus regarding whether the workgroup should disband, or alternatively whether it should continue to help draft new policy or consider legal issues in the future.  That is internal agency organization, not legal analysis.  It also contains no confidential information concerning the agency.  The agency may, however, redact as protected the portions of this document that appear under the headings "(Old) Draft (title unknown)" and "Institutional Controls" because they set forth legal issues that the attorneys are concerned about. |
|------|-----|---|
| 2694 | acp | Nothing about this document concerns the confidentiality of the attorney-client relationship.  It also does not appear to concern legal advice, services or issues because it is focused on the logistics of how to fund cleanups at mine sites using trusts, and thus conserving agency resources.  This is more regulatory than legal in nature. |
| 2814 | acp; wpd | Not protected work product because it lacks requisite specificity.  There is nothing in EPA's description of the document or the document itself to convince the Court that it addresses a UAO in an ongoing investigation (rather than a model UAO to be used more broadly).  It also does not reflect any information that is confidential to the agency or contain legal advice, which makes the attorney-client privilege unavailable.  The attorneys are acting in a regulatory and editorial capacity, not providing legal advice, with the exception of paragraph 79 regarding the sufficient cause defense.  Since that paragraph discusses a legal issue, it may be withheld. |

| 2831 | acp; wpd; dpp | No portion of this document is protected work product because the document cannot reasonably be said to have been prepared in anticipation of litigation.  The document simply contains the minutes of a meeting which appears to have been held more for internal oversight and management purposes than in preparation for any specific litigation.  For the most part, the attorney-client privilege is also unavailable because the document contains no information that is confidential to the agency, and does not concern legal advice or strategy -- it only concerns regulatory guidance.  The one exception is the  seventh paragraph from the top on the first page (discussing anticipated judicial enforcement).  The document largely appears to address actions that have already been taken, policies that have already been set, or whether future actions should be taken in light of existing policies, and hence is not predecisional or deliberative.  Certain portions of the document discuss recommendations for amendments to certain policies (for example, the sixth paragraph from the top on the first page and the third paragraph from the top on the third page), or the development of new policies.  These portions may be withheld pursuant to the deliberative process privilege so long as they have not actually been adopted by the agency. |
| --- | --- | --- |
| 2923 | acp | This is attorney-client privileged material because it considers legal issues and methods of pursuing PRPs.  It does not set policy; it evaluates legal options and provides legal advice. |

| 3211 | acp; wpd | Protected work product because it concerns a specific site and violation, and lists suspected PRPs.  The focus is how to narrow or rank the universe of PRPs for the site and violation.  It is not, however, attorney-client privilege material because it does not provide legal advice or contain confidential information concerning the agency. |
| 3413 | acp; wpd; dpp | Protected work product because the document discusses a settlement for a specific site and PRP in an ongoing judicial action, and assesses litigation risks, adequacy of the government's case, and possible defenses. Moreover, it is protected by the attorney-client privilege because it is characteristic of the type of work that a private attorney would perform -- a classic legal memorandum regarding the disposition of filed litigation. The deliberative process privilege, however, does not apply, because the document is more in the nature of a straightforward application of already-established policies and principles to a particular set of facts. |
| 3431 | wpd | Protected work product because the document appears to be handwritten attorney notes regarding developments in a particular case. |
| 3668 | acp; wpd; dpp | Not protected work product because it is from the client, and hence not attorney work-product.  It is protected by the attorney-client privilege because it is a communication from a client (EPA) to its lawyer (DOJ) asking for legal representation and the onset of litigation.  The deliberative process privilege does not apply because although the recommendations may technically precede the actual decision to pursue litigation, they do not precede the development of the broader relevant agency policy being applied. |

| 3683 | wpd | Not protected work product because it does not seem to have been created with an eye toward litigation, even though its subject is litigation.  Rather, the document is a response to a congressman's inquiry (which was never sent).  This document has no relationship to the agency's investigation of this site; it simply answers the questions of a third-party. |
|------|-----|-----|
| 3687 | wpd | Protected work product because it is a draft UAO for a specific site, PRP and violation. |
| 3791 | wpd | Protected work product because it is an agenda for a meeting with a PRP regarding a specific UAO, violation, and site, and it contains a chart analyzing noncompliance, as well as a log of the steps taken in the case. |
| 3793 | wpd | Protected work product because it consists of handwritten attorney notes chronicling activities and actions in a particular case. |
| 3849 | acp; wpd | Protected work product because it was prepared by an attorney to assist in UAO proceedings regarding a specific site, PRP and violation.  It is not, however, attorney-client privilege material because it does not provide legal advice or contain information that is confidential to the agency. |
| 3875 | wpd | Protected work product because it was prepared to assess a specific PRP's request to extend the deadline for actions required at a specific site. |

