IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
GENERAL ELECTRIC COMPANY,             )
                                      )
         Plaintiff,                   )     Civ. No. 1:00CV02855
                                      )     (JDB)
                                      )
v.                                    )
                                      )
STEPHEN L. JOHNSON, Administrator,    )
United States Environmental Protection Agency, )
and the UNITED STATES ENVIRONMENTAL   )
PROTECTION AGENCY,                    )
                                      )
         Defendants.                  )
_____)

**GENERAL ELECTRIC COMPANY'S
OBJECTIONS TO EPA'S CLAIMS OF PRIVILEGE
IN ITS OCTOBER 27, 2006 PRIVILEGE LOG**

Pursuant to the Court's September 12, 2006 Order, GE hereby submits the following objections to EPA's claims of privilege in its revised October 27, 2006 privilege log.[1]

**I.  EPA Has Impermissibly Raised New Grounds of Privilege as the Sole Basis for Withholding Production of Roughly 150 Documents.**

In response to the Court's September 12, 2006 opinion on the proper scope of the deliberative process and attorney-client privileges and work product doctrine, EPA recognized that it could no longer maintain asserted grounds of privilege for roughly 150 documents that it is still withholding on its September 27, 2006 privilege log. Rather than producing those

---

[1] GE's objections herein are based upon the descriptions of the withheld documents provided in the privilege log and the accompanying deliberative process declaration and index. GE does not

435374v1

documents, however, EPA now raises previously unasserted privileges to avoid production. As EPA advised the Court in its letter of October 27, 2006, it now raises deliberative process claims to avoid production of over 90 documents for which previously-asserted claims of work product protection and/or attorney-client privilege have been withdrawn.[2] In addition, EPA has newly raised claims of work product protection or attorney-client privilege as the sole grounds for withholding roughly 60 additional documents for which the original privilege claims are withdrawn.[3]

EPA waived these newly asserted privileges by failing to assert them in any of the three versions of its privilege log it prepared prior to the Court's privilege ruling, and accordingly all of these documents should be produced. *See Banks v. Office of the Senate Sergeant-At-Arms*, 233 F.R.D. 1, 8-9 (D.D.C. 2005) (ordering party to produce documents it sought to withhold after *in camera* review based on newly asserted grounds of privilege); *Neuberger Berman Real Estate Income Fund, Inc.*, 230 F.R.D. 398 (D. Md. 2005) (party waived previously unasserted privileges); *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 298-300 (S.D.N.Y. 2003) (same); *Moloney v. United States*, 204 F.R.D. 16 (D. Mass. 2001) (to same effect).

---

waive any objections to additional problems in EPA's privilege claims that may emerge from the Court's *in camera* review of the 50-document sample provided to the Court on the same date.

[2] *See* PL Nos. 38, 39, 42, 43, 44, 45, 46, 47, 57, 60, 61, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 100, 105, 108, 135, 153, 160, 161, 162, 163, 164, 165, 166, 168, 169, 170, 179, 179.01, 179.02, 179.03, 179.04, 179.05, 179.06, 179.07, 179.08, 179.09, 179.1, 179.11, 179.12, 179.14, 179.16, 179.17, 179.18, 179.19, 182, 183, 184, 189, 191, 191.03, 191.05, 443, 929, 1921, and 4733.

[3] *See* PL Nos. 609, 626, 725, 729, 766, 767, 812, 814, 1533, 1766, 2138, 2506, 2507, 2671, 2672, 2675, 2926, 3153, 3158, 3169, 3444, 3481, 3484, 3485, 3487, 3488, 3499, 3858, 3876, 4010, 4011, 4018, 4026, 4028, 4051, 4239, 4656, 4679, 4711, 4714, 4727, 4734, 4742, 5176, 5223, 5224, 5270, 5271, 5414, 5715, 5938, 5982, 6009, 6023, 6160, 6211, 6215, 6216, 6217, 6218, and 6319.