| 3924 | acp; wpd; dpp | Protected work product because the document describes interactions and negotiations with a specific PRP regarding a specific site or violation.  Also protected by the attorney-client privilege because it contains legal analysis and assessment of options.  The document does not qualify under the deliberative process privilege because it only precedes the decision in the particular case; there is no indication that it precedes development of the policy or regulatory decision that established the principles to be applied in the case. |
| --- | --- | --- |
| 4043 | acp; wpd | Protected work product because it concerns a specific PRP, site, and violation, and assesses whether to require a certain action.  It is also protected under the attorney-client privilege because it seeks legal advice regarding whether "requiring" the action has certain implications, whether it is covered under the current order, and whether the order needs to be amended. |
| 4246 | wpd | Protected work product because it addresses concerns of the agency regarding a specific PRP, site, and UAO. |
| 4261 | acp; wpd | Protected work product because it concerns an investigation regarding a specific site and UAO.  Also protected under the attorney-client privilege because it contains legal assessment of PRP's actions. |

| 4271 | acp; wpd | The draft letter to the PRP regarding a specific violation and site is protected work product, as is the attorney transmittal discussing, revising, and forwarding the letter. The draft letter is not, however, protected by the attorney-client privilege because it does not contain legal advice or analysis, or any information confidential to the agency.  The e-mails are protected under the privilege because they provide legal advice and interpretations. |
| --- | --- | --- |
| 4410 | acp; dpp | This email discusses policy; it does not appear to address legal advice, services or strategy.  Accordingly, the attorney-client privilege is unavailable.  Its language, tone, and format do suggest that the views expressed in the email are those of the drafter alone, and that a final decision on the subject is under contemplation.  If these views were not subsequently adopted as the agency position, then the document may be withheld under the deliberative process privilege. |
| 4413 | acp; dpp | This e-mail does not concern the provision of legal advice; it concerns the development of policy advice.  Accordingly, the attorney-client privilege is unavailable.  It does appear to be predecisional and deliberative material, however, as it discusses competing policy positions on which the agency appears not yet to have developed a final decision.  If the views expressed were not subsequently adopted as the agency position, then the e-mail may be withheld under the deliberative process privilege. |

| 4652 | acp; dpp | This document is covered by the attorney-client privilege because it reflects legal advice, recommendations, and strategy communicated on a number of subjects. Regarding the deliberative process privilege, most of this document describes actions and decisions that have already occurred, or does not contain any substantive information that would fall within the privilege's ambit. The document does not contain the type of recommendations regarding a particular agency decision under consideration that would be within the privilege. |
|------|----------|--------------------------------------------------------------------------------------------------------------------|
| 4735 | acp | Only the third and fourth paragraphs involve a discussion of legal strategy and are privileged. The remainder of the communication was not made to provide legal advice; it was only made to provide information in response to a congressman's inquiry. The final response to Congress, of course, is not privileged. |
| 4762 | acp; wpd | Not protected work product because it was not prepared in anticipation of litigation -- the document appears to have been generated for purposes of an administrative survey or case management review of orders issued by different regions. As the document states, its purpose is to "attempt to inventory" these items. The document also does not provide legal advice or involve confidential information regarding the agency. Instead, it surveys and summarizes actions already taken regarding participate and cooperate orders. Hence, it is not protected by the attorney-client privilege. |