*Banks* is directly on point. In *Banks*, the defendant had originally sought to withhold five documents on work product grounds. The court rejected this privilege claim following an *in camera* review. Rather than producing the documents, however, the defendant raised new claims that the documents were also protected by the attorney-client privilege, noting that the bases for this separate privilege claim were demonstrated by the description of the documents in the original privilege log. The court did not reach the merits of the newly asserted privilege claim, holding that the defendant had waived the attorney-client privilege by failing to assert it in its original privilege log. 233 F.R.D. at 9. As *Banks* explained, "failure to assert [a] privilege within a reasonable time, without a showing of good cause, constitutes a waiver of the privilege." *Id.* (citing *Blumenthal v. Drudge*, 186 F.R.D. 236, 240 (D.D.C. 1999)). "This court has found that, where a party fails to assert a privilege on its privilege log or in any of its pleadings, the privilege is waived." 233 F.R.D. at 9 (citing *Carey-Canada v. California Union Ins. Co.*, 118 F.R.D. 242, 248-49 (D.D.C. 1986)).

EPA has not demonstrated, and cannot demonstrate, good cause sufficient to avoid waiver here. EPA acknowledges that it now asserts the deliberative process privilege for some ninety plus documents because the court rejected its previous assertions of work product and attorney-client privilege. *See* October 27, 2006 Letter from Brian Lynk to the Court, at 3; *see also*, *e.g.* PL Nos. 83, 93, and 160 (documents withheld on deliberative process grounds following Court's *in camera* review determination that prior privilege claims were without merit). As the *In re Honeywell* Court explained: "Parties should not be permitted to re-engineer privilege logs to align their privilege assertions with their legal arguments. ... Such a practice undermines the very purpose of privilege logs, and promotes the kind of gamesmanship that courts discourage in discovery." 230 F.R.D. at 299-300; *see also Moloney*, 204 F.R.D. at 21 ("it

3

defies logic to permit counsel to assert one privilege so as to preclude testimony at a deposition, but thereafter research and claim an entirely different privilege in response to a motion to compel"). EPA had three prior opportunities to assert deliberative process privilege: (1) On September 15, 2005, when it provided its initial privilege log listing most of the 90 plus documents here at issue; (2) On December 22, 2005, when it revised its privilege assertions for the documents on its log in response to GE's objections by letter of November 22, 2005; and (3) On April 20, 2006, when EPA submitted yet another revised privilege log in response to GE's motion to compel. Having failed to raise deliberative process on any of these occasions prior to the Court's September 12, 2006 privilege ruling, EPA has waived its right to do so now and should be ordered to produce the documents at issue.

EPA likewise cannot demonstrate good cause for its new assertions of work product and attorney-client privilege. EPA has not provided any explanation for these new designations, but it is apparent that these privilege claims have also been asserted in response to the Court's rejection of EPA's previously asserted privileges. For example, EPA now asserts attorney-client privilege for PL No. 626, following the Court's *in camera* determination that the previous deliberative process claim, as asserted for the identically described PL No. 625, was without merit. Likewise, following the Court's ruling that EPA cannot claim attorney-client privilege without evidence of who prepared and/or received the documents, EPA has raised new claims of work product protection for documents lacking the required evidence for the previously asserted privilege. *See*, *e.g.*, PL Nos. 4656 and 5176.

Regardless whether any of these newly asserted privilege claims would have had merit if raised in a timely manner prior to the Court's September 12, 2006 ruling, they have now been

waived, and EPA should be ordered to produce all documents it has withheld solely on grounds of newly asserted privileges.

## II. EPA Continues to Fail To Meet Its Burden in Asserting the Deliberative-Process Privilege

In its September 12, 2006 Opinion, the Court made clear that the deliberative-process privilege is extremely document-specific and that EPA cannot satisfy its burden through conclusory analyses or buzz words in supporting declarations. The Court explained that EPA cannot withhold documents that simply "play into" a case- or investigation-specific decision and that EPA must establish that agency employees have not implemented any of the viewpoints in the documents or acted pursuant to them. The Court further explained that EPA must establish through its declarations that agency employees actually rejected the positions articulated in the documents at issue.