| 4771 | acp; wpd | Protected work product because it will assist in civil judicial proceedings for § 106 claims. The document was prepared in anticipation of litigation generally, but there is a sufficiently specific nexus to actual anticipated litigation. In short, the document is akin to those at issue in <u>Delaney</u> and <u>Schiller</u>. The document is protected under the attorney-client privilege because it provides legal advice and attorney recommendations regarding legal proceedings. |
| --- | --- | --- |
| 4794 | acp; dpp | The document is not covered by the attorney-client privilege because it is of a regulatory, law enforcement, or adjudicatory nature as opposed to legal advice or strategy. EPA has also failed to identify any intended or actual recipients. The deliberative process privilege also does not apply. There is no indication that the document predates the agency's establishment of its policy and procedures regarding UAOs, or that the document has not been relied upon by agency employees or used as a template in the creation of UAOs. The document appears to be more authoritative and guidance-oriented than recommendatory or suggestive. Although the document does include personal comments by the drafter explaining the structure, revisions, and inclusion/exclusion of certain items, EPA's declarations do not establish that the viewpoints expressed have not subsequently become the viewpoints of the agency. |
| 4811 | acp; wpd | Protected work product because it assesses arguments included in a legal brief for an ongoing judicial civil proceeding. It is also protected under the attorney-client privilege because the attorneys are consulting one another regarding legal arguments to be included in court memoranda. |

| 4898 | acp; wpd | Protected work product because it is a document prepared by a party in anticipation of specific litigation, for transmission to the Solicitor General.  It is also the type of communication that private parties engage in with their attorneys, and it addresses the recipient's legal representation of agency interests in the course of litigation, and hence it is also protected under the attorney-client privilege. |
| 4901 | acp; dpp | The attorney-client privilege does not cover this document because the document does not provide legal advice.  It is a policy-oriented document, and therefore the attorneys are not performing the same type of functions as private attorneys would.  With respect to the deliberative process privilege, that privilege only covers those portions of this draft document that do not describe actions already taken or projects already established/developed.  It may be used to withhold information describing prospective priorities, actions, schedules, projects, recommendations, or goals, but only to the extent that they have not subsequently been adopted. |

| 4956 | acp; wpd; dpp | The document is protected work product, as it was created in anticipation of (or during) litigation.  It appears to be an overview or summary for the purpose of bringing someone up to speed on his cases, but does reflect the attorney's work on ongoing litigation matters.  Accordingly, it may be withheld as protected work product.  Paragraphs 1 and 3 are also protected by the attorney client privilege because they concern legal advice, although the remainder of the document does not.  Regarding the deliberative process privilege, most of this document is not predecisional with respect to the temporal development of the policy or agency position that dictates ultimate case-specific determinations, and some portions of the document contain no substantive material.  Accordingly, the deliberative process privilege does not apply. |

| 5003 | acp; dpp | The attorney-client privilege does not apply to this document because it concerns enforcement of the law -- how to compel compliance.  Moreover, EPA has failed to identify any actual or intended recipients.  Regarding the deliberative process privilege, the portions of the document that simply report actions that have been taken, policies that have been implemented, or data that does not reveal the views of agency employees are not protected.  The portions of the document that relay the interpretations or conclusions of the drafter or other agency employees drawn from the data and survey responses, the editorial comments inserted for the reviewers, and the "Findings" and "Recommendations" sections are all protected -- these portions employ suggestive rather than directive terms and are indicative of the type of ongoing policy review in which agencies must be expected to engage.  The deliberative process privilege does not apply, however, if the opinions reflected here have been implemented or adopted by the agency. |
| --- | --- | --- |
| 5009 | acp | Most of the document does not constitute legal analysis or advice, but rather an overview of participate and cooperate UAOs that have been issued each fiscal year from 1981 - 2000.  Because EPA has failed to identify any actual or intended recipients, the Court is unable to conclude that the document has been treated confidentially or that it actually constitutes a communication of legal advice.  Accordingly, the attorney-client privilege would not apply.  Some parts of the document, however, contain the attorney's legal assessment regarding whether certain UAOs constitute participate and cooperate orders.  Those parts of the document are covered by the attorney-client privilege. |