In response to the Court's ruling, EPA now relies almost exclusively on a declaration of Granta Y. Nakayama ("Nakayama Dec.") – in which he specifically discusses only 48 of the 819 documents for which EPA is claiming deliberative process privilege – and an accompanying deliberative process document index prepared by counsel. Although the index purports to provide document-specific explanations of EPA's asserted deliberative process claims, these explanations and Mr. Nakayama's declaration repeatedly rely upon the same conclusory language and buzz words that this Court previously found inadequate. In particular, EPA repeatedly argues that documents are entitled to deliberative process privilege because they did not result in "final agency policy," without addressing the key issue whether the documents reflected the actual practices of any agency employee or were followed with respect to particular dealings with the public regardless whether they were in "final" form. As this Court held, the "fact that a document is a draft, rather than final, memorandum does not (standing alone)

waived, and EPA should be ordered to produce all documents it has withheld solely on grounds of newly asserted privileges.

## II. EPA Continues to Fail To Meet Its Burden in Asserting the Deliberative-Process Privilege

In its September 12, 2006 Opinion, the Court made clear that the deliberative-process privilege is extremely document-specific and that EPA cannot satisfy its burden through conclusory analyses or buzz words in supporting declarations. The Court explained that EPA cannot withhold documents that simply "play into" a case- or investigation-specific decision and that EPA must establish that agency employees have not implemented any of the viewpoints in the documents or acted pursuant to them. The Court further explained that EPA must establish through its declarations that agency employees actually rejected the positions articulated in the documents at issue.

In response to the Court's ruling, EPA now relies almost exclusively on a declaration of Granta Y. Nakayama ("Nakayama Dec.") – in which he specifically discusses only 48 of the 819 documents for which EPA is claiming deliberative process privilege – and an accompanying deliberative process document index prepared by counsel. Although the index purports to provide document-specific explanations of EPA's asserted deliberative process claims, these explanations and Mr. Nakayama's declaration repeatedly rely upon the same conclusory language and buzz words that this Court previously found inadequate. In particular, EPA repeatedly argues that documents are entitled to deliberative process privilege because they did not result in "final agency policy," without addressing the key issue whether the documents reflected the actual practices of any agency employee or were followed with respect to particular dealings with the public regardless whether they were in "final" form. As this Court held, the "fact that a document is a draft, rather than final, memorandum does not (standing alone)

establish that it is not a statement of agency policy or position." *General Electric v. Johnson*, No. 1:00-cv-02855, 2006 WL 2616187, at *10 (D.D.C. Sept. 12, 2006).

Through Mr. Nakayama's declaration, EPA has identified thirteen categories of documents that it has withheld on deliberative process grounds. GE's objections to EPA's privilege claims as to each category are set forth below.

> 1. Documents Relating to Reform for Equitable Issuance of CERCLA Section 106 UAOs (Nakayama Dec. at pp. 4-5)

Mr. Nakayama explains in his declaration that EPA finalized its CERCLA Reform procedures on August 12, 1996. *See* Nakayama Dec. at 4, ¶ 14. However, 34 of the 44[4] documents EPA withholds in this category were prepared after August 12, 1996. These documents obviously are not pre-decisional with respect to EPA's adoption of the reform policies at issue. Rather, as with PL No. 5147, which the Court ordered produced following *in camera* review notwithstanding EPA's deliberative process claim, these later documents apparently do not relate to the adoption of new policy but to the implementation of pre-existing policy.

> 2. Documents Relating to Compliance Monitoring of Potentially Responsible Party (PRP) Obligations under Settlements and UAOs (Nakayama Dec. at pp. 5-6)

Subject to its previously addressed arguments regarding the general applicability of the deliberative process in this case, GE does not object to EPA's assertion of deliberative process privilege for these documents.

---

[4] Mr. Nakayama's declaration identifies 48 documents in this category. However, four of the documents (PL Nos. 601, 4594, 5014, and 6706) are not listed on EPA's October 27, 2006 privilege log. Similar discrepancies appear elsewhere in Mr. Nakayama's declaration, only some of which are addressed in EPA's *errata* letter to the Court on November 3, 2006. GE presumes that all documents not listed in the privilege log have been produced, whether or not they appear in Mr. Nakayama's declaration.