| 5101 | acp; dpp | The document is not covered by the attorney-client privilege because EPA has failed to identify any recipients or to establish that the document communicates legal advice or other confidential information.  Moreover, the document does not use language or tone that is suggestive rather than authoritative, and to the extent that the document simply summarizes a decision that has already taken place (the Supreme Court's <u>Aviall</u> holding) and the facts that underlie it, the material is neither predecisional nor deliberative. |
|---|---|---|
| 5135 | acp; dpp | The attorney-client privilege does not apply because the document relates to the setting and description of the enforcement-first policy (rather than legal advice, services, or strategy).  Because the communication concerns recommendations and revisions of an agency policy document, it may be protected by the deliberative process privilege if the recommendations have not subsequently been adopted by the agency. |
| 5147 | acp; dpp | This document may not be withheld under the attorney-client privilege.  The material is general guidance for employees regarding policy implementation, and does not concern the parameters of the law, legal advice, or legal strategy and services.  The document does not appear deliberative or predecisional in nature because it seems to simply restate "longstanding policy" relating to the enforcement first strategy and its underlying goals.  The document states that its purpose is to focus attention on the policy, and hence it does not relate to the adoption or amendment of policy, but rather seeks to help employees implement a pre-existing policy.  Finally, its language is not recommendatory, but rather is characteristic of a statement or reiteration of policy. |

| 5239 | acp; dpp | The document is not covered by the attorney-client privilege because EPA has failed to identify the author or recipients; the Court cannot even determine whether the document was treated as confidential or was drafted by an individual to whom the attorney-client privilege would apply.  Moreover, the document concerns encouraging PRPs to acquiesce in a particular enforcement method, which is a regulatory issue.  The deliberative process privilege would appear to apply, since the document is a draft policy memorandum that is "recommend[atory]" in nature, is undergoing the process of active editing and revision, and is marked as a "draft" that is "deliberative," so long as the views expressed were not adopted by the agency in full. |
|------|----------|------------------------------------------|
| 5292 | acp; wpd | Protected work product because it concerns a specific issue regarding a particular PRP, site, and violation.  It is not, however, protected by the attorney-client privilege because the document is not a communication to the client or between attorneys involving legal advice and confidential information for the purpose of effective legal representation. |
| 5413 | acp; wpd | Protected work product because the document concerns issuance of a draft UAO regarding a specific site and PRP.  It is not, however, protected by the attorney-client privilege because it recommends regulatory action rather than providing legal advice. |
| 5432 | wpd | Protected work product because it assesses compliance of a specific PRP regarding a specific UAO, site, and violation. |
| 5453 | acp; wpd | Protected by work product and the attorney-client privilege because specific litigation is clearly anticipated and document contains recommendation on legal issue regarding that litigation. |

| 5466 | acp; wpd | Protected work product because it requests approval for a removal action regarding a specific site and violation, as well as identified PRPs.  It is not, however, protected by the attorney-client privilege because it recommends regulatory and enforcement action rather than providing legal advice. |
| 5616 | acp; wpd; dpp | Protected work product because the document discusses next steps in particular UAO proceedings with respect to specific sites.  Because EPA has not identified any intended or actual recipients, however, the Court cannot determine whether the document has been treated as confidential and is, in fact, a communication within the attorney-client privilege.  The document is not protected by the deliberative process privilege because, although it may precede specific decisions with respect to the investigations at issue, it does not precede the establishment of the policy or principles that are used to reach those case-specific determinations. |
| 5638 | wpd; dpp | Not protected work product because it does not appear to have been created in anticipation of specific litigation.  The document is an outline -- in the nature of a checklist -- for a general guidance or training document.  There is no specific PRP, claim, site, violation or analysis of a specific legal defense or strategy.  Rather, the document has been created for the administrative and regulatory purpose of helping employees to monitor compliance.  To the extent that the document is a draft, it may be protected by the deliberative process privilege in a limited regard -- only those items included on the outline (but not in the final policy document) and not subsequently adopted by the agency may be redacted. |

| 5667 | acp; dpp | This document is not covered by the attorney-client privilege because it is a recap of existing agency policy regarding the issuance of UAOs to federal agencies, and does not involve legal advice, services, or strategy. Although most of the document does not appear to be deliberative because it simply describes pre-existing policy and actions, the last two paragraphs of the document do appear to be deliberative.  They may be withheld only if not subsequently adopted or relied upon as policy or an agency position. |
|------|----------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 5759 | acp; wpd | Protected work product because prepared by attorney in connection with an ongoing investigation or administrative proceeding regarding specific PRPs, sites, violations, and UAOs.  Pages 48161-69 are not protected by the attorney-client privilege because they do not constitute a communication between attorney and client, but rather between adversaries, and disclosure of this material would not have any impact on the sanctity of confidential attorney-client communications. Moreover, page 48159 is not a document prepared for legal advice or services, but rather to monitor compliance with agency policy regarding UAO reform, and pages 48154, 48155, and 48158-69 do not contain any information that is confidential to the agency. |