    3.    <u>Documents Relating to Allocation of Superfund Response Money in Order to Maximize PRP Contributions</u> (Nakayama Dec. at p. 6)

Although at best only vaguely described in Mr. Nakayana's declaration, most of the documents in this category apparently relate to EPA's analysis of the historical results of Section 106(b) petitions that had been filed against the agency seeking reimbursement for costs incurred by PRPs in response to UAOs (*See* PL Nos. 5212, 5888, 5889, 5890, 5891, 5892, 5893, 5894, and 5895).[5] EPA does not identify any enforcement policy to which these documents relate, as required by the Court's September 12, 2006 opinion, let alone show that the documents set forth pre-decisional deliberations relating to a policy not subsequently followed by agency personnel. Four other documents relate to Region 6's decision not to adopt certain enforcement first procedures proposed by headquarters (PL Nos. 6204, 6205, 6206, and 6207). This decision by Region 6 apparently reflects final agency action for PRPs in Region 6 and accordingly should not be concealed on deliberative process grounds.

    4.    <u>Documents Relating to Enforcement First at Superfund Sites: Negotiation and Enforcement Strategies for Remedial Investigation/Feasibility Studies (RI/FS)</u> (Nakayama Dec. at pp. 6-8)

The documents in this category all relate to a guidance document issued by EPA in August 2005, in which EPA reaffirmed its commitment in RI/FS decisions to the "enforcement first" policy adopted by EPA in 1990. EPA does not identify any new policy that was being established in connection with this guidance document. EPA's "enforcement first" policy is of

---

[5] GE previously provided the Court with copies of two drafts of this analysis produced by EPA in connection with its submission of documents by which EPA waived privilege. *See* General Electric's Submission of Documents By Which Defendant Waived Asserted Privileges, attachments 16 & 17 (filed June 12, 2006). EPA responded that the analysis was not privileged, explaining that "[n]one of the material contained in either version is confidential or deliberative in nature" and that the analyses "reveal nothing substantive about EPA's strategies or methods in defending reimbursement claims." *See* Response to General Electric's Submission Regarding Waiver, at 12 (filed June 19, 2006).

7

long standing, and EPA has used its UAO authority to order PRPs to conduct RI/FS's repeatedly over the past 15 years.  Thus, in accord with this Court's rejection of deliberative process claims for documents leading up to another recent EPA memorandum reaffirming the "enforcement first" policy, *see* Court's *in camera* analysis of PL No. 5147 as part of its September 12, 2006 opinion, EPA's claims of deliberative process protection for the documents in this category are without merit and the documents should be produced.

     5.     <u>Documents Relating to Negotiation and Enforcement Strategies to Achieve Timely Settlement and Implementation of Remedial Design/Remedial Action at Superfund Sites</u> (Nakayama Dec. at pp. 8-9)

EPA seeks to withhold in this category some eight years of discussions among EPA enforcement staff regarding strategies for using its enforcement authority in negotiations with PRPs.  EPA does not provide any information to meet its burden of showing that agency employees over this eight-year period have not implemented the viewpoints expressed in these documents or acted pursuant to them.  Nor does EPA establish that the discussions set forth in the documents are not reflective of historical EPA negotiation patterns and practices.  Instead, EPA relies upon the fact that these documents precede and relate to EPA's final guidance document issued on June 17, 1999.  This is insufficient to establish deliberative process privilege and the documents should be produced.

     6.     <u>Documents Relating to Use of CERCLA § 106 to Address Endangerments That May Also Be Addressed Under Other Environmental Statutes ("ISE Memo")</u> (Nakayama Dec. at p. 9)

EPA seeks to withhold documents predating a January 18, 2001 Memorandum on the use of CERCLA UAOs at sites covered by other environmental statutes.  While the formal memorandum was not distributed until January 2001, other documents produced by EPA in this case make clear that the policy addressed in the memorandum was of long standing.  In

particular, EPA has produced a December 10, 1997 memorandum from Cate Tierney memorializing a meeting in which EPA policy on this issue was discussed and informally adopted. (Attached hereto as Ex. A.)[6] The December 10, 1997 memorandum concludes: "In summary, it appeared that OSRE and ORE were in agreement that CERCLA § 106 should be used in appropriate cases, including those presenting novel issues, provided that a careful, case-by-case analysis regarding the use of the authority was undertaken. Charles Breece indicated *that OSRE would work on informally communicating this position to the Regions.*" (emphasis added). EPA fails to establish that the documents it now seeks to withhold as deliberative process are anything other than the memorialization of this pre-existing policy, and, accordingly, these documents should be produced.