Case 1:00-cv-02855-JDB   Document 122   Filed 09/12/06   Page 69 of 80

| | | |
|---|---|---|
| 5995 | acp; dpp | EPA may not claim the attorney-client privilege because the document does not reflect any information that is confidential concerning the agency, and does not appear from its content or format to be communicative or treated as confidential (because EPA has not identified any actual or intended recipients).  The document does appear to be deliberative, based upon its tone, language, and manner -- it suggests options for making the UAO Reform program more efficient -- but it may be withheld under the deliberative process privilege only if the agency has not adopted the views expressed. |
| 6035 | acp; wpd | Protected work product because it involves a specific site and UAO and an analysis of the surrounding circumstances.  EPA has failed to identify any recipients, however, and the Court cannot, based on the nature and format of the document alone, assess whether the document is a communication that was treated confidentially, and hence is within the attorney-client privilege. |
| 6116 | wpd | Protected work product even though it appears to have been created partly for the purpose of administrative oversight, because the anticipation of specific litigation appears to have played a substantial role in its creation. |

-69-

| 6207 | wpd; dpp | The Court is unable to conclude that the entire document is protected work product because the description provided by EPA in its privilege log, and the material on page 53548 and the top of 53549, suggest that the document is focused on unspecified, generic, and unknown future litigation.  Only page 53549 (from the "Introduction" section down) has the requisite specificity to be considered "prepared in anticipation of specific litigation."  Otherwise, there is no particular PRP, violation, or site identified, and neither the privilege log description nor the document itself provide enough information to enable the Court to conclude that the entire document is work product.  The document also does not appear to be deliberative or predecisional in nature, but rather simply to summarize what the Region is already doing. |
| --- | --- | --- |
| 6272 | acp; wpd; dpp | Protected work product because it concerns a specific UAO and specific PRPs.  The entire document is not covered by the attorney-client privilege, however, because it is regulatory and enforcement-focused; it does not concern the provision of legal advice or services.  Those portions that engage in legal analysis regarding the assessment of the evidentiary strength of a case against a particular PRP, however, may be withheld under the attorney-client privilege (for example, the last paragraph of section A1 on page 54608).  The deliberative process privilege does not apply because the document appears only to precede the agency's final decision in a particular case; it does not appear to precede the development of the policies and interpretations that are being applied. |

| 6278 | acp; wpd | Protected work product because the document concerns specific litigation.  It is not, however, protected under the attorney-client privilege because it recommends regulatory action and the enforcement of the law. |
|---|---|---|
| 6282 | acp; wpp | Protected work product because the document contains comments and strategies regarding a UAO issued in connection with a specific site.  It is not, however, attorney-client material because it involves enforcement and regulatory duties. |
| 6326 | acp; wpd | Protected work product because it concerns the UAO issued in connection with a specific site, violation and PRP.  It is not attorney-client material, however, because much like P.L. No. 6282, it concerns UAO reform policy and amounts to regulatory and enforcement (rather than legal) activity. |
| 6356 | acp; wpd; dpp | Protected work product because it addresses settlement negotiation options with respect to a particular site, PRP or violation.  It does not qualify for the attorney-client privilege, however, because the Court cannot ascertain that it is an attorney-client communication that has been treated confidentially, since EPA has failed to identify any recipients.  Nor is the deliberative process privilege available, as the document does not appear to precede the establishment of agency policy or protocol, but rather only to precede the agency's final decision in a particular case. |