       7.     <u>Documents Relating to Draft Guidance on Enforcement of CERCLA Section 106 Administrative Orders ("Enforcement Guidance")</u> (Nakayama Dec. at pp. 9-11)

EPA next seeks to withhold on deliberative process grounds some 110 documents generated over a ten-year period that relate to a draft guidance on enforcement of UAOs. EPA provides only a broad and general description of the documents at issue, which it replicates largely verbatim throughout its deliberative process privilege index, and EPA does not provide the detailed document-specific showing required to demonstrate deliberative process privilege, even with respect to the five "illustrative" documents singled out in Mr. Nakayama's declaration. Moreover, the descriptions that EPA does provide indicate that many of these documents set forth are not intra-agency deliberations, but rather an exchange between EPA and DOJ of each of those agency's respective positions on the issue. As the D.C. Circuit explained in *Tax Analysts*

---

[6] In its September 12, 2006 Opinion, the Court held that EPA's production of this memorandum waived the attorney-client privilege for all documents relating to the subject matter of using Section 106 authority for endangerments arising under other environmental statutes. *See Johnson*, 2006 WL 2616187, slip op. at 120-122.

9

*v. Internal Revenue Serv.*, 117 F.3d 607, 617 (D.C. Cir. 1997), statements by one federal agency in response to inquiries from another agency may set forth the first "agency's legal position and, as such, cannot be viewed as predecisional." The fact that EPA may not have agreed with DOJ's position (or vice versa) does not mean that those agency positions can be withheld as deliberative process privileged.

Moreover, the government's apparent decision that it would not issue any formal guidance on the enforcement of UAOs (which PRPs could then review in considering, *inter alia*, whether the "sufficient cause" defense in fact provides a safe harbor against EPA enforcement, *see* withheld documents PL Nos. 238, 4672, 4753, 4754, 4770, 4773, and 4777) is, in itself, a highly relevant agency determination that may not be concealed from the public under the deliberative process privilege. *See Solid State Circuits, Inc. v. United States Envtl. Prot. Agency*, 812 F.2d 383, 392 (8th Cir. 1987) (calling upon EPA to issue guidance on the meaning of "sufficient cause" in light of due process concerns); *see also Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 155-58 (U.S. 1975) (government's decision not to act can be final agency action and documents relating to such decision thus may not be covered by deliberative process privilege); *Bristol-Meyers Co. v. Fed. Trade Comm'n*, 598 F.2d 18, 26-28 (D.C. Cir. 1978) (decision not to proceed with rule making and documents setting forth reasons therefore not covered by deliberative process privilege).

        8.    <u>Documents Relating to Interim Policy on Settlement of CERCLA Section 106(b) Penalty Claims and Section 107(c)(3) Punitive Damages Claims for Noncompliance with Administrative Orders</u> (Nakayama Dec. at pp. 11-12)

This category covers 74 documents spanning more than six years preceding the issuance of EPA's interim policy on settlement of enforcement claims for noncompliance with administrative orders. As with other documents discussed above, EPA defends its assertion of

deliberative process based solely on the assertion that the comments in the documents were not incorporated into the final agency document. Left unaddressed, however, is the key question whether these documents reflect informal practices followed by agency personnel prior to the issuance of the 1997 interim policy or whether any of the discussions set forth in the documents were followed by agency personnel pending issuance of an official and formal agency policy document. EPA thus fails to satisfy its burden of establishing the deliberative process privilege and the documents should be produced.

9. <u>Documents Relating to CERCLA Settlement Models and Unilateral Administrative Order Models</u> (Nakayama Dec. at pp. 12-13)

Subject to its previously addressed arguments regarding the general applicability of the deliberative process in this case, GE does not object to EPA's assertion of deliberative process privilege for these documents.