| 6409 | acp; dpp | This document is not protected by the attorney-client privilege because it concerns regulatory discretion regarding funding, not legal advice or strategy.  The document is concerned with allocation of agency resources, not the parameters of the law.  It does not qualify for the deliberative process privilege because, although it discusses possible actions in particular cases, there is no indication that it precedes the development of agency policy regarding the use and availability of enforcement-fairness moneys.  It appears to be applying already-existing policy to particular facts for Region 9 cases. |
| --- | --- | --- |
| 6533 | acp; wpd; dpp | Protected work product because it involves particular actions and circumstances regarding a specific investigation, site, PRP, and potential UAO.  Only the last two sentences interpret law or provide legal advice.  The rest of the document discusses the requirements of the "SPIM manual" (which is more agency protocol and policy than it is law) and appears focused on how best to pursue an enforcement action.  Accordingly, the attorney-client privilege only applies to the last two sentences.  There is no indication that this document is predecisional.  Although it precedes the decision regarding whether to issue a UAO in a particular case, it does not appear to precede the agency's decision with respect to its practice of issuing UAOs in this fashion.  The document is a straightforward explanation of agency law or policy in light of a particular factual context, and it is not deliberative. |

| 6535 | acp; wpd | Protected work product because it was prepared in connection with a specific enforcement proceeding or investigation regarding a particular site, PRP or violation. It is not protected by the attorney-client privilege, however, because EPA has failed to identify any recipients, its format and content do not suggest that it constitutes a communication, and it appears to be more in the nature of a regulatory (rather than legal) assessment. |

| 6703 | acp; dpp | Because EPA has failed to identify any actual or intended recipients, and the content and format of the document do not appear to be communicative or to support an inference of confidentiality, the attorney-client privilege may not be available.  The document seems policy-driven rather than focused on the provision of legal advice or strategy. |
|---|---|---|
| | | With respect to the deliberative process privilege, nothing about this document -- even viewed in light of the declarations submitted by EPA -- establishes that it is predecisional. Although the declarations conclusorily state that the document is not binding or precedential, and that the agency is free to reject its content at any time, EPA has failed to establish that it has not been treated as policy (i.e., that it has not actually been relied upon or adopted as the agency's position). With the exception of the bracketed comment and the sentence that follows it in the second full paragraph of the "Section 106(a) UAOs for RD/RA" section, the document's tone, language, and manner do not appear to be deliberative.  Rather, the document appears to state agency policy and protocol, and to provide guidance on how employees will act in accordance with the policy and protocol, rather than to recommend revisions to or amendments of the policy and protocol. |

**TABLE T-2:**

**SUMMARY OF ATTORNEY-CLIENT PRIVILEGE AND SUBJECT-MATTER WAIVER
DETERMINATIONS FOR DOCUMENTS INADVERTENTLY PRODUCED BY EPA**

| GE Exhibit Number and EPA Stamp Number | Findings of the Court |
|---|---|
| EPA-5-ORC-003412, Pl.'s Exh. 1<br><br>Memorandum from Barry Breen re: "Negotiation and Enforcement Strategies to Achieve Timely RD/RA Settlements and Timely Superfund Cleanups." | This document is not privileged, because it does not involve the seeking or provision of legal advice, but rather concerns setting regulatory and enforcement policy.  The document's purpose is to guide employees generally in how to encourage PRPs to acquiesce in a certain approach.  EPA has failed to identify any specific addressees, and hence, the Court is unable to assess whether the document has been circulated to non-essential persons.  There is no subject-matter waiver resulting from inadvertent disclosure. |

| | |
|---|---|
| EPA-5-ORC-003169, Pl.'s Exh. 3<br><br>(Memorandum from Barry Breen re: "Guidance on Enforcement of CERCLA Section 106 Administrative Orders.");<br><br><br>EPA-1-ORC-A0003277, Pl.'s Exh. 4<br><br>(Memorandum from Barry Breen, with handwritten comments and sketches, re: "Guidance on Enforcement of CERCLA Section 106 Administrative Orders.") | These documents are different versions of the same general guidance within EPA on enforcement of § 106 orders. For the most part, then, they set regulatory and enforcement policy rather than provide legal advice, and are therefore not privileged. Indeed, the sections providing background information, enforcement goals, and a list of general factors to choose between trust fund response actions and compelled injunctive performance certainly do not constitute legal advice or services of a type typically provided by a private attorney. However, the section assessing factors used to consider judicial enforcement is within the attorney-client privilege, as it is a traditional legal assessment, including analysis of governing law, that advises the enforcement team with respect to the legal merits of defenses, litigation risks, and the legitimacy of certain arguments in the litigation context. The privilege has been waived, therefore, as to the specific subject-matter of the section entitled "Factors to be Used in Considering Judicial Enforcement." |
| EPA-5-ORC-003366, Pl.'s Exh. 6<br><br><br>Document from EPA Office of Site Remediation entitled "Supplement to Guidance on Petitions for Reimbursement under CERCLA § 106(b)(2)." | The document is not privileged and the waiver rule does not apply. The document provides guidance on how agency employees should carry out agency policy. As such, it is setting regulatory and enforcement guidance rather than providing legal advice. EPA has failed to identify any intended or actual recipients, and hence the Court cannot ascertain whether this document was treated as confidential. |
| EPA-1-ORC-A0001054, Pl.'s Exh. 10<br><br><br>Memorandum from Jerry Clifford re: "Documentation of Reason(s) for Not Issuing CERCLA §106 UAOs to All Identified PRPs." | This document sets internal policies and procedures regarding issuance of UAOs, and does not involve the provision of legal advice. The privilege and its waiver rule do not apply. |