10. <u>Documents Relating to Guidance on the Term "Completion" for the Purpose of Submitting a CERCLA Section 106(b) Reimbursement Petition</u> (Nakayama Dec. at pp. 13-14)

As with the documents in category 7 above, EPA seeks to withhold documents discussing the meaning of "completion" on the grounds that the "Agency decided that there would not be a national guidance" on this question. Again, EPA's decision not to issue a guidance upon which PRPs could rely in seeking to assert their right to even a belated review of UAO decisions is, in itself, final agency action obfuscating and impeding PRP due process rights that cannot be shielded behind the deliberative process privilege. *See Sears, Roebuck & Co.*; *Bristol-Meyers Co.*, *supra*. Moreover, EPA does not establish, as it must, that the statements set forth in these documents do not reflect informal policies followed by at least certain EPA officials in their dealings with the public.

       11.      <u>Documents Relating to Issues with other Federal Agencies under CERCLA</u> (Nakayama Dec. at pp. 14-15)

In this category, EPA seeks to withhold a hodgepodge of documents reflecting disagreements with DOJ and other federal agencies over the past 10 years regarding the treatment of federal PRPs at privately-owned sites.[7] These documents apparently reflect final, albeit divergent, positions taken by various federal agencies and accordingly do not qualify for deliberative process protection. *See Tax Analysts*, *supra*. Moreover, the government's decision not to issue formal guidelines governing settlements with federal PRPs – as contrasted with its decision to issue such guidelines in dealings with private PRPs – constitutes a final agency decision that is subject to discovery. *See Sears, Roebuck & Co.*; *Bristol-Meyers Co.*, *supra*. Finally, EPA does not satisfy its burden of identifying particular enforcement policies to which the withheld documents relate or in demonstrating that the discussions set forth in the documents do not reflect informal agency practices or policies that may have been followed at individual sites.

       12.      <u>Documents Relating to National Workgroups</u> (Nakayama Dec. at pp. 15-17)

Despite GE's focus on EPA's workgroup documents in its motion to compel and the Court's finding that EPA had not satisfied its burden of establishing deliberative process protection for these documents, *see Johnson*, 2006 WL 2616187, at *9 (citing Ergener Declaration discussion of workgroup documents), EPA fails to provide any new information to support its claim that these documents can be withheld. Instead, EPA continues to rely on arguments that the workgroup materials reflect personal opinions of Agency staff that were not

---

[7] Although listed in Mr. Nakayama's declaration, some of the documents included in this category have apparently been produced, see, *e.g.*, PL. No. 431, or are not being withheld on deliberative process grounds. *See*, *e.g.*, PL. Nos. 521 and 522. These discrepancies are not addressed in EPA's November 3, 2006 *errata* letter to the Court.

adopted and incorporated into any final agency policy document. Wholly missing is any showing that these documents do not reflect informal practices and policies being followed by Agency personnel in various Regional offices. To the contrary, Mr. Nakayama's declaration concedes that the workgroup documents include "case-specific enforcement discussions" and that the workgroups "serve as a forum for information exchange." *See* Nakayama Dec. at p. 15 ¶ 42. Thus, for example, EPA argues through Mr. Nakayama's declaration that PL Nos. 2591, 1842, and 1892 can be withheld, despite the fact that they reflect the final position of enforcement attorneys from all ten regions and headquarters in the Settlements Lead Region Workgroup on the use of joint and several liability as the standard of liability in CERCLA litigation. *See* Nakayama Dec. at p. 16 ¶ 44. While Mr. Nakayama states that the Workgroup memoranda "have not been adopted as Agency policy," EPA makes no showing that these documents do not reflect the patterns and practices of EPA at specific sites in the Workgroup members' regions.

      13.    <u>Documents Relating to *Cooper Industries, Inc. v. Aviall Services, Inc.*</u> (Nakayama Dec. at p. 17-18)

EPA does not provide any explanation – either in Mr. Nakayama's declaration or in the deliberative process privilege index – of what policy decision is being discussed in the *Aviall*-related documents, let alone establish that the information set forth in the documents do not reflect ongoing EPA practices or case-specific decisions. Regardless whether EPA has reached any "final agency position" on *Aviall*, its enforcement staff is addressing *Aviall* questions on a daily basis and is taking actions in response to that decision in their dealings with the public. These documents should be produced.