| | |
|---|---|
| EPA-6-REC-004410, Pl.'s Exh. 23<br><br>Memorandum (with handwritten comments and illustrations) from Baerbel Schiller re: "Agenda for September 13, 1993, UAO for RD/RA Workgroup Conference Call." | The document is simply a meeting agenda listing subjects with no legal advice included. The handwritten annotations do not appear to contain legal advice on specific topics or to reflect information that is confidential to the agency.  Moreover, EPA has failed to identify any recipients -- intended or actual -- of those handwritten notations.  The notations do not themselves reflect that a protected communication occurred, and they do not take a form that suggests that they are communicative.  The privilege and its waiver rule do not apply. |
| EPA-OSRE-A0016794, Pl.'s Exh. 28<br><br>Minutes from Compliance Team Meeting of 12/10/1996 | Although some sections of this document, e.g., Section II.D, may concern subjects that might be within the attorney-client privilege, the information in this brief set of meeting minutes is neither legal advice nor (based on the document) a communication of substantive confidential legal information between attorney and client.  Hence, neither the privilege nor the waiver rule applies. |

| | |
|---|---|
| FOIACC-001300, Pl.'s Exh. 33<br><br>Memorandum from Cate Gillen Tierney re: "CERCLA § 106 Meeting with ORE." | This document reflects legal advice provided at a meeting that is focused on a specific issue and set of matters potentially subject to § 106 orders. It concerns the type of function that a private attorney would ordinarily perform. Hence, confidentiality can be inferred, and the privilege applies. The production of this document therefore waives the privilege with respect to the subject-matter of the document, which is "the use of CERCLA § 106 to address imminent and substantial endangerments that may not fall within 'traditional' CERCLA fact patterns." It does not matter whether, as EPA states, the document was produced in connection with a FOIA request rather than in the context of these discovery efforts; EPA admits that it cannot represent that the document was purposefully produced. Hence, the Court is not convinced that the disclosure was not the result of carelessness. |
| EPA-8-GEN-00182, Pl.'s Exh. 36 (e-mail communication from Michael Northridge to James Doyle summarizing issues for discussion at 12/18/2000 UAO Workgroup Conference Call);<br><br>EPA-8-GEN-000090, Pl.'s Exh. 37 (e-mail communication from Joni Teter to Suzanne Bohan containing an Agenda for the 12/18/2000 UAO Workgroup Conference Call, dated 12/11/2000) | These documents reflect no information that is confidential concerning the agency. Instead, they are simply broad descriptions of general subjects for a routine conference call. Although some sections may concern subjects that could possibly be within the attorney-client privilege, no substantive legal advice is contained in the documents. The attorney-client privilege therefore does not apply here. The waiver rule is thus inapplicable as well. |