14.     Uncategorized Documents

Mr. Nakayama states in his declaration that EPA has asserted deliberative process for 26 documents that do not fall in any of the 13 categories discussed above. *See* Nakayama Dec. at p. 4. However, Mr. Nakayama nowhere identifies or describes those documents and accordingly does not provide the requisite senior official support for these privilege claims. All 26 of these documents accordingly should be produced.

## III.   EPA's Discussion of Documents Withheld on Deliberative Process Grounds Demonstrates that GE's Need for the Documents Is Greater than the Government's Interest in Keeping the Documents Secret.

In its September 12, 2006 opinion, the Court reserved the question whether GE's need for withheld documents might outweigh the government's interest for secrecy for documents to which deliberative process protection had been established. *See Johnson*, 2006 WL 2616187, at *10 n.3. EPA's discussion of the documents it has withheld provides ample evidence that many of the documents discussed above should be produced even if EPA had met its burden of establishing the privilege.

GE alleges that EPA's pattern and practices in implementing its UAO authority deprives PRPs of any meaningful right to a hearing. But EPA seeks to withhold documents that are centrally important to GE's ability to establish its claim. For example, GE argues that the "sufficient cause" defense does not provide a safe haven for purposes of *Ex Parte Young* because, as the Eighth Circuit found in *Solid States*, EPA has failed to issue any guidance about the meaning of "sufficient cause" upon which PRPs could rely. But EPA seeks to conceal documents discussing its understanding of "sufficient cause" and its reasons for not issuing guidance defining the term. GE cannot readily discover this information from any other source, and the public has a compelling interest in understanding EPA's position on this important

14

element of its Section 106 authority.  Likewise, GE argues that a PRP's purported right to obtain a meaningful hearing through post-completion Section 106(b) review is illusory because EPA can delay such review by withholding certificates of completion[8] and because the decks are so stacked in EPA's favor that even EPA does not consider Section 106(b) petitions to provide any meaningful check on its unfettered discretion.  But EPA seeks to withhold its internal discussions on whether to provide guidance on the meaning of "completion" as well as its internal analyses of the impact of Section 106(b) petitions on its dealings with the public.  Again, GE cannot obtain this information elsewhere, and the government does not have a legitimate interest in keeping its views on these important policy issues hidden from PRPs.  GE also alleges that the federal government uses the *Aviall* decision and EPA's favored-status treatment of federal PRPs to improperly shift the cost of remediations through UAOs to private parties, but again, EPA seeks to conceal its patterns and practices in this regard behind the deliberative process banner.  The federal government's improper conduct in exploiting the *Aviall* decision to favor federal PRPs (*i.e*., itself) at the expense of the public should not remain hidden.

EPA also repeatedly seeks to withhold documents on deliberative process grounds based on the argument that EPA has not adopted any final Agency policy on the issue in question.  But GE's claims focus on the actual patterns and practices followed by EPA personnel in the field regardless whether they are consistent with or covered by any formal Agency-wide document.  Thus, EPA's efforts to conceal, *e.g.*, discussions among national workgroup members about case-specific enforcement decisions or exchanges of information about enforcement practices in the various regions, or discussions over a ten-year period concerning the practices used in pressuring PRPs into settlements or enforcing UAOs, deprives GE of direct evidence of EPA

---

[8] For an example of EPA's improper conduct in withholding certificates of completion, see

patterns and practices that are key to its case.  GE cannot readily obtain this evidence from any other source.  While GE can point to illustrations of EPA's improper patterns and practices, EPA's ability to withhold direct evidence of its decision-making in pursuing such actions would give it free reign to contend that GE has misinterpreted the facts or engaged in cherry-picking.  This should not be allowed.