| | |
|---|---|
| EPA-8-REC-003585, Pl.'s Exh. 52<br><br>Two pages of a Memorandum to Max H. Dodson from Paul J. Rogers, Andrew J. Lensink, Holly Fliniau, and Carol Russell, dated 04/20/1998, re: "Unilateral Administrative Order French Gulch/Wellington-Oro Site." | At issue in this submission are only two pages of a longer document.  These pages are only factual materials, not advice or recommendations.  Moreover, this document may be regulatory or adjudicatory in nature. The Court can ascertain nothing that reflects information that is confidential concerning the agency, or that is legal advice, in this two-page document.  Accordingly, it does not come within the attorney-client privilege, and the waiver rule does not apply. |
| EPA-OSRE-A0054846, Pl.'s Exh. 53<br><br>Memorandum from Walter E. Mugdan to Jeanne M. Fox re: "Request for Signature on Unilateral Administrative Order for Removal Action at the Tri-Cities Barrel Co., Inc. Superfund Site, Port Crane, Broome County, New York." | Although from regional counsel to regional administrator (and thus agency decision-makers), this document is a routine step in regulatory enforcement, and does not include a legal assessment or legal advice.  It is simply forwarding a UAO for approval and signature, without any analysis of the law or provision of legal advice, and hence is more properly characterized as regulatory enforcement activity than as legal evaluation. The privilege does not apply and, therefore, neither does the waiver rule. |
| EPA-OSRE-A0047733, Pl.'s Exh. 54<br><br>Memorandum from John Lyons to Elizabeth Adams re: "Issuance of CERCLA 106 Unilateral Administrative Order to Montrose Chemical Corporation for Initial Remedial Groundwater Design Activities at the Montrose Chemical and Del Amo Superfund Sites.  Request for Concurrence in Decision to Issue UAO only to Montrose Chemical Corporation." | See the explanation for Pl.'s Exh. 53 above. However, the first paragraph on page 2 of the document is an explanation of the law as applied in a specific context, and hence is the type of legal evaluation and advice properly protected by the attorney-client privilege. Waiver applies as to the subject-matter of "issuance of this UAO to only certain PRPs." |
| EPA-OSRE-A0048483, Pl.'s Exh. 55<br><br>Typewritten document re: "Excerpt from Memorandum to Regional Administrator Explaining Basis for Exclusion of Certain PRPs from Liberty Site UAO." | See the explanation for Pl.'s Exh. 54 above. There is waiver as to the same subject-matter of "issuance of this UAO to only certain PRPs." |

| | |
|---|---|
| FOIACC-009004, Pl.'s Exh. 81<br><br>Handwritten notes from Alan Watts to Debbie Negel, dated 8/27/1997, re: changes to be made to a draft UAO. | Although the handwritten notes are "recommendatory" with respect to certain changes to the draft UAO, they do not constitute legal advice or evaluation except for the bracketed language at conclusion of item 2, which is within the attorney-client privilege and hence also causes waiver for that narrow subject-matter. |
| EPA-2-ORC-012312, Pl.'s Exh. 82<br><br>Administrative Order with handwritten notations from Region Two re: CERCLA § 106 proceeding "In the Matter of the Esso Standard Oil S.A., Ltd., Texaco Caribbean, Inc., L'Henri, Inc., d/b/a O'Henry Cleaners; TuTu Wells Site, Anna's Retreat, St. Thomas, U.S.V.I." | The draft UAO is more in the nature of regulatory enforcement activity than provision of legal advice or evaluation. Handwritten annotations are minimal and do not constitute legal advice, evaluation, or strategy.  Neither attorney-client privilege nor waiver applies. |
| FOIACC-008994, Pl.'s Exh. 83<br><br>Administrative Order with handwritten notations from Region Five re: CERCLA 106 proceeding "In the Matter of Sun Machine Parts Site, Chicago, IL." | See the explanation for Pl.'s Exh. 82 above. The UAO appears to be final (note case number stamp).  Annotations are questions and some answers, but do not appear to be legal advice or assessment. |
| EPA-7-ORC-000352, Pl.'s Exh. 92<br><br>Memorandum from Baerbel Schiller re: "Agenda for June 6, 1003, UAO for RD/RA Workgroup Conference Call," and Memorandum from Bruce M. Diamond re: "Determination of Imminent and Substantial Endangerment for Removal Actions." | EPA did not address this document in its explanatory submission.  Assuming that EPA would assert the attorney-client privilege, however, the Court finds that such an assertion would be misplaced.  The conference call agenda is not privileged, as it contains no legal advice or analysis.  The memorandum from Mr. Diamond is not privileged either.  It is from the Directors of two EPA offices, not from attorneys acting as legal advisors, and contains regulatory guidance, not legal advice or analysis.  The third document is simply a blank form that includes no substantive information of any kind, much less legal advice or analysis. |