**IV.     EPA Continues to Withhold on Work Product Grounds Numerous Documents that Do Not Relate to Specific Sites or Litigation.**

In its September 12, 2006 opinion, this Court held that EPA may withhold documents on work product grounds only if the document was prepared in anticipation of a specific claim or litigation.  *See Johnson*, 2006 WL 2616187, at *11.  A number of the documents on EPA's October 27, 2006 privilege log appear to meet this criteria, and GE does not object to EPA's withholding of those documents.  However, EPA continues to withhold as work product numerous other documents that, as described, relate to general EPA enforcement policies and are not entitled to work product protection.

For example, EPA continues to assert work product protection for various documents that relate to general EPA policies or guidances.  *See*, *e.g.*, PL Nos. 101, 104, 106, 119, 120, 122, 131, 177.01, 343, 507, 582, 677, 817, 2321-22, 4679, 4734, 4778, 4779, 6632, 6751, and 6768.  EPA also asserts work product protection for documents addressing EPA's approach to enforcement in light of the *Aviall* decision.  *See*, *e.g.*, PL Nos. 3-5, 7-8, 11-12, 32-37, 644, 1013, 4880, 4904, and 5556.  While EPA's enforcement policy regarding *Aviall* will play a role in future litigation, this fact is insufficient to justify work product protection (as the Court recognized in rejecting *in camera* EPA's work product claims for PL. Nos. 83 and 93).  A

---

attached correspondence at Ex. B.

16

number of other documents are withheld on work product grounds with no mention of any specific claim or litigation. *See* PL No. 710, 1875, 2531, and 4121.

EPA has not satisfied its burden in establishing work-product protection for these documents. They should be produced.

**V.      EPA Continues to Withhold on Attorney-Client Privilege Grounds Documents that Are Not Communications and that Relate to Regulatory Rather than Legal Functions.**

The Court explained in its September 12, 2006 opinion that the attorney-client privilege only protects communications and that EPA's invocation of the privilege to protect documents which are not in and of themselves communicative or reflective of communications was improper. *See Johnson*, 2006 WL 2616187, at *16. Nonetheless, EPA continues to assert the attorney-client privilege for numerous documents that do not appear to have been transmitted or prepared for transmission to anyone else and as to which EPA does not identify any incorporated communication. *See* PL Nos. 970, 1699, 1700, 1878, 1880, 1895-96, 4121, 4883-84, and 5989. EPA also continues to withhold documents where it has failed to identify any recipients of the documents, as this Court explained it must to demonstrate that the documents have been shielded from exposure to non-essential third-parties. *See* PL Nos. 518, 626, 725, 1196, 1699, 1700, 1701, 1879, 1895-96, 2165, 2194, 2321-22, 2367-68, 2399, 2853, 4692, 4777, 6380, and 6668.

The Court also made clear that EPA could not invoke the attorney-client privilege to withhold documents where the attorneys were acting in a regulatory or adjudicatory, rather than legal, capacity or where the communications set forth Agency policy or made law. *See Johnson*, 2006 WL 2616187, at *17. However, many of the documents still withheld on attorney-client grounds appear to fall into these categories. *See* PL Nos. 202-07, 238, 462, 517, 518, 520, 532, 547, 622, 623, 680, 812, 814, 899, 903-910, 915-924, 926, 930-32, 937, 957, 969, 970, 1160,

1161, 1163, 1184, 1261, 1672, 1675-77, 1856, 1878-80, 1890, 1893, 1895-97, 2118, 2165, 2367-69, 2691, 2793, 2817, 2851, 2853, 2855, 3222, 4692, 4777, 5008, 5212, 5798, 5927, 6380, 6393, 6668, and 6771.

EPA has not satisfied its burden of establishing that the aforementioned documents are covered by the attorney-client privilege and all of these documents accordingly should be produced.

## **Conclusion**

For the foregoing reasons, GE requests that EPA be ordered to produce the improperly withheld documents listed in its October 27, 2006 privilege log.

November 17, 2006                    Respectfully submitted,

/s/ Eric G. Lasker
Donald W. Fowler (Bar No. 381172)
Eric G. Lasker (Bar No. 430180)
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W.
Washington, DC  20005-3305
(202) 898-5800
COUNSEL FOR PLAINTIFF
GENERAL ELECTRIC COMPANY