# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

GENERAL ELECTRIC CO.,

Plaintiff,

v.

STEVEN JOHNSON, Administrator,
United States Environmental Protection
Agency, and the UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY,

Defendants.

Civil Action No.  00-2855 (JDB)

## MEMORANDUM OPINION

Presently before the Court in this ongoing discovery dispute are plaintiff General

Electric's ("GE") objections to the claims of privilege asserted by defendant the Environmental

Protection Agency ("EPA" or "Agency") in the revised privilege log and accompanying materials

that EPA submitted on October 27, 2006.  EPA submitted these materials in response to the

Court's Memorandum Opinion and Order issued on September 12, 2006, which granted in part

and denied in part GE's motion to compel the production of documents, ordered EPA to

reevaluate its privilege claims in light of the legal principles set forth by the Court, and required

EPA to submit a second sampling of withheld documents for in camera review.  Gen. Elec. Co.

v. Johnson, Civ. A. No. 00-2855, 2006 WL 2616187, at *3 (D.D.C. Sept. 12, 2006)

("Memorandum Opinion" or "Mem. Op.").  This opinion and the accompanying table set forth

the Court's resolution of the objections raised by GE and the Court's determinations with respect

to the fifty-two documents submitted for in camera review.

## **BACKGROUND**

The Court's September 12 Memorandum Opinion explains the lengthy factual and procedural background of this case, as well as the contours of the discovery dispute that has now endured for over a year and a half.  See 2006 WL 2616187, at *1-*3.  In that decision, the Court assessed EPA's claims that 6,177 documents sought by GE were protected by the deliberative-process privilege, the work-product doctrine, and the attorney-client privilege.  (The Court also ruled, in a discussion not relevant here, on GE's argument that EPA's inadvertent release of certain documents effected a subject-matter waiver "with respect to withheld documents of the same type."  Id. at *17-*20.)  After setting forth at length the legal principles that govern each of the three protections asserted by EPA, the Court applied those principles to a sampling of ninety-nine documents that it had reviewed in camera, and explained its findings as to each of the ninety-nine documents in a table appended to the Memorandum Opinion.  Those findings were to serve as a guide to the parties, and in particular to EPA, which was directed to review its privilege assertions, produce all of the documents that the Court had determined were improperly withheld, and create a final privilege log that included only those documents that would qualify as protected under the legal principles explained (and illustratively applied) by the Court.  Id. at *21.  To ensure that EPA complied with these terms, the Court required EPA to generate a new sampling of no more than fifty of the documents that were included in its final privilege log for in camera review.

EPA has now submitted its final privilege log and the required sampling of fifty

documents.  (EPA has actually submitted fifty-two documents.)  Yet despite the parties' previous efforts and the Court's directive in the September 12 Memorandum Opinion, EPA estimates that it is still asserting at least one type of privilege for 4,652 documents - - a relatively modest reduction from the 6,177 documents previously at issue.  See Nov. 3, 2006 Errata Letter from Brian H. Lynk to Hon. John D. Bates.  Moreover, EPA is now asserting new privilege claims with respect to documents that the Court previously ruled were not protected by other privileges. See Oct. 27, 2006 Letter from Brian H. Lynk to Hon. John D. Bates.  GE has responded to EPA's latest privilege claims with a series of objections that are both procedural and substantive.  As a procedural matter, GE maintains that EPA has waived the new privilege claims that it now asserts by failing to raise them in any of the three previous privilege logs that it compiled or in any of its prior filings.  See GE's Objections at 2.  On a substantive level, GE argues (1) that EPA has not carried its burden of demonstrating that thirteen specific categories of documents are protected by the deliberative-process privilege; (2) that, even if the documents are covered by the deliberative-process privilege, GE's need for them outweighs any harm to EPA from production; and (3) that EPA continues to withhold under the work-product doctrine and attorney-client privilege documents that do not qualify for those protections under this Court's earlier Memorandum Opinion.

To address these objections, the Court has proceeded in the following manner.  First, the Court has conducted an in camera review of the fifty-two documents submitted by EPA and has once again prepared a table (Table T-3) that contains its findings and conclusions with respect to the individual privilege claims.  The Court has also considered GE's argument that EPA has waived privilege claims with respect to approximately 150 documents by failing to raise those

claims in prior privilege logs.  Still remaining are GE's objections to eleven of the thirteen categories of documents that EPA claims are protected by the deliberative-process privilege, as well as GE's contention that EPA continues improperly to withhold a large number of documents under the work-product doctrine and the attorney-client privilege.  In addressing these objections, the Court has proceeded as have the parties - - by evaluating each category of documents allegedly protected by the deliberative-process privilege, and by assessing, to the extent that it can without the actual documents before it, whether the examples of documents referenced by GE have been improperly withheld under the work-product doctrine or the attorney-client privilege.  Finally, with respect to those documents or categories of documents that are in fact entitled to the qualified deliberative-process privilege, the Court has determined whether GE's purported need for the documents outweighs EPA's privilege claim.

This procedure has led the Court, after careful consideration of all of the materials submitted, to reach the following conclusions: (1) EPA has waived privilege claims that it failed to raise in the three privilege logs previously submitted during discovery, and will accordingly be ordered to disclose the approximately 150 documents for which it has asserted a privilege for the first time in the October 27, 2006 privilege log; (2) EPA has met its burden of establishing that most of the documents for which it claimed the deliberative-process privilege are in fact covered by that privilege, but must produce some documents for which the privilege claims have been rejected; 3) EPA continues to construe too broadly the protections afforded by the work-product doctrine, and must reevaulate its work-product claims in light of Table T-3 and this Opinion; 4) EPA has properly limited its claims of attorney-client privilege to situations where agency attorneys act in a legal capacity, but must reassess its claims in light of the Court's conclusion,

reaffirmed here, that the party asserting the privilege generally must be able to identify recipients and/or provide some indication that the document was prepared for transmission to someone else; and 5) GE's asserted need for the documents does not overcome the qualified deliberative-process protection to which some of the disputed documents are entitled.  These conclusions are more fully explained in the ensuing discussion.

## ANALYSIS

### A.  Waiver of newly asserted privileges

GE objects at the outset to EPA's assertion, for the first time in its updated privilege log, of new (or different) privileges as the sole ground for withholding documents as to which the original claims of privilege have been withdrawn in light of the Court's prior rulings.  Specifically, EPA has asserted the deliberative-process privilege for more than ninety documents obtained from Department of Justice files and for which EPA had previously invoked only the attorney-client privilege and/or the work-product doctrine.  See Oct. 27, 2006 Letter from Brian H. Lynk to Hon. John D. Bates; GE's Objections at 2 & n.2.  As EPA candidly admits, it decided to assert the deliberative-process privilege only after the Court rejected its other privilege claims with respect to the documents at issue.  GE has also identified approximately sixty additional documents - - a number that EPA does not contest - - for which EPA has now raised either the attorney-client privilege or the work-product doctrine after withdrawing other claims of privilege.  See GE's Objections at 2 & n.3.  The question before the Court, then, is whether EPA's failure to assert these privilege claims earlier in these proceedings constitutes a waiver of the privilege claims or whether, as EPA argues, its attempt to "conform[] its privilege claims to the principles

articulated" by the Court in the September 12 Memorandum Opinion suffices to excuse the tardy assertions.  See  EPA's Reply at 4.

As this Court has recognized, "[t]he D.C. Circuit follows a 'strict rule on waiver of privileges.'"  Bowles v. Nat'l Ass'n of Home Builders, 224 F.R.D. 246, 253 (D.D.C. 2004) (quoting Sec. & Exch. Comm'n v. Lavin, 111 F.3d 921, 929 (D.C. Cir. 1997)).  Waiver issues, particularly in the context of the attorney-client privilege, most often arise when a party inadvertently discloses allegedly privileged materials, or when such materials are "involuntarily" disclosed by third-parties over whom the privilege holder has no control.  See id.  In the former situation, the rule in the D.C. Circuit is clear: even an inadvertent disclosure constitutes a waiver of the attorney-client privilege, and the only remaining question is the scope of that waiver. See In re Sealed Case, 877 F.2d 976, 980 (D.C. Cir. 1989); see also Hicks v. Bush, 452 F. Supp. 2d 88, 104 (D.D.C. 2006) (noting that in this circuit "the inadvertent disclosure of attorney-client privileged material constitutes a complete waiver of the privilege").  The same is not true, however, in cases of involuntary disclosure, where courts will find the privilege to have been waived "only when the holder has failed to take reasonable steps to reclaim the protected material." Lavin, 111 F.3d at 930; Bowles, 224 F.R.D. at 253.

Neither of these settled rules applies neatly to GE's waiver argument here, which focuses on EPA's failure to make a timely assertion of privileges.  See GE's Objections at 2-3.  Rather, GE relies on another waiver rule that has been employed by district courts both inside and outside of this circuit in the distinct context of privilege logs.  Under that rule, a party's failure "to assert a privilege on its privilege log or in any of its pleadings" amounts to a waiver of the privilege.  See Banks v. Office of the Senate Segeant-at-Arms, 233 F.R.D. 1, 9 (D.D.C. 2005)

(citing Carey-Canada, Inc. v. California Union Ins. Co., 118 F.R.D. 242, 248-49 (D.D.C. 1986));

see also In re Honeywell Int'l, Inc. Securities Litigation, 230 F.R.D. 293, 299 (S.D.N.Y. 2003)

(discussing the different approaches in the Southern District of New York when a party "fails to

assert [a privilege] in a privilege log, but instead asserts a different privilege").  This rule, in turn,

is derived from both the requirements imposed by Fed. R. Civ. P. 26(b)(5) and the more general

principle that "[f]ailure to assert [a] privilege within a reasonable time, without a showing of

good cause, constitutes a waiver of the privilege."  Banks, 233 F.R.D. at 9 (citing Blumenthal v.

Drudge, 186 F.R.D. 236, 240 (D.D.C. 1999)); see also 6 James Wm. Moore et al., Moore's

Federal Practice ¶ 26.90[1] (Matthew Bender 3d. ed.) (explaining that Rule 26(b)(5) "requires the

party asserting the privilege or protection to make the claim expressly, and to describe the nature

of the information not produced in a manner that, without revealing information itself privileged

or protected, will enable other parties to assess the applicability of the privilege or protection").

A party's failure to assert applicable privileges in a timely fashion, of course, hinders (rather than

enhances) its opponent's ability "to assess the applicability of the privilege or protection" at issue.

Fed. R. Civ. P. 26(b)(5).  Given the possibility that tardy privilege claims will further ensnare

parties in discovery battles, courts in this district have treated seriously a party's noncompliance

with Rule 26(b)(5) and have been willing to impose the severe sanction of waiver.  See Banks,

233 F.R.D. at 9; Carey-Canada, 118 F.R.D. at 249; see also 6 Moore's Federal Practice ¶ 26.90[1]

(calling waiver the "most extreme sanction that a court can impose for failure to follow the

required procedure," and noting that the appropriate sanction "eschews mechanical application").

    As GE sees it, EPA had ample opportunity to assert all applicable privileges in any one of

the three privilege logs that it submitted between September 15, 2005 and April 20, 2006.  GE

insists that, because EPA failed to assert what it now maintains are the correct privileges on three prior occasions, it cannot do so at this late date.  See GE's Objections at 3-4.  To hold otherwise, the argument goes, would be to overlook a party's obvious efforts to reshape its legal contentions in the wake of an adverse ruling and thus encourage precisely the sort of "gamesmanship" that the waiver rules are designed to avoid.  Id. (quoting In re Honeywell Int'l, Inc. Securities Litigation, 230 F.R.D. at 299-300) ("Parties should not be permitted to re-engineer their privilege logs to align their privilege assertions with their legal arguments . . . [because s]uch a practice undermines the very purpose of privilege logs, and promotes the kind of gamesmanship that courts discourage in discovery.").

GE's argument finds strong support in the Banks decision from this district.  In that case, the defendant submitted documents for in camera review, along with a privilege log in which it invoked the work-product doctrine with respect to the five documents at issue. 233 F.R.D. at 9. The court determined that the five documents did not qualify as attorney work product and ordered them produced.  Faced with that directive, the defendant moved for a protective order, arguing that the documents were protected by the attorney-client privilege, which it had inadvertently failed to assert in the briefing and the privilege log.  The court accepted the defendant's contention that its failure to assert the privilege earlier had been an inadvertent omission, but still deemed the privilege to have been waived.  Relying on a previous case that held that a party had waived a privilege claim by failing to assert it in either of two privilege logs or in any of its pleadings, see Carey-Canada, Inc., 118 F.R.D. at 249, the Banks court concluded that the defendant had waived the attorney-client privilege by waiting to assert it "until after the close of discovery, after it submitted its privilege log and the documents to the court for in

camera review, and after the court ordered the documents produced." 233 F.R.D. at 9.  In so

ruling, the court also necessarily rejected the defendant's contention that there had been no

waiver because, "although [the] privilege log only expressly asserted work product protection,

the description of the documents on the log indicated that they are attorney-client privileged." Id.

In other words, the fact that the description may have sufficed to support a privilege claim did not

excuse the party's failure to assert that claim in a timely manner.

That same reasoning applies with equal force here.  EPA's fresh privilege claims follow

on the heels of a legal ruling rejecting the other bases for withholding the requested documents.

This smacks of an attempt by EPA to get a second bite at the apple by "re-engineering" its

privilege log to advance legal arguments that it failed to make at earlier stages of the litigation.

See In re Honeywell Int'l, Inc. Securities Litigation, 230 F.R.D. at 299-300.  The Banks court

refused to tolerate this kind of delay (even if it was inadvertent), concluding instead that the

defendant had failed to assert its privilege claims "within a reasonable time." 233 F.R.D. at 9.

Here, as in Banks, EPA failed to assert the privilege claims at issue until after it had submitted

three prior privilege logs and ninety-nine documents for in camera review by the Court, and until

after the Court had conducted that review and issued a lengthy ruling partially resolving the

dispute.  See id.; see also Carey-Canada, 118 F.R.D. at 249 (deeming a privilege claim waived

where the party had failed to raise it in two prior privilege logs and any of its pleadings).  A delay

of this sort - - where EPA seeks to use its fourth privilege log as a charm for resisting disclosure

- - hardly evinces the "reasonable" or "justifiable" course of conduct that might excuse a party's

failure to make a timely assertion of all privilege claims.  See Banks, 233 F.R.D. at 9; 6 Moore's

Federal Practice ¶ 26.90[1].

EPA does not attempt to distinguish <u>Banks</u>.  It instead offers an array of justifications, all of which boil down to the dual arguments that it "acted reasonably and in good faith" in response to this Court's order and that addressing the merits of the Agency's new privilege claims would not materially prejudice GE.  <u>See</u> EPA's Reply at 3-4.  These arguments, neither of which addresses "good cause" for the failure to assert privilege claims in a timely manner, are ultimately unpersuasive.  For one thing, EPA's contention that it "acted reasonably" appears to rest on a misinterpretation of the instructions set forth in the Court's September 12 Memorandum Opinion.  Seizing on one sentence in that opinion, EPA represents that it responded to the Court's order by producing approximately 1,850 documents in full or in part and also by "remed[ying] a limited number of inconsistencies and omissions in its privilege claims."  EPA's Reply at 1.  It is true that the Court directed EPA to "review <u>all</u> of the documents on the updated privilege log . . . and then create a final privilege log that includes only that documents that, in light of the principles set forth [in the Memorandum Opinion], EPA now maintains are properly withheld."  2006 WL 2616187, at *21 (emphasis added).  That sentence makes sense, however, only when read in the context of the Court's instruction, just one sentence earlier, that EPA "update its current privilege log to remove (<u>i.e.</u>, produce) all documents that the Court has determined are not properly withheld, and to reflect only the grounds for withholding that the Court has upheld."  <u>Id.</u>  This language does not demonstrate any intention to allow EPA to "remedy . . . omissions in its privilege claims."  EPA's Reply at 1.  To the contrary, the Court made abundantly clear that in "updating" its privilege log, EPA was to "produce" <u>all</u> documents that did not qualify for the protections that EPA had asserted at that time.  <u>See</u> 2006 WL 2616187, at *21.  EPA's misinterpretation of these instructions loses sight of the forest through the trees and fails to

account for the fact that the Court was ruling on a motion to compel <u>production</u> of documents.

The Court crafted its opinion so as to facilitate the production of non-privileged documents, not

to serve as a roadmap for EPA to continue to resist disclosure, this time on different grounds.

Furthermore, the supposed reasonableness of EPA's actions is sharply undercut by its

candid (and repeated) admission that it added the new claims of deliberative-process privilege

only after the Court had rejected its other grounds for withholding certain documents.  <u>See</u> Oct.

27, 2006 Letter from Brian H. Lynk to Hon. John D. Bates; EPA's Reply at 3.  It may well be

true, as EPA contends, that its failure to assert all of the applicable privileges earlier was no more

than an omission, due in large part to the "extraordinary demands imposed by discovery in this

matter." EPA Reply at 2.  Discovery in this case has indeed been extraordinary, having placed

onerous burdens on both parties, as well as on the Court.  For that reason, if EPA had, for

example, mistakenly omitted privilege claims for a few documents from its initial privilege log

and later sought to correct its mistake, the Court would likely have declined to find waiver.  But

that is decidedly not the posture of this case.  Here, EPA's tardy privilege claims, made as they

were in direct response to the Court's September 12 Memorandum Opinion, tend toward the kind

of "gamesmanship" that courts seek to discourage in the discovery context.  <u>See</u> <u>In re Honeywell</u>

<u>Int'l, Inc. Securities Litigation</u>, 230 F.R.D. at 299-300.  The Court did not order a "do over"; it

did not instruct EPA to start from the beginning and correct any prior mistakes.  Rather, it

directed EPA to produce the documents that it should have produced earlier, and to provide

additional submissions to demonstrate that EPA was entitled to withhold the documents that it

was still withholding.  Nothing in the Memorandum Opinion or the accompanying order gave

EPA the additional bite at the privilege apple that it now seeks to defend as "reasonable."  While

EPA may well be operating in good faith, and the Court does not intimate otherwise, its actions are not reasonable under the circumstances.

EPA's contention that its tardy invocation of the privileges has not "prejudiced" GE likewise misses the mark.  According to EPA, the overriding purpose of the procedural requirements imposed by Fed. R. Civ. P. 26(b)(5) is to provide a party with "a fair opportunity to challenge" another party's privilege claims.  See EPA's Reply at 2.  Because the privilege claims added since the Court's Memorandum Opinion are similar to EPA's earlier claims and consistent with that opinion, EPA insists, the lateness of the new claims will not materially prejudice either "GE's ability to challenge EPA's privilege claims or [] the Court's ability to rule on that challenge."  Id. at 4.  EPA has once again failed to consider the big picture - - namely, the ability of litigants and the Court efficiently to address the thousands of privilege claims that EPA asserts.  Thus, even if EPA is correct as to the purpose of Rule 26(b)(5), the requested "no prejudice" conclusion does not follow.  That much is clear from the parties' squabbling over one document  - - P.L. No. 626.  See GE's Objections at 4; EPA's Reply at 4.  GE points out that P.L. No. 626 is described in a fashion virtually identical to P.L. No. 625, a document that the Court already determined was not protected by the deliberative-process privilege.  Relying exclusively on the brief descriptions available to it, GE posits that P.L. No. 626 is similar to P.L. No. 625 and that EPA's recent invocation of the attorney-client privilege for the former document must be simply another attempt to avoid disclosing it.  EPA, which of course has access to the actual documents, corrects that apparently inaccurate impression by assuring GE and the Court that the two neighboring documents are similar in description only, that P.L. No. 625 has already been produced, and that the assertion of a new privilege as to P.L. No. 626 was just a result of EPA's

thorough reevaluation of its privilege claims.  <u>See</u> EPA's Reply at 4.

This back-and-forth suffices to demonstrate one concrete way in which GE has been prejudiced.  Specifically, GE has had to spend at least some portion of the relatively short time between receiving EPA's new submissions and the deadline imposed by this Court sifting through the 297-page privilege log to identify the documents for which EPA is claiming a new or different privilege and determining, as best it can given the information disparity, whether these new claims comport with the Court's Memorandum Opinion and the applicable law.  This task was all the more difficult because EPA's October 27th letter informed GE and the Court only that EPA was asserting new privileges.  The letter, unlike the twenty-eight-page chart that EPA submitted with its April 20, 2006 privilege log, did <u>not</u> specify either the quantity or identity of the documents affected by those claims.  <u>See</u> Def.'s Opp'n to Pl.'s Motion to Compel, Exh. 3 (dkt. # 109).  Only with the aid of GE's timely filed objections has the Court been able to identify the affected documents for purposes of its analysis.  <u>See</u> GE's Objections at 2 & nn.2-3.  Hence, if nothing else, EPA's tardy privilege assertions have forced GE to expend its limited time and resources to challenge claims that could - - and should - - have been made almost a year and a half ago.  The Court therefore concludes that EPA's assertion of new privileges for the first time in its <u>fourth</u> privilege log has prejudiced GE.  This prejudice, together with EPA's inadequate justifications for failing to assert valuable privileges within a reasonable time (i.e., an absence of good cause), convinces the Court that the sanction of waiver, although undoubtedly harsh, is appropriate in this case.  Accordingly, EPA will be ordered to produce the approximately 150 documents for which it has asserted a new or different claim of privilege in response to the Court's September 12 Memorandum Opinion.

**B. Deliberative-process privilege**

The primary focus of the parties' briefing is on EPA's assertion (or re-assertion) of the deliberative-process privilege with respect to over 800 documents. In support of its privilege claims, EPA has submitted an updated declaration from Granta Y. Nakayama, Assistant Administrator for the Office of Enforcement and Compliance Assurance; a declaration from Alan J. Steinberg, the Regional Administrator for Region 2, pertaining to one document only; and a separate privilege log that provides paragraph-long descriptions of each of the documents for which EPA has claimed the privilege. In his Declaration, Nakayama divides 793 of the documents into thirteen categories of ten or more documents, with a fourteenth category consisting of twenty-six miscellaneous documents. Nakayama Decl. ¶ 11. The Declaration further indicates that lower-level attorneys reviewed each document in compiling the privilege log, and then Nakayama personally reviewed a representative sample of forty-eight documents, including at least one in each of the thirteen categories (but apparently none of the uncategorized documents). Id. ¶ 5. The Court, as part of its in camera review of fifty-two documents (see Table T-3 infra), has evaluated three documents from category eight, two documents from category four, and one document each from categories seven, nine, eleven, and twelve. That is to say, the Court has reviewed at least one document in six of the thirteen categories.

GE objects to various aspects of EPA's response to the Court's September 12 Memorandum Opinion. As a threshold matter, GE objects generally to the methodology employed by EPA, and specifically to the fact that, despite the Court's observation that the deliberative-process inquiry is document-specific, the agency official asserting the privilege reviewed only forty-eight of the more than 800 documents at issue. GE's Objections at 5. To the

extent that GE challenges the adequacy of the Nakayama Declaration on the ground that

Nakayama did not personally review all of the 800-plus documents, the Court agrees with EPA

that such an objection is meritless.  Under the law of this circuit, invocation of the deliberative-

process privilege "requires a formal claim of privilege by the head of the department with control

over the information.  That formal claim must include a description of the documents involved, a

statement by the department head that she has reviewed the documents involved, and an

assessment of the consequences of disclosure of the information."  Northrop Corp. v. McDonnell

Douglas Corp., 751 F.2d 395, 405 n.11 (D.C. Cir. 1984).  Subsequent case law makes clear,

however, that these requirements are not as rigid as they may have once appeared.  For instance,

the D.C. Circuit has recognized that common-law executive privileges, including the

deliberative-process privilege, may be asserted by high-ranking officials other than the agency

head.  See Landry v. Fed. Deposit Ins. Corp., 204 F.3d 1125, 1135-36 (D.C. Cir. 2000).

Moreover, the high-ranking official who asserts the privilege need not have reviewed every

document for which the agency has claimed an executive privilege.  See Founding Church of

Scientology, Inc. v. Director, F.B.I., 104 F.R.D. 459, 465 (D.D.C. 1985).  Requiring the agency

official to review all "deliberative process material generated at the working attorney staff level

or by mid-level managers or administrators," as another court has usefully explained, "would be

an unwarranted imposition on the time of [such officials], who need to be free to devote their

time to major policy issues and the management of their departments and agencies."  Id.[1]

---

[1] Also significant is EPA's willingness to submit the allegedly privileged documents for in
camera review.  Indeed, courts in this circuit have imposed less demanding standards on the
agency official's affidavit where, as here, those courts would be able to review the documents
themselves.  See, e.g., Black v. Sheraton Corp. of Am., 564 F.2d 531, 543 (D.C. Cir. 1977);
United States v. American Tel. & Tel. Co., 86 F.R.D. 603, 605 (D.D.C. 1979).  This Court has

Accordingly, the fact that Nakayama did not personally review every document for which EPA has asserted the deliberative-process privilege does not, in and of itself, preclude EPA from making those privilege claims.

But the Nakayama Declaration is also, in GE's view, flawed in other respects.  For one thing, GE asserts that the Declaration exhibits the same vices that the Court identified in EPA's previous round of declarations: reliance on conclusory statements and legal "buzz words" to carry the agency's burden of demonstrating that the documents or communications are predecisional and deliberative in nature and have not been adopted, either formally or informally, as the agency's policy or position in its dealings with the public.  See Mem. Op., 2006 WL 2616187, at *8-*10.  In addition to this generalized objection, GE maintains that EPA has failed to carry its burden with respect to 11 of the 13 categories of documents identified, and also with respect to the group of uncategorized documents (for which the Nakayama Declaration provides neither a description nor an indication that Mr. Nakayama ever reviewed any sample).

Guided by GE's category-by-category objections and EPA's category-by-category rebuttal, the Court too will structure its analysis around the categories set forth in the Nakayama Declaration, bypassing categories two and nine because GE does not object to them.  Some preliminary comments about the Court's approach to all of GE's objections are, however, in order.  Throughout its brief, GE essentially identifies alleged legal errors in EPA's assertion of the protection at issue (whether deliberative-process, attorney-client, or work-product), and then lists illustrative privilege log entries that exhibit the alleged error.  GE chooses those examples

---

already reviewed a significant number of the documents allegedly protected by the deliberative-process privilege and could, if the need arose, gain access to all of them.

based on the only information to which it is privy: the brief descriptions in EPA's revised

privilege log.  What the Court cannot do, however, is make individualized rulings on each of the

cited examples solely on the strength of those descriptions.  It was precisely to avoid the need for

individual review of thousands of documents, of course, that the Court (1) requested a

representative sampling of documents agreed to by the parties, and (2) conducted two rounds of

in camera review of over 150 documents.  The Court simply cannot duplicate the individualized,

document-intensive conclusions found in Tables T-1 and T-3 without the documents.

     For that reason, a different plan of attack is warranted.  That plan will consist of the

Court's addressing the alleged legal errors raised by GE in light of EPA's responses, Table T-3

infra, the September 12 Memorandum Opinion (including Table T-1), and governing case law.

When the Court finds merit to an objection, it will require EPA to produce the documents

identified by GE as illustrative of a particular deficiency, and also to conduct a good-faith review

of its privilege log to determine which other documents exhibit the same deficiency and to

produce those documents as well.  Enforcement of this procedure will undoubtedly depend in

large part on EPA's good faith.  If the number of meritorious objections were very high, and if

EPA had not demonstrated an ability to interpret accurately this Court's previous privilege

determinations, those concerns might counsel against adopting this approach.  But the relative

ease of EPA's task in comparison with earlier stages of discovery - - as well as the Court's

willingness to impose sanctions where warranted, which it reiterates at this time - - suggests that

placing compliance in the hands of the parties, where that task normally resides, carries few risks

here.  This procedure will not be necessary, of course, when the Court determines that an

objection is without merit.  Where the Court does so, that is the end of the matter, and EPA is

entitled to withhold the documents at issue.  With this procedure established, the Court turns to

the specific objections lodged by GE.

### 1. Reform for Equitable Issuance of CERCLA Section 106 UAOs

The more than forty documents in the first category "describe EPA's effort to strike a

balance between maximizing PRP performance of response actions and ensuring equitable

treatment of all parties."  Nakayama Decl. ¶ 13.[2]  Of those documents, Nakayama reviewed four,

all of which EPA claims to have released in part and redacted in part.  Id. ¶ 15.  GE argues that

redacting or withholding thirty-four of the documents was improper because those documents

were generated after the agency had finalized its CERCLA reform procedures on August 12,

1996.  See GE's Objections at 6.  In response, EPA maintains that the documents contain

deliberative material related to maintaining, refining, and revising the 1996 reform procedures.

See EPA's Reply at 7-8.

EPA has the better of the argument.  The Court has previously explained that the fact that

a document was created after the adoption of the policy to which it relates does not necessarily

render it "postdecisional" and thus deprive it of protection.  Rather, documents that "discuss[] or

analyze[] a policy that was previously adopted by the agency" can still qualify for the privilege

unless their "recommendations and assessments form the basis for the agency's continued

maintenance, or subsequent abandonment or revision, of the pre-existing policy."  Mem. Op.,

---

[2] There is some dispute as to the number of document properly included in this category.
Although the Nakayama Declaration lists forty-eight documents, GE correctly points out that
three of the documents listed in ¶ 13 of the Declaration - - P.L. Nos. 4594, 5014, and 6706 - - are
not included in the October 27, 2006 privilege log.  See GE's Objections at 6 n.4.  On the other
hand, a fourth document identified by GE - - P.L. No. 601 - - in fact appears on page 20 of EPA's
deliberative-process-privilege index.

2006 WL 2616187, at *5.  The descriptions provided in both the deliberative-process index and the Nakayama Declaration (¶¶ 14-15) indicate that the documents were recommendatory (and thus deliberative) in nature, and that the suggestions or proposals contained therein did not "form the basis" for any changes to the reform procedures that EPA may have implemented.  Hence, the fact that some of the documents were created after the adoption of the reform procedures does not deprive those documents of their deliberative character.  GE's objection to this category is therefore denied.

### 2. Compliance Monitoring of Potentially Responsible Party (PRP) Obligations under Settlements and UAOs

GE does not object to EPA's privilege assertion as this category of eleven documents.

### 3. Allocations of Superfund Response Money in Order to Maximize PRP Contributions

GE raises two objections to the seventeen allegedly privileged documents in this category. First, GE maintains that EPA has failed to "identify any enforcement policy to which [the] documents relate," a requirement that GE believes was imposed by this Court's prior opinion. See GE's Objections at 7.  GE's second objection centers on four documents that, it says, represent final agency policy followed in one region, rather than pre-decisional deliberations.  As to the first objection, GE is presumably referring to this Court's citation of D.C. Circuit opinions indicating that courts must be able to "pinpoint an agency decision or policy to which the [allegedly privileged] document contributed."  Mem. Op., 2006 WL 2616187, at *4 (quoting Hinckley v. United States, 140 F.3d 277, 284 (D.C. Cir. 1998) (in turn quoting Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987)) (quotation marks omitted).  What exactly a party asserting the privilege must do to satisfy this

"pinpointing" obligation is not free from ambiguity. Indeed, although the Hinckley court recited

that language as it was articulated in a 1987 decision, a subsequent D.C. Circuit decision

purported to reject "[a]ny requirement" that the asserting party identify "a specific decision

[made] after the creation of the document." See Access Reports v. Dep't of Justice, 926 F.2d

1192, 1196 (D.C. Cir. 1991). That court refined the inquiry, placing on the asserting party the

"burden of identifying the decisionmaking process to which [the document] contributed." Id.

Nevertheless, the Court agrees with GE that EPA has not met even this more modest

burden. To say that the Nakayama Declaration (¶¶ 18-19) "only vaguely" describes the agency

decisionmaking process at issue, see GE's Objections at 7, is an understatement. The Declaration

identifies what "some" of the documents pertain to and what "others" discuss, but without

explaining how those documents "contributed" to a particular decisionmaking process or

processes. Nor does EPA appreciably ameliorate the vagueness of that description either in the

limited privilege-log entries or in its brief. The Court has already given EPA the opportunity to

address deficiencies in its declarations and establish the applicability of the deliberative-process

privilege. Because EPA has again "fail[ed] to convince the Court that the privilege applies" to

this category of documents, those documents must be produced. See Mem. Op., 2006 WL

2616187, at *10 n.3. This ruling encompasses the four documents implicated by GE's second

objection, obviating the need for the Court to take up that objection.[3]

---

[3] In reaching this conclusion, the Court is not penalizing EPA for being unable to tie "every document . . . to a specific final decision of the Agency or the government." See Nakayama Decl. ¶ 48. The Court cannot uphold the assertion of the deliberative-process privilege as to this category because EPA has failed to identify even a "decisionmaking process" to which the documents contributed - - which is something broader than the "specific final decision" that, as EPA correctly argues, it is not necessarily required to identify.

4.  *Enforcement First at Superfund Sites: Negotiation and Enforcement Strategies for Remedial Investigation/Feasibility Studies (RI/FS)*

This category consists of 113 documents, of which the Court has reviewed two in camera: P.L. Nos. 4634 and 4889, included in Table T-3 infra.  Analogizing the contents of this category to P.L. No. 5147 in Table T-1, GE maintains that the documents reaffirm EPA's longstanding enforcement-first policy, rather than contributing to the development of new policies.  See GE's Objections at 7-8.  EPA counters, persuasively in the Court's view, that the deliberative process at issue was one in which officials debated whether to apply the enforcement-first policy to a different phase of environmental clean-ups.  See EPA's Reply at 8.  This important distinction, along with the in camera review of two documents and the fact that EPA has identified a decisonmaking process to which the documents contributed, convinces the Court that EPA has met its burden in asserting the privilege.  GE's objection is accordingly denied.

5.  *Negotiation and Enforcement Strategies to Achieve Timely Settlement and Implementation of Remedial Design/Remedial Action at Superfund Sites*

According to EPA, the fifty-nine documents in this category preceded and contributed to a memorandum issued in final form on June 17, 1999.  See Nakayama Decl. ¶ 23.  EPA has released portions of the documents, but has withheld other portions that reveal comments and opinions of agency officials that "reflect the ongoing dialogue and exchange of ideas as part of the 'give and take' process of formulating the agency's position."  Id. ¶ 24.  GE objects on the ground that EPA has not met its burden of demonstrating both (1) "that agency employees . . . have not implemented the viewpoints expressed in these documents or acted pursuant to them," and (2) "that the discussions set forth in the documents are not reflective of historical EPA

negotiation patterns and practices."  <u>See</u> GE's Objections at 8.[4]  EPA responds that it would be

impossible to demonstrative affirmatively "that at no time has any agency employee acted

consistently with any 'viewpoint' expressed in any given deliberative document, other than

through a declaration by a knowledgeable agency official."  EPA's Reply at 8.  The Court agrees.

Indeed, under GE's approach, no amount of declarations, no matter how "knowledgeable" the

agency declarants might be, would suffice to prove in a case such as this one that not a single

agency employee with access to a deliberative document acted consistently with that guidance

despite knowing that he or she was not obliged to do so.  In essence, GE would make the burden

of asserting the privilege, which EPA certainly bears, insurmountable in cases involving large

numbers of documents.

Turning to the specific objection at hand, the Nakayama Declaration and the privilege log

entries adequately identify the decisionmaking process to which the documents contributed,

describe the deliberative nature of the documents, and aver that EPA "has never implemented the

opinions or analyses contained in the document[s], incorporated them into final agency policy or

---

[4] These grounds rest on language in the Court's September 12 Memorandum Opinion.  There, the Court explained that "declarations containing conclusory or general assertions that certain materials 'have no official or binding effect,' 'are not treated as authority or precedent in other matters under consideration,' 'can be freely rejected by decison-making officials,' or are created by persons who 'do not have any authority to make final decisions on the matters,' . . . are insufficient to satisfy" the agency's burden.  2006 WL 2616187, at *9.  Those particular assertions were insufficient in part because "they d[id] not establish that agency employees have not implemented the viewpoints in the documents or acted pursuant to them."  <u>Id.</u>  The Court acknowledges that its own language provides the genesis of GE's argument.  That language should not, however, be unmoored from the context in which it appeared - - an explanation of the governing law and the analogy between the officials' statements and similar ones analyzed in D.C. Circuit precedents.  Left open was the possibility that further submissions could "convince" the Court that certain documents were in fact protected by the deliberative-process privilege .  <u>Id.</u> at *9-*10 & n.3.  The updated Nakayama Declaration, separate privilege log, and documents submitted for <u>in camera</u> review have done just that with respect to some categories.

programs, referred to them in a precedential fashion, or otherwise treated them as if they constitute agency protocol."  Mem. Op., 2006 WL 2616187, at *5; see also Nakayama Decl. ¶ 47. The Court will not require EPA also to research and document whether any agency employee ever acted consistently with a viewpoint set forth in one of the documents at issue - - assuming such a task could even be performed.  Accordingly, GE's objection is rejected.

### 6. Use of CERCLA § 106 to Address Endangerments that May Also Be Addressed Under Other Environmental Statutes ("ISE Memo")

This category consists of thirteen documents that were generated in advance of a memorandum issued on January 18, 2001.  See Nakayama Decl. ¶ 26.  That memorandum provides guidance on the use of CERCLA administrative orders when other environmental statutes may also apply to a particular situation.  According to GE, EPA's policy on this question had been established long before 2001, as is evidenced by a December 10, 1997 memorandum in which an agency official appeared to acknowledge that EPA divisions had reached agreement on the question and agreed to communicate that position "informally . . . to the Regions."  See Exh. A to GE's Objections.  EPA responds that the 1999 memo "is insufficient to overcome Mr. Nakayama's sworn declaration that the material withheld (consisting in at least one case of only a single sentence) contains predecisional comments of agency employees regarding a possible line of reasoning that was not included in the final memorandum and that has not been used in practice by agency employees."  EPA's Reply at 8.

As with so many other aspects of the dispute, the parties are essentially fighting over nothing.  The Nakayama Declaration and the privilege log confirm what EPA says in its brief - - that the redactions of earlier drafts of the memorandum at issue consist in some cases of as little

as one sentence of material.  <u>See</u> P.L. Nos. 5059, 5154; Nakayama Decl. ¶ 28.  How release of

these few sentences could either advance GE's constitutional claim or discourage candor on the

part of agency officials is beyond the Court's comprehension.  Nevertheless, constrained to rule

on this objection, the Court sides with EPA, largely for the reasons articulated in Section B.1

<u>supra</u>.  Even if the 1997 memo demonstrates that EPA had informally established the policy

years earlier, the redacted portions of the documents in this category are not disqualified on the

ground that they are "postdecisional" unless their "recommendations and assessments form the

basis for the agency's continued maintenance, or subsequent abandonment or revision, of the pre-

existing policy."  Mem. Op., 2006 WL 2616187, at *5.  EPA asserts through its privilege log and

the sworn declaration of Mr. Nakayama that the redacted portions of the documents reflect

precisely reasoning and recommendations that were <u>not</u> reflected in the final policy and did not

represent existing agency protocol.  <u>See</u> Nakayama Decl. ¶¶ 27-28, 47.  Having no reason to

doubt that this is so, the Court will deny GE's objection.

> *7. Draft Guidance on Enforcement of CERCLA Section 106
>    Administrative Orders ("Enforcement Guidance")*

This large category consists of 110 documents, created between 1989 and 1999, that

relate to draft guidance that EPA never issued.  The Court has reviewed - - and upheld - - a

privilege claim as to one document in this category: P.L. No. 4777 in Table T-3.[5]  Mr. Nakayama

avers through his sworn declaration that "the draft guidance is not referred to or relied on for any

type of guidance, assistance, or instruction by anyone in UAO enforcement situations and does

---

[5] GE cites P.L. No. 4777 as an example of a document that PRPs could "review in considering,
<u>inter alia</u>, whether the 'sufficient cause' defense in fact provides a safe harbor against EPA
enforcement."  GE's Objections at 10.

not represent Agency practice."  Nakayama Decl. ¶ 30.  He further asserts, based on his review of

five of the documents and his communications with other agency officials, that "the various

drafts and associated comments reflect numerous competing policy positions on which the

Agency has not developed a final position."  Id.  GE again reasserts its objection to the "broad

and general description[s]" provided in the Nakayama Declaration and to EPA's failure to

provide "detailed document-specific showing[s]" in support of its privilege claims.  See GE's

Objections at 9.  To these grounds GE adds two others: (1) the documents chronicle an exchange

between EPA and DOJ that may have captured each agency's legal position on the issue, and

therefore must be disclosed under Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 617

(D.C. Cir. 1997); and (2) EPA cannot hide behind its decision not to issue guidance because that

decision itself constitutes "a highly relevant agency determination that may not be concealed

from the public under the deliberative process privilege."  Id.

EPA again has the better of this argument.  As to GE's first ground, the Court has already

indicated that the privilege-log entries, even if insufficient on their own, do satisfy EPA's burden

when combined with the Nakayama Declaration and the Court's in camera review of a

representative document from this category.  GE's second basis for objecting also misses the

mark.  GE maintains that "statements by one federal agency in response to inquiries from another

agency may set forth the first 'agency's legal position and, as such, cannot be viewed as

predecisional.'"  GE's Objections at 10 (quoting Tax Analysts, 117 F.3d at 617) (emphasis

added).  True enough, but no more true than the proposition that interagency memoranda, such as

the ones from EPA to the Department of Justice, are also eligible for deliberative-process

protection.  See Renegotiation Bd. v. Grumman Aircraft Engineering Corp., 421 U.S. 168, 188

(1985).  What GE's correct, but abstract, recitation of the law does not provide is any basis to doubt EPA's sworn statement that none of the drafts in fact transmitted either EPA's or DOJ's "final position" as to the issues under consideration.  See Nakayama Decl. ¶ 30.

Finally, the fact that EPA never issued the guidance in final form does not eliminate the basis for the privilege claim.  GE makes much of this fact, see GE's Objections at 10 (citing Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 155-58 (1975), and Bristol-Meyers Co. v. Fed. Trade Comm'n, 598 F.3d 18, 25-26 (D.C. Cir. 1978)),[6] but it does not appreciably advance GE's argument.  See Judicial Watch, Inc. v. Clinton, 880 F. Supp. 1, 13 (D.D.C. 1995) (upholding claim of deliberative-process privilege as to documents "set[ing] forth a detailed policy evaluation which the agency ultimately elected not to issue").  Indeed, EPA has, through its filings in this case, offered an explanation for why it did not issue formal guidance - - because no agreement could be reached as to the content of that guidance or the precise form that it would take.  See Nakayama Decl. ¶ 30.  By claiming the deliberative-process privilege on these documents, EPA is not "concealing from the public" its decision (assuming there has been such a final decision) not to issue guidance.  See GE's Objections at 10.  Instead, EPA is seeking to withhold documents whose disclosure EPA says would "discourage candid discussion within the agency" - - the very chilling effect that the privilege is designed to avoid.  See Access Reports,

---

[6] GE's citation to Sears and Bristol-Meyers is unpersuasive.  Those cases establish only that deliberative documents preceding a final agency decision not to initiate an enforcement action or rulemaking may lose their privileged status if they set forth or reflect the agency's rationale for not acting.  EPA does not appear to contend otherwise, instead arguing that the agency has never made the final decision not to issue the guidance to which these documents contributed.  But even if EPA had made such a decision, the documents in this category would still be protected because they consist of drafts and communications related to the proposed guidance, not an explanation or rationale for failing to issue the guidance.  That explanation is found in the Nakayama Declaration and the separate privilege log, to which GE obviously has full access.

926 F.2d at 1195 (citations omitted).  Accordingly, the Court rejects GE's objection as to this category.

        8.  *Interim Policy on Settlement of CERCLA Section 106(b) Penalty*
            *Claims and Section 107(c)(3) Punitive Damages Claims for*
            *Noncompliance with Administrative Orders ("Settlement Guidance")*

The seventy-four documents in this category allegedly preceded and contributed to guidance that was issued on September 30, 1997.  See Nakayama Decl. ¶ 32.  The Court has reviewed three documents from this category in camera and has upheld the assertion of the deliberative-process privilege as to all three of them.  See Table T-3, P.L. Nos. 179.17, 2528, 5211.  GE argues that neither the privilege log nor the Nakayama Declaration answer "the key question whether these documents reflect informal practices followed by agency personnel prior to the issuance of the 1997 interim policy or whether any of the discussions set forth in the documents were followed by agency personal pending issuance of an official and formal agency policy document."  See GE's Objections at 11.  This objection is a recurring one throughout GE's brief.  It is one that, as the Court has already intimated, is both (1) substantively problematic because it would place an impossible burden on EPA, and (2) procedurally unnecessary, insofar as EPA could have remedied this alleged deficiency simply by filing a declaration that parrots the precise language of GE's question.  Such a formalistic approach is unnecessary here, since the Court is satisfied from its individualized in camera review of a representative sample consisting of three of the seventy-four documents that EPA has met the criteria for invoking the privilege.  Hence, GE's objection is rejected.

        9.  *CERCLA Settlement Models and Unilateral Administrative Order*
            *Models*

GE does not object to the withholding of documents in this category.[7]

> *10.  Guidance on the Term "Completion" for the Purposes of Submitting a CERCLA Section 106(b) Reimbursement Petition*

GE bases its objections to the twenty-five documents in this category on the same grounds advanced with respect to the documents in category seven.  For the reasons given in denying that earlier objection, the Court likewise denies this one.

> *11.  Issues with Other Federal Agencies under CERCLA*

The approximately 100 documents in this category are ones that, according to EPA, "outlin[e] a general framework for achieving timely settlements with federal entities that are PRPs for privately-owned sites."  See Nakayama Decl. ¶ 40.[8]  The Court's in camera review of P.L. No. 964 confirms this to be the subject matter of at least some of the documents in the category.  GE seeks release of these documents once again on the ground that EPA's decision not to issue guidance "constitutes a final agency decision that is subject to discovery," and also because the documents at issue "apparently reflect final, albeit divergent, positions taken by various federal agencies and accordingly do not qualify for deliberative process protection."  See

---

[7] The Court notes that the interplay among the various privilege claims has the potential to lead to some confusion with respect to model UAOs and complaints.  Indeed, the Court has addressed in both Tables T-1 and T-3 claims that specific model UAOs or complaints are protected by the work-product doctrine, upholding some claims and rejecting others.  See Table T-1, P.L. No. 4771; Table T-3, P.L. Nos. 2227, 4302.  Nevertheless, GE does not object to EPA's assertion of the deliberative-process privilege as to the thirty-nine documents in category nine.  Any confusion that may result is a product of both the particular privileges EPA has invoked for specific documents and the fact that the Court is ruling only on the privilege claims to which GE has actually objected.

[8] There is once again a discrepancy as to the actual number of documents included in this category.  GE correctly points out that some of the documents listed in the Nakayama Declaration have either been produced, or the claim of deliberative-process privilege has been withdrawn. See GE's Objections at 12 n.7.

GE's Objections at 12.  The Court has already rejected the first of these grounds with respect to category seven, and reaffirms that conclusion here.  As to the second ground, GE's description of the documents finds no support in the Nakayama Declaration, the separate privilege log, or the example submitted for in camera review.  The five documents described individually in the Nakayama Declaration (¶ 41) include a draft, staff comments on a draft, a briefing paper on "proposed" procedures, "an early draft letter," and a "draft" memo that memorializes an exchange between EPA and DOJ.  Nothing in these descriptions, or the ones included in the separate privilege log, suggest that the documents reflect "final" positions taken by EPA, DOJ, or any other federal agency.  Hence, GE's objection lacks merit.

### 12.  *National Workgroup Documents*

The 160 documents in this broad category contain communications and discussions among members of national workgroups and between workgroups and other EPA personnel.  See Nakayama Decl. ¶ 42.  GE raises many of the same arguments that it had previously made in its motion to compel and that the Court found to be meritorious in the September 12 Memorandum Opinion.  Specifically, GE faults the Nakayama Declaration for relying on broad generalizations in describing both the deliberative nature of the documents and the decisionmaking processes to which they purportedly contribute.  The Court, as GE notes, has already criticized EPA's efforts to justify its privilege assertions with regard to the large swath of materials subsumed within this category.  See GE's Objections at 12 (citing Mem. Op., 2006 WL 2616187, at *9).  On the surface, EPA's renewed submissions appear to exhibit at least some of the same failings, since two paragraphs in the Nakayama Declaration (¶¶ 42-43) speak in broad, general terms.  EPA responds that the general nature of Mr. Nakayama's initial explanation does not "somehow negate

the specific document descriptions" provided in the separate privilege log or the longer, document-specific descriptions that Mr. Nakayama gives just one paragraph later.  See EPA's Reply at 11.  Furthermore, EPA submits, the Court already upheld in its September 12 Memorandum Opinion a claim of deliberative-process privilege with respect to one document in this category, P.L. No. 1842.

Both sides have raised valid points based on reasonable readings of the Court's prior opinion.  Favoring EPA are the document-specific descriptions included in the Nakayama Declaration and the separate deliberative-process-privilege log, in addition to the fact that the Court has upheld privilege claims in this category both in its September 12 Memorandum Opinion (P.L. No. 1842) and in Table T-3 infra (P.L. No. 4506).  On the other hand, GE is correct that EPA has continued to justify some of its privilege claims in this category on the basis of broad generalizations.  Most troubling is EPA's failure in some instances to identify the particular decisionmaking process to which a document contributed.  These inadequacies, however, are an inevitable byproduct of the categorical approach followed by the parties in their submissions, with the Court's approval.  EPA simply cannot, via relatively succinct sworn declarations, convey precisely how every document in this category satisfies the two prerequisites for invocation of the deliberative-process privilege.  In the end, the Court agrees with EPA that the specificity demonstrated in the eight examples reviewed by Mr. Nakayama and the separate privilege log, as well as the Court's own in camera review of a sample document, suffice to support the deliberative-process privilege claim here.  GE's objection will thus be denied.

13.  Cooper Industries v. Aviall Documents

The final enumerated category consists of twenty-four documents that "contain, discuss,

-30-

and/or describe the 2004 Supreme Court decision, Cooper Industries, Inc. v. Aviall Services, Inc.," and reflect "various policy discussions among EPA and DOJ employees considering enforcement policy options relating to the Aviall decision."  Nakayama Decl. ¶ 45.  During the latest round of in camera review, the Court has upheld the withholding of at least one similar document on the basis of work-product protection.  See Table T-3, P.L. No. 35.  EPA's arguments for invoking the deliberative-process privilege, however, are less concrete.  GE maintains that the brief descriptions in the Nakayama Declaration and the separate privilege log shed little if any light on the particular decisionmaking process to which the twenty-four withheld documents contributed.  Even if EPA has not finalized a post-Aviall policy, GE says, it is nonetheless "addressing Aviall questions on a daily basis and is taking actions in response to that decision in [its] dealings with the public."  See GE's Objections at 13.  But GE's characterization is not entirely accurate.  The descriptions provided in the separate privilege log, while not crystal clear, do establish that the withheld documents were created in connection with particular decisionmaking processes.[9]

The Court further agrees with EPA that, to the extent that EPA is addressing Aviall-related issues in its dealings with the public, those matters are of public record.  See EPA Reply at 12.  EPA's position on the principal question left open by the Supreme Court in Aviall, for instance, has recently been articulated in briefs filed by the Solicitor General, which briefs are

---

[9] For example, the privilege log entries for three of the twenty-four documents read as follows: "THE DOCUMENT INCLUDES DISCUSSION OF CLEANUP STRATEGY INVOLVING BROWNFIELDS POLICY AND GENERAL ENFORCEMENT POLICY.  THE DOCUMENT WAS PREPARED TO INFLUENCE THE FILING OF BRIEFS IN LITIGATION BY EXPLAINING EPA'S POLICY BASIS FOR ADVOCATING A PARTICULAR POSITION IN LITIGATION.  THE POLICY POSITIONS EXPRESSED IN THIS DOCUMENT HAVE NOT BEEN ADOPTED BY THE UNITED STATES."  See P.L. Nos. 4854, 4855, 4892.

publicly available.  See Petition for a Writ of Certiorari, United States v. Atlantic Research Corp., 459 F.3d 827 (3d Cir. 2006), cert. granted, No. 06-0562 (U.S. Jan. 19, 2007), available at http://www.usdoj.gov/osg/briefs/2006/2pet/7pet/2006-0562.pet.aa.pdf.  Although GE is correct that the specificity supplied by EPA's submissions could be greater, the Court finds no basis on which to reject the privilege claims as to this category of documents.

### 14. Uncategorized Documents

EPA has indicated that twenty-six allegedly privileged documents do not fit into any of the thirteen categories discussed above.  See Nakayama Decl. ¶ 11.  But EPA has failed to identify the documents, describe them, or demonstrate that Mr. Nakayama has reviewed any of them.  Moreover, EPA's response to GE's objections does not even mention the uncategorized documents.  Accordingly, EPA has not met its burden of establishing that the documents are privileged, and must produce them to GE.

## C.  "Need" balancing

Having concluded that many of the documents are entitled to the qualified protection of the deliberative-process privilege, the Court must now answer the question that it left open in the September 12 Memorandum Opinion: whether GE's need for the documents outweighs the interests that the privilege is designed to protect.  See Mem. Op., 2006 WL 2616187, at *10 n.3. In answering that question, the Court must "balanc[e] competing interests, taking into account factors such as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, and the possibility of future timidity by government employees."  Hinckley v. United States, 140 F.3d 277, 286 (D.C. Cir. 1998) (citation and quotation marks omitted).  To start with, neither of the parties appears to dispute that the present litigation is "serious" insofar

as it presents weighty matters at the intersection of administrative and constitutional law.  There

is likewise little dispute that ordering the production of (perhaps many) internal agency

documents raises at least the possibility that EPA employees will henceforth be discouraged from

communicating with the candor necessary to carry out their responsibilities.  See, e.g., Petroleum

Info. Corp. v. United States Dep't of Interior, 976 F.2d 1429, 1434-35 & n.7 (D.C. Cir. 1992).

The principal factors in the balancing mix, therefore, are the relevance of the evidence contained

in the documents and the availability of other evidence.  See Hinckley, 140 F.3d at 286.

     GE's argument as to these two factors is heavy on rhetoric but light on substance.

Reciting at length the allegations underlying its "pattern and practice" constitutional claim, GE

insists that EPA is "seek[ing] to conceal" large classes of documents, and in doing so, has

"deprive[d] GE of direct evidence of EPA patterns and practices that are key to its case."

See GE's Objections at 14-16.  GE points specifically to four types of internal agency

deliberations that it believes are particularly relevant to its constitutional claim: (1) documents

dealing with the "sufficient cause" defense, (2) documents discussing the meaning of the term

"completion" and EPA's draft guidance on that question, (3) documents relating to the federal

government's allegedly "improper conduct in exploiting the Aviall decision," and (4) discussions

among national workgroup members as to enforcement practices across regions and in specific

cases.  See id. at 14-15.

     There are a number of flaws in GE's focus on these documents, many of which EPA

persuasively identifies in its reply brief.  First and foremost, GE focuses on the agency's internal

deliberations and policy debates, when what its constitutional claims challenge, as GE itself

appears to recognize, are "the actual patterns and practices followed by EPA personnel in the

-33-

field." Id. at 15.  What individual agency employees and workgroups thought about doing, or what they proposed in draft versions of guidance that was never issued, has little relevance to proving that EPA's "actual patterns and practices" in enforcing CERCLA   - - what the agency calls its "public application" of the statute - - deprived PRPs of their procedural due process rights.  The Court already recognized as much when it concluded that evidence of an improper "subjective intent" on EPA's part, even if it "might assist GE in making a more convincing case," was simply "not required in order for GE to prevail."  Mem. Op., 2006 WL 2616187, at *7.  Rather, the governing inquiry set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), looks to a particular "procedure, the deprivation that has resulted from the procedure, and the value of the procedure to the government."  Id.  All indications are that GE can, based on the information already available to it, "point to illustrations of EPA's [allegedly] improper patterns and practices."  See GE's Objections at 16.  (GE itself says so in its brief.  See id.)  It can do so precisely because EPA has produced during the course of discovery evidence related to actual enforcement actions.  See id. at 15 n.8 & Exh. B.  To the extent that "the availability of other evidence" is a factor for consideration, Hinckley, 140 F.3d at 286, that factor weighs against GE.

Having established that (1) the documents sought are not especially relevant to the applicable legal calculus established by Mathews, and that (2) GE has access to other evidence in the form of the thousands of documents produced during discovery, the Court must now consider the possibility that release of the privileged documents will prompt timidity among agency employees in the future.  See Hinckley, 140 F.3d at 286.  The Court concludes that this third factor, like the other two, supports EPA.  It is not difficult to realize how knowing that their discussions and writings may be disclosed would discourage EPA employees from offering their

most candid assessment of proposed policies.  This is especially true where, as here, the party

gaining access to the privileged documents is one challenging not just the propriety of a

particular enforcement action, but the constitutionality of the agency's longstanding course of

conduct.  As EPA colorfully put it in an earlier submission, "handing deliberative materials over

to a party that, by its own admission, is a potentially responsible party at numerous CERCLA

sites, to say nothing of being a litigant who seeks to use these documents against EPA in court,

would certainly diminish the candor of future EPA deliberations."  Defs.' Mem. Opp'n to Pl.'s

Motion to Compel at 21 (dkt. # 109).

        In sum, the very significant policies that underlie the privilege, EPA's interest in

maintaining candor in future deliberative discussions, the availability to GE of other

substantively similar documents, and the arguably marginal relevance of EPA's subjective intent

to the Mathews calculus establish that GE has only a minimal need for these documents under

Hinckley.  Accordingly, EPA need not disclose the documents or portions thereof that qualify for

the deliberative-process privilege.

**D.  Work-product doctrine**

        GE next maintains that, although many of EPA's claims of work-product protection

satisfy the specificity requirement explained in this Court's September 12 Memorandum Opinion,

numerous documents fail to meet that requirement and should accordingly be disclosed.  In

making this objection, GE homes in on categories of documents that exhibit three types of

alleged legal errors.  GE first references twenty-two documents that it argues "relate to general

EPA policies or guidances," GE's Objections at 16, rather than to materials that were "created

with an eye toward advancing the client's interest in specific litigation."  Mem. Op., 2006 WL

-35-

2616187, at *11.  A second category consists of eighteen documents that address the agency's

approach to enforcement in light of the Supreme Court's 2004 decision in Cooper Indus., Inc. v.

Aviall Servs., 543 U.S. 157 (2004).  The third category, a more general one from which GE has

selected four examples, comprises documents for which EPA has allegedly failed to point to a

specific claim or litigation proceeding.  With respect to the first of these categories, EPA insists

that the documents, like those for which the D.C. Circuit upheld claims of work-product

protection in Schiller v. Nat'l Labor Relations Bd., 964 F.2d 1205, 1208 (D.C. Cir. 1992), and

Delaney, Migdail & Young v. Internal Revenue Serv., 826 F.2d 124, 127 (D.C. Cir. 1987), were

prepared in anticipation of a specific class of enforcement actions.  See EPA's Reply at 14-15.

The examples seized on by GE, EPA contends, are similar to documents or categories of

documents for which the Court has already upheld privilege claims.  See id. at 15 (citing Table

T-1, P.L. No. 4771).  EPA further argues that the same is true with respect to the Aviall-related

documents, at least two of which the Court already concluded were protected by the work-

product doctrine.  Id. at 16 (citing Table T-1, P.L. No. 5); see also Table T-1, P.L. No. 1013.

As to the first category, the Court shares GE's concern that EPA has not properly applied

the legal principles enunciated and illustratively applied in the September 12 Memorandum

Opinion.  Although EPA may be correct as to some of the documents it cites (e.g., P.L. No. 101),

the Court's conclusion in Table T-3 infra that P.L. No. 6768 is not protected by the work-product

doctrine demonstrates that EPA continues to construe this doctrine too broadly.  Furthermore,

EPA appears to interpret the Court's finding with respect to P.L. No. 4771 in Table T-1 as

establishing a blanket proposition that "work product protection is appropriate for EPA's model

complaints."  EPA's Reply at 15.  The Court's conclusions in both Table T-1 and Table T-3,

however, are more nuanced.  <u>Compare</u> Table T-1, P.L. No. 4771, <u>with</u> Table T-3, P.L. Nos. 541, 2227, 4302.[10]  EPA needs to reevaluate its claims of work-production protection for model complaints and/or UAOs in light of the distinction that the Court has drawn between those documents (or portions of documents) that were created to help with litigation or enforcement generally and those that were created for use in a specific class of cases and/or enforcement proceedings.  Only the latter, the Court has found, are entitled to work-product protection.  As to the remaining documents in this category, the Court cannot determine which ones qualify for work-product protection without the actual documents.  Hence, the soundest course is to require EPA, in light of Table T-3, to review the documents cited by GE, as well as any others similar to them, and reassess whether it has demonstrated that the documents qualify for protection by showing that they are in fact tied to specific litigation/enforcement proceedings or were prepared in anticipation of a concrete set of legal proceedings.  If EPA concludes, after a good-faith review of the relevant documents, that the required showing has not been made by now, then it must produce the documents.

The same instruction is warranted with respect to the third category of documents, of which GE has identified four examples.  GE submits these examples as illustrative of the fact

---

[10] Because the conclusions as to P.L. No. 4771 and P.L. No. 2227 may appear to be in some tension, the Court adds a brief clarification.  P.L. No. 4771 is a model complaint for actions brought under section 106(b) of CERCLA and includes handwritten annotations that suggest possible revisions.  Although those annotations might be privileged, the rest of the document does not deal with a specific case or even a class of cases narrower than section 106(b) penalty actions as a group.  Hence, the Court's conclusion that the entirety of the document qualifies for work-product protection may, on reflection, not be correct.  It appears, however, that GE is not contesting EPA's withholding of these model complaints, at least on deliberative-process grounds.  <u>See</u> <u>supra</u> at 27 & n.7.  GE's position may eliminate any practical effects that any confusion could otherwise have had.

that some of EPA's privilege claims fail to mention "any specific claim or litigation."  GE's

Objections at 17.  GE is correct that some of the descriptions in the privilege log are rather

barebones and fail to identify concretely the particular litigation or class of enforcement

proceedings for which the documents were prepared.  See, e.g., P.L. No. 2531 ("Sample

worksheet for documentation of penalty & treble damages claims.").  Morever, EPA has not

offered any explanation to show why these four documents, or others similar to them, qualify for

work-product protection.  EPA must therefore reevaluate the privilege claims for these four

examples and others similar to them - - that is, others that also appear to lack a specific nexus to

litigation or enforcement proceedings.  Once again, if EPA determines after a good-faith review

that it has not made the requisite showing of specificity, then it must produce the documents by

the March 8, 2007 deadline set forth in the order accompanying this Opinion.[11]

That leaves the second category of documents identified by GE, which relate to the

Supreme Court's Aviall decision.  In Table T-1, the Court already found that two of the

documents cited by GE - - P.L. Nos. 5 and 1013 - - were properly withheld under the work-

product doctrine.  Moreover, the Court has now found that another Aviall-related document

qualifies for work-product protection.  See Table T-3, P.L. No. 35.  There is thus no reason to

---

[11] The Court recognizes that its treatment of these two errors may seem unsatisfactory to both
parties.  GE may feel that the Court has placed compliance squarely and exclusively in EPA's
hands.  EPA might feel that the Court is painting with too broad a brush and could end up
grouping documents for which EPA has not made a sufficient showing with those for which it
has established its claim of privilege.  These concerns are not without force.  They are ultimately
outweighed, however, by the need to advance the discovery process in this case.  This means that
EPA may have to stomach producing documents for which it could have established a claim of
privilege had it had more time, just as GE will have to accept that it may not receive some
documents that it would have if the Court had reviewed every one of the documents individually
or if EPA had unlimited time and resources to dedicate to applying this Court's opinions.

conclude that EPA has erred in asserting work-product protection for the documents in this

category.  Accordingly, this aspect of GE's objections is denied.

**E.  Attorney-client privilege**

In its final set of objections, GE identifies three alleged deficiencies in EPA's assertion of

the attorney-client privilege.  The first alleged deficiency is EPA's assertion of the privilege "for

numerous documents that do not appear to have been transmitted or prepared for transmission to

anyone else and as to which EPA does not identify any incorporated communication."  GE's

Objections at 17.  GE points to eleven documents that exhibit these characteristics.  As to the

second deficiency, GE cites over twenty documents for which EPA has not identified any

recipients and has thus, according to GE, failed "to demonstrate that the documents have been

shielded from exposure to non-essential third parties."  <u>Id.</u>  The documents allegedly exhibiting

the third deficiency, approximately eighty in number, are ones in which the agency lawyers "were

acting in a regulatory or adjudicatory, rather than legal, capacity or where the communications set

forth [EPA] policy or made law."  <u>Id.</u> (citing Mem. Op., 2006 WL 2616187, at *17).

EPA views the first two alleged deficiencies as resting on a misreading of the Court's

September 12 Memorandum Opinion.  That opinion did not, EPA argues, establish "bright-line

rules" that (1) a document must be communicative in nature to qualify for the attorney-client

privilege, or (2) that failure to include "detailed author and recipient information" in the

privilege-log entry automatically dooms a privilege claim.  <u>See</u> EPA's Reply at 16.  There is, the

Court acknowledges, room for disagreement as to whether the Memorandum Opinion requires

EPA to demonstrate either or both of these in order to carry its burden of establishing the

privilege's applicability.  EPA points to two findings in Table T-1, P.L. Nos. 4652 and 5009, that

it says show that the Court upheld privilege claims "even when no author and recipient information was available." EPA's Reply at 17. That is only partially correct. In both those examples, EPA had identified the author by name or position in the privilege log. On the other hand, GE is correct that, throughout both Table T-1 and Table T-3, the Court has rejected claims of attorney-client privilege where the document did not obviously contain legal advice provided by an agency attorney and EPA failed to identify both the author and the recipients of the document. See, e.g., Table T-1, P.L. Nos. 1094, 1482, 1724; Table T-3, P.L. Nos. 6, 1337, 5408.

The parties have seized on what the Court now recognizes is an inconsistency between some of the language in the September 12 Memorandum Opinion and two of the specific applications in Table T-1. After carefully reviewing the materials and the governing legal principles, the Court concludes that its findings as to P.L. Nos. 4652 and 5009 - - the examples cited by EPA - - are the outliers. The Court reaches this conclusion based on the clarity of key passages in the Memorandum Opinion. In discussing inadequacies in EPA's efforts to justify its privilege claims, the Court noted EPA's failure "to identify recipients for some of the documents in the sampling," and explained that EPA, "the party that bears the burden of establishing its privilege assertions," had not provided enough information to demonstrate that allegedly privileged documents had "been shielded from exposure to non-essential third parties." Mem. Op., 2006 WL 2616187, at *16. The Court then "reiterat[ed]" that the attorney-client privilege protects only communications, and thus required, with respect to "documents that do not take a form that is apparently communicative, or that do not by themselves reflect the fact of a confidential communication, some showing that the documents were prepared for transmission to someone else." Id.

GE's first two objections are firmly anchored in this language.  The specific examples cited, moreover, appear to exhibit the very flaws that the Court previously identified and that GE alleges in its brief.  To the extent that the Court's conclusions as to P.L. Nos. 4652 and 5009 are inconsistent with the text of the Memorandum Opinion, the Court now revises those conclusions and holds that EPA has not met its burden of establishing that those two documents are protected by the attorney-client privilege.  This path represents the only way to confirm the language of the Memorandum Opinion and the overwhelming majority of the Court's applications of that language during the two rounds of in camera review.  Indeed, in addition to rejecting numerous privilege claims due to the absence of identifiable recipients or other indications that the document was prepared for transmission, the Court has relied specifically on the presence of those characteristics in upholding privilege assertions.  See, e.g., Table T-3, P.L. Nos. 462, 541, 982, 4802, 5255, 6058, 6161, 6436.  If EPA is to reap the benefit of the privilege when it provides this important information, it must also pay the price for not knowing enough about the document to identify who prepared it and/or to whom it was sent.  Accordingly, the Court will order EPA to (1) reconsider its attorney-client-privilege claims in light of this Opinion and Table T-3 infra; (2) provide by not later than March 8, 2007 a complete and final privilege log listing only those documents that EPA is still entitled to withhold in light of the Court's opinions; and (3) produce by that date all documents for which it has not supported a claim of attorney-client privilege because it has not identified intended or actual recipients or made the required "showing that the documents were prepared for transmission to someone else."  See Mem. Op.,

2006 WL 2616187, at *16.[12]  EPA should take as a starting point the examples cited by GE, with the exception of those documents that GE has erroneously asserted lack the requisite information. See EPA's Reply at 18 n.22.

GE's final challenge to the claims of attorney-client privilege is not persuasive.  GE maintains that the attorney authors of approximately eighty documents were acting as regulators or adjudicators, not as lawyers, and that the documents are not eligible for the attorney-client privilege.  See GE's Objections at 17-18.  GE justifiably makes this argument with some trepidation, asserting only that "many of the documents still withheld on attorney-client grounds appear to fall into th[is] catgor[y]."  Id. (emphasis added).  The Court finds no basis, however, to reject the privilege claims as to these documents.  A quick reading of the privilege-log descriptions does not demonstrate that the documents' authors were acting in a regulatory or adjudicatory capacity.  Any doubt in that regard would be resolved by EPA's brief, which places some of the documents in context, explaining the extent to which legal advice and legal strategy is at the core of many of them.  Finally, given the Court's prior acknowledgment that the line between performing regulatory and legal functions is not always clear, see Mem. Op., 2006 WL 2616187, at *15, the Court accepts at face value EPA's assurance that it has "attempted in good faith to identify when attorneys were acting in a regulatory capacity, and to include in its attorney-client claims only documents reflecting legal advice."  See EPA's Reply at 19.  GE's objection in this regard will therefore be denied.

---

[12] A remaining question is how to treat draft documents when EPA has provided recipient and/or transmission information for one of the drafts but not others.  See EPA's Reply at 17 n.20.  The straightforward solution, although not likely to please EPA, is that it should have provided the required information earlier.  Simply put, the drafts for which EPA has not met its burden of establishing recipients and/or that the document was prepared for transmission must be produced.

**F. Further proceedings**

This case is now over six years old, and discovery has not even been completed.  Under the current scheduling order, the parties' motions for summary judgment will be fully briefed just two weeks before the case reaches its seventh anniversary.  The documents over which the parties have been fighting, or at least some of them, may be important in determining the outcome of this case.  But it must not be forgotten that GE has already received from EPA thousands of documents, consisting of tens of thousands of pages.  The Court's rulings today will entitle it to hundreds if not thousands of pages more.  To put things bluntly, if GE cannot make its case with this abundance of documentary materials, then its claim will justifiably fail.  Indeed, the Court's review of over 150 documents and various privilege logs leaves it with the firm conviction that the materials withheld do not contain the "smoking gun" evidence for which GE might well be hoping.

It is time to move beyond a privilege dispute that has occupied hundreds of hours of the parties' time and the Court's time.  With that objective in mind, the Court will order EPA to revisit its privilege claims once again in light of Table T-3 and the Court's rulings on the waiver issue and GE's other objections.  It will also order EPA to produce by not later than March 8, 2007 all non-privileged materials as well as a final privilege log containing only those documents that, in light of the Court's September 12 Memorandum Opinion and this opinion, EPA is still entitled to withhold.  The Court will not, however, leave GE without any mechanism for challenging EPA's compliance with this directive.  The order accompanying this opinion requires both parties to appear for a Status Conference before the Court on April 6, 2007.  If, after receiving EPA's latest document production and the final privilege log, GE still contends that

documents have been improperly withheld, then it may file by not later than March 21, 2007 a

memorandum (not to exceed seven pages) that sets forth additional objections and the basis

therefore.  The Court will then permit EPA to submit a short response (also not to exceed seven

pages) and will address any remaining objections at the April 6 Status Conference.  But outside

of this limited procedure, the Court expects the parties to move forward and to complete

discovery by the August 3, 2007 date established in the most recent scheduling order.  To repeat,

the time has come to move beyond this resource-draining and case-delaying dispute.


## CONCLUSION

For the foregoing reasons, the Court concludes that: (1) EPA has waived privilege claims

that it failed to raise in three prior privilege logs, and will accordingly be ordered to disclose the

approximately 150 documents for which it has asserted a privilege for the first time in the

October 27, 2006 privilege log; (2) EPA has met its burden of establishing that most of the

documents for which it claimed the deliberative-process privilege are in fact covered by that

privilege, but must produce those documents for which the privilege claims have been rejected;

3) GE's asserted need for the documents does not overcome the qualified deliberative-process

protection; 4) EPA continues to construe too broadly the protections afforded by the work-

product doctrine, and must reevaluate its work-product claims in light of Table T-3 and this

Opinion; and 5) EPA has properly limited its claims of attorney-client privilege to situations

where agency attorneys act in a legal capacity, but must reassess its claims in light of the Court's

conclusion, reaffirmed here, that the party asserting the privilege must generally be able to

identify recipients and/or provide some indication that the document was prepared for

-44-

transmission to someone else.  A separate order has been posted on this date.


_____        /s/ John D. Bates_____
                                                JOHN D. BATES
                                                United States District Judge

Dated:   February 5, 2007_____


### TABLE T-3:

### SUMMARY OF WITHHOLDING DETERMINATIONS DOCUMENTS REVIEWED IN CAMERA

| Log ID Number (per October 27, 2006 Log, as revised on November 3, 2006) | EPA's Withholding Assertions | Findings of the Court |
|---|---|---|
| 6 | attorney-client privilege ("acp") | EPA has not met its burden of demonstrating that the document is protected by the attorney-client privilege.  Although the attorney's comments and corrections provide legal (rather than policy or regulatory) advice, there is neither an indication that the communication was confidential nor an identification of the recipients.  See Memorandum Opinion, 2006 WL 2616187, at *16; Table T-1, P.L. No. 5101.  Furthermore, the attorney's comments do not appear to disclose a confidential communication to or from the agency client.  Even if the three areas of attorney comments were protected by the attorney-client privilege, the rest of the document is not.  EPA has not claimed work-product protection for those portions of the document, and the FAQs and answers are neither based on confidential information obtained from the agency client nor communicating legal advice. |

| 35 | work-product doctrine ("wpd") | Properly withheld as attorney work product because it reveals the attorney's interpretation of an important Supreme Court decision, clarifies "misperceptions and misinformation" regarding the Justice Department's legal position in the wake of that decision, offers potential answers to a number of unresolved and recurring legal questions, and identifies a series of "issues to be addressed" in future litigation.  The attorney here is acting as a legal advisor, rather than as a prosecutor or an investigator, and EPA need not identify a specific claim that he had in mind when the document was drafted.  See In re Sealed Case, Schiller, and Delaney.  Hence, even though the document was not necessarily prepared for use in a specific case, the prospect of future litigation on a set of concrete issues substantially influenced its creation.  See Table T-1, P.L. Nos. 5, 839. |
|----|----|----|
| 55 | wpd | Not properly withheld under the work-product doctrine.  EPA's barebones description in the privilege log does not provide any context for this document's creation, or even indicate that its author was an attorney.  The document does no more than identify candidates for potential enforcement actions, without clarifying whether it was a chart prepared for organizational purposes or something prepared for use in specific cases.  As such, EPA has not demonstrated that the document qualifies for work-product protection. |

| 113 | wpd | Properly withheld as work product.  The document contains handwritten notes listing specific actions that EPA was contemplating initiating at the time, as well as the Agency's view on the extent of liability at issue. Furthermore, the document lists other actions that may already have been filed, and includes notes of the legal and policy considerations underlying the enforcement decisions. Because foreseeable litigation was a substantial motivating factor in the document's creation, it is protected by the work-product doctrine. |
| --- | --- | --- |
| 179.17 | deliberative process privilege ("dpp") | The document features handwritten policy proposals by one author, with marginal, handwritten comments inserted by another. Specifically, the document contains proposals for factors that EPA should consider in settlement negotiations, and a reader's brief comments expressing agreement with some of the factors suggested.  According to the Nakayama Declaration (¶ 32), the document was prepared in advance of an interim agency policy finalized on September 30, 1997. Hence, the document was prepared as part of ongoing discussions as to a then-unsettled agency policy.  Furthermore, the contents reflect the give-and-take of the consultative process.  See Coastal States.  EPA claims that the listed approaches were neither adopted in the interim policy nor followed as precedent since; assuming that is so, the document has been properly withheld. |

| 462 | acp | This entry actually consists of three documents: two memos (one each from counsel in Regions IV and IX), and draft language proposed by attorneys at the Department of Justice.  The documents are protected by the attorney-client privilege because they communicate confidential information as to the Justice Department's view on the enforceability of a certain kind of order, the language recommended by DOJ for rendering such orders enforceable, and advice as to when and how to go about using those orders.  Both the authors and the recipients of the two memos (and the accompanying draft language) are identified.  Likewise, there is no indication that the documents were transmitted to anyone other than agency lawyers and agency officials authorized to act on this subject matter. |
| --- | --- | --- |
| 538 | acp; wpd | Properly withheld as attorney work product.  The memo was clearly prepared with a particular settlement negotiation in mind and in an effort to avoid litigation with a specific party.  See Table T-1, P.L. No. 546.  In advocating for a settlement, the memo analyzes the risks of litigation and thus expresses the attorney's mental impressions and opinions about the case.  Hence, the document qualifies for work-product protection.  The document is also protected by the attorney-client privilege, since it is a communication from the attorney to the agency client providing legal advice as to the desirability of a settlement. |

| 541 | acp; wpd | This memorandum evaluates potential changes to the Model Consent Decree utilized by EPA. The key question for purposes of the attorney-client privilege is whether the memo's author is acting in his role as a legal advisor, as opposed to offering policy and/or regulatory advice. The Court acknowledged in its Memorandum Opinion that "the line between those functions is not always easily ascertainable." 2006 WL 2616187, at *15.  This memo falls on the "legal" side of the line because, though the author is not interpreting what the law requires or explaining how the agency can best comply with the law, he is identifying flaws in a current legal document and recommending changes to that document to facilitate the possibility of settlement in a set of future cases.  As a confidential communication with an identifiable attorney author and agency recipients, the document is protected by the attorney-client privilege.  See Table T-1, P.L. No. 2358.  At the same time, this as an example of the occasionally bizarre interplay between the attorney-client privilege and work-product doctrine.  See Mem. Op., 2006 WL 2616187, at *17.  The memo addresses a broad category of settlements and enforcement actions generally, whereas the work-product doctrine requires "some specificity regarding a particular party, offense, or proceeding." Id. Even under Delaney and Schiller, the memo was not prepared with foreseeable adversarial proceedings or a particular set of settlement negotiations in mind.  See id. at *11 (work-product doctrine covers "the development and enforcement of "specific Consent Decrees").  Hence, it does not qualify for work-product protection. |
|-----|----------|------------------------------------------------------------------------|

| 797 | acp; wpd | This document is an e-mail marked "Confidential, Attorney Client Communication" from which EPA has redacted two bulleted paragraphs. The first of the two paragraphs is properly redacted under the attorney-client privilege because it communicates confidential information obtained from the agency client at a meeting of branch chiefs and there is an identifiable list of agency recipients. The second paragraph, in contrast, is not protected by the attorney-client privilege because there is no indication that the information provided - - reporting of the D.C. Circuit's decision in this case - - was confidential. The two paragraphs are likewise not protected work product. The paragraphs appear designed to inform the attendees and recipients of recent court decisions, without reference to any particular or foreseeable prospects of litigation. Nothing in the text of the two paragraphs or their placement in an e-mail "update" indicates that they were "created because of actual or impending litigation." In re Sealed Case, 146 F.3d at 884. |
| --- | --- | --- |
| 964 | dpp | Properly withheld under the deliberative-process privilege. This document features suggested changes to a section of proposed guidance for handling CERCLA settlements at private sites where the PRP is a federal entity. That guidance, according to EPA, was never issued because of disagreements between EPA and DOJ; moreover, EPA has not applied this document either formally or informally. The document therefore qualifies for protection, since it represents the informal policy views of the drafter and editor and makes recommendations for a policy still in development, rather than simply explaining or applying existing agency policy. |

| 987 | acp; wpd | The first two of the three e-mail messages are protected by the attorney-client privilege. Those messages are directed to identifiable recipients, include confidential information, and discuss potential legal problems noted by the Department of Justice.  In short, the authors act as legal advisors, rather than regulators or enforcers of the law.  The third e-mail does not transmit confidential information and does not qualify for the privilege.  None of the e-mails is protected under the work-product doctrine.  Although the authors address (or prepare to address) concrete legal issues, their discussion does not pertain to specific litigation or enforcement actions. |
|---|---|---|
| 1337 | acp; wpd | Protected work product because it was prepared in advance of a meeting regarding the enforcement of a specific UAO against specific PRPs.  Although much of the document is a factual recitation (which is protected), page 12 also features the attorney-author's legal opinion and is thus entitled to greater protection.  EPA has not, however, carried its burden of establishing that the document is protected by the attorney-client privilege.  EPA identifies the author only as a "case attorney" and the recipients as "Region 1 management."  Neither this description nor anything about the document's format or tone suffices to demonstrate that the document was "shielded from exposure to non-essential third-parties."  See Mem. Op., 2006 WL 2616187, at *16.  Hence, EPA has not established that the document was a confidential communication between attorney and client or among agency attorneys acting in a legal capacity. |
| 1386 | wpd | Properly withheld as work product because it was prepared in advance of a particular UAO with respect to a specific site and PRP. |

| 1561 | wpd | Properly withheld as protected attorney work product. The language of the document reveals that the self-described "chronology" relates to then-continuing enforcement proceedings involving a specific PRP and a specific site - - "OU 1" (Operable Unit 1). Furthermore, in reciting the key events in the timeline, the author occasionally assesses the soundness of the PRP's then-current position with respect to positions that it had taken in the past. The document is thus sufficiently specific to qualify for protection as work product. |
| --- | --- | --- |
| 2227 | wpd | The handwritten notes and comments may be redacted under the work-product doctrine because they were made in preparing a specific UAO against a particular PRP. Those aspects of the typed UAO that address the specific site, violation, and PRP can also be redacted by EPA. On the other hand, much of the document appears to be an unmodified model UAO that makes no reference to the specific enforcement proceeding. To the extent that the drafter simply cut and pasted pieces from a model UAO, those portions are not protected and must be disclosed. Compare Table T-1, P.L. No. 2814, with Table T-1, P.L. No. 4771. |
| 2528 | dpp | The portions highlighted by EPA are properly redacted under the deliberative-process privilege. EPA has identified an agency decisionmaking process to which this correspondence relates (to wit, a final policy adopted in 1997). In addition, the two paragraphs at issue are clearly deliberative in nature insofar as they weigh possible pros and cons of positions espoused by different EPA divisions and DOJ. EPA represents that these two paragraphs were not adopted as part of the 1997 policy and have not been followed as precedent since their drafting; hence, the redactions are proper. |

| 3119 | wpd | This document does not qualify as work product because it does nothing more than transmit the position of the respondents to a UAO.  In short, the e-mail is a transmittal note containing no legal substance. |
|------|-----|-----|
| 3169 | wpd | This memo prepared by an EPA "Remedial Project Manager" summarizes a conference call between that Manager and representatives of a PRP.  The document is properly withheld under the work-product doctrine because EPA has made a sufficient showing of specificity to satisfy that doctrine's requirements.  In particular, the memo concerns specific PRPs and a specific landfill site; it also addresses one PRP's apparent hesitance in complying with a UAO, thus establishing that enforcement proceedings were foreseeable. |
| 3215 | wpd | This document constitutes what EPA describes as a "synthesis of information" relating to the PRPs at a specific site.  Prepared by an assistant regional counsel, the document consists largely of charts, lists of numerical information for which a "key" is provided at the outset, basic information such as the addresses of the PRPs, and handwritten notes updating or correcting some of that information.  EPA has failed to demonstrate that the document is protected work product.  Although the document undoubtedly refers to specific PRPs and a specific site, there is no indication that the document was prepared with future litigation or administrative proceedings of an adversarial nature in mind.  See Table T-1, P.L. No. 1094.  The document's role as a "synthesis" of existing information about an existing site undercuts the notion that it was prepared in anticipation of future litigation.  Cf. Table T-1, P.L. No. 4762. |

| 3222 | acp | Properly withheld as protected by the attorney-client privilege.  This document is a draft memo from EPA attorneys to an identifiable group of agency officials.  It discusses a number of potential legal challenges to the issuance of section 106 orders in a specific context.  In addressing the merits of these potentials challenges under existing case law, the document's authors are providing legal (rather than policy or regulatory) advice and are thus acting as private attorneys would.  Hence, the document is properly withheld. |
| --- | --- | --- |
| 3257 | wpd | Properly withheld under the work-product doctrine.  The document is a cover memorandum to an agency attorney's summary and evaluation of objections made by a specific PRP.  The memo contains sufficient specificity to qualify for protection because it concerns ongoing administrative proceedings involving a specific PRP.  In other words, it addresses issues that have arisen in the course of an investigation or enforcement proceeding regarding a specific site, PRP, or violation.  The tone and contents of the memo indicate that the continued possibility of adversarial proceedings involving this PRP played a substantial role in its creation. |
| 3290 | wpd | Properly withheld as work product because it was created in connection with a specific site, UAO ("Carter 106 Order"), and group of PRPs.  The tone and contents of the document suffice to show that it was prepared either by or for an agency attorney with respect to a particular section 106 order. |

| 3537 | wpd | Properly withheld as work product because it was created by an agency attorney in connection with a specific site and PRPs. More precisely, the document is a cover memorandum recommending the issuance of an amended UAO to additional PRPs for an existing site.  The document satisfies the specificity requirement and thus qualifies for work-product protection. |
| 3595 | wpd | Properly withheld as work product because it was created in connection with a specific site, UAO, and PRP.  The document identifies the site, explains the PRP's position, and announces the issuance of a UAO. |
| 3681 | wpd | This "enforcement/legal plan" for a specific site is properly withheld as attorney work product.  The document is explicitly designed to further a specific enforcement action and prepare for future litigation.  It provides both factual background and legal analysis, and also recommends concrete enforcement measures. As a document prepared in anticipation of foreseeable litigation or adversarial administrative proceedings, the document qualifies for protection. |
| 4094 | wpd | This document consists of a series of e-mails and a draft letter to a property owner regarding settlement negotiations.  The document is protected in its entirety because it was prepared in connection with specific settlement negotiations with a specific party and in an effort to avoid litigation. |

| 4254 | wpd | Protected work product because it was prepared in connection with ongoing settlement negotiations (and a possible consent decree) with a specific PRP, site, and UAO. Although only one portion of the document explicitly refers to "enforcement strategy and status," the whole document is nevertheless protected because it was prepared in its entirety with an eye toward specific settlement negotiations. |
| --- | --- | --- |
| 4298 | wpd | This document consists of two transmittal e-mails among EPA Region 9 staff and a draft letter warning a specific PRP of its failure to comply with an existing UAO.  Because the document was prepared in connection with a specific UAO, PRP, and enforcement proceeding, it has properly been withheld under the work-product doctrine. |
| 4302 | wpd | Protected in part by the work-product doctrine. Both the cover memorandum prepared by the agency attorney and the case-specific sections of the administrative order qualify for protection, since they were prepared in advance of, and recommend issuance of, an administrative order against a specific party. As that memo recognizes, however, large parts of the attached draft order are taken directly from the agency's model order without modification.  As with P.L. No. 2227 supra, portions of the draft order that have simply been cut and pasted from a model UAO lack the specificity required to invoke the work-product doctrine and therefore must be disclosed. |

| 4506 | dpp | | This memorandum from a CERCLA workgroup is one of approximately twenty identically described documents in EPA's revised privilege log.  See P.L. Nos. 1669, 1670, 1671, 1686, 1842, 1891, 1892, 2591, 4504, 4506, 4511, 4516, 4517, 4661, 4662, 4663, 4664, 4665, 4666, 4499.  According to EPA, the memorandum is on the same topic as P.L. No. 1842 in Table T-1, which the Court found recommended new and revised policies and thus qualified for the deliberative-process privilege so long as it had not been adopted as agency policy or followed as precedent.  The memo addresses recent cases that had called into question the propriety of joint and several liability under CERCLA, and evaluates the potential effects of those court rulings on CERCLA enforcement.  See Nakayama Decl. ¶ 44.  Although the memo could be viewed as "postdecisional" insofar as it defends the EPA's pre-existing policy, it is more accurately characterized as "discuss[ing] the relative pros and cons of a specific approach" - - to wit, continued defense of joint and several liability despite three recent court decisions.  See Mem. Op., 2006 WL 2616187, at *5.  Indeed, the memo qualifies as "recommendatory in nature" because it advocates a specific legal and policy position in the face of the court rulings and apparent resistance from what it describes as "certain Administration initiatives."  Finally, EPA has shown that the memo was part of a deliberative process that began as a reaction to adverse court rulings.  If the reasoning set forth in the memo has in fact not been adopted, then the document is properly withheld. |

| 4609 | dpp | GE does not object to EPA's withholding of documents of this type.  See GE's Objections at 11.  This document, a draft of revisions to a model UAO, is similar to P.L. No. 4794 in Table T-1, which the Court concluded was not protected by the deliberative-process privilege. The same conclusion follows here with respect to the bulk of the document, which EPA claims to have already released.  But EPA seeks to redact selected portions, and has carried its burden of demonstrating that many of the redacted portions are in fact privileged. Although the sections that EPA seeks to redact include substantive language, and are authoritative rather than recommendatory in tone, the accompanying footnotes explain the process by which the author arrived at that language. The text and accompanying footnotes, read together, thus reveal the inner workings of the agency, and in particular agency deliberations.  Exposure of those deliberations could be expected to chill future agency debates.  If the redacted language has in fact not been adopted as part of the new model UAO or otherwise followed as precedent, then the highlighted portions are properly withheld. |

| 4634 | dpp | This is a draft guidance document prepared on June 29, 2004, in advance of an agency policy adopted on August 9, 2005.  <u>See</u> Nakayama Decl. ¶¶ 20-21.  EPA has released part of the document, but seeks to withhold certain sections that it claims are deliberative in nature and were not incorporated into the final agency policy.  EPA has met its burden of pinpointing an agency decision to which the memo contributed, and has also asserted through the Nakayama Declaration that the redactions reflect "concepts still under consideration and that were not adopted in the final guidance." <u>Id.</u> ¶ 22.  The closer question is whether the redacted portions are truly deliberative as a discussion of competing policy options, or whether they instead merely reaffirm longstanding agency policy.  <u>Cf.</u> Table T-1, P.L. No. 5147.  The Court concludes that the redacted portions are sufficiently deliberative in nature to qualify for the privilege.  The language used in those portions, while evaluating past and existing policy, is decidedly forward-looking in tone, recommending what EPA "should" do and what factors learned from past experience "should" be considered.  The document does not, therefore, simply apply existing policy to a concrete factual setting.  Rather, its recommendatory tone supports EPA's privilege claim and, with the other factors above, suffices to justify the redactions. |
|------|-----|------|

| 4777 | acp; dpp | This document, one of many drafts of proposed guidance on section 106 enforcement that was never issued, is not protected by the attorney-client privilege.  Although the document is a communication among agency officials and counsel that includes substantive legal analysis, other prerequisites are lacking. For one thing, there is no indication that the information was or has since been treated as confidential.  More importantly, to the extent the document provides legal analysis, that analysis is supplied in order to further specific policy and regulatory goals.  The purpose of the document, evident from its label and tone, was to provide "guidance" on how to enforce the law to best meet those goals.  That guidance explicitly aimed to establish "a clearly enunciated policy" on damages and civil penalties, pg. 4, which exemplifies the very "establishment of . . . agency policy" and "assessment of penalties" that the Court has observed private attorneys do not engage in. <u>See</u> Mem. Op., 2006 WL 2616187, at *16. The document is, however, protected by the deliberative-process privilege.  EPA points to a lengthy but fruitless years-long discussion among EPA and DOJ officials as the particular "deliberative process" in question.  The Nakayama Declaration (¶ 30 ) places the document in the context of a consultative process both within EPA and between EPA and DOJ as to the appropriate substance and style of the proposed guidance.  Moreover, release of this and similar documents would likely reveal the unadopted positions of agency officials.  The fact that the guidance was never issued does not preclude EPA from asserting the deliberative-process privilege. <u>See Judicial Watch, Inc. v. Clinton</u>, 880 F. Supp. 1, 13 (D.D.C. 1995) .  Rather, that fact reinforces the deliberative nature of the documents and supports the conclusion that the document is privileged. |

| 4802 | acp; wpd | Protected by the attorney-client privilege because the e-mail messages were prepared by agency officials, were transmitted to an identifiable list of recipients, and discuss legal strategy with regard to ongoing and future litigation.  For essentially the same reasons, and because the discussion relates to specific issues in particular cases, the document is also protected work product. |
| --- | --- | --- |
| 4849 | acp; wpd | This chain of e-mail correspondence is properly withheld under both the attorney-client privilege and the work-product doctrine for essentially the reasons stated with respect to P.L. No. 4802 supra. |
| 4889 | acp; dpp | This e-mail chain, though not acknowledged as such in EPA's privilege log, actually contains two sets of e-mails.  No description for the second set (found at pages A0015291-A0015293) has been provided, and those pages should accordingly be produced.  The remainder of the document is protected by the attorney-client privilege, since it is a communication among agency attorneys that contains legal analysis of the agency's statutory authority and potential litigation risks.  Because the correspondence highlights and explains disagreement among agency lawyers as to the appropriate enforcement policy, and because EPA has identified the final policy to which the debate contributed, the document is also protected by the deliberative-process privilege (assuming that the rationale set forth in the e-mails has not been adopted or followed since). |

| 5211 | dpp | Properly redacted under the deliberative-process privilege.  EPA has identified a final agency policy to which the document contributed - - an interim policy finalized on September 30, 1997.  Furthermore, the redacted portions reflect internal agency debate on what future policy should be, rather than an application of existing law or policy.  If, as EPA claims, the redacted portions do not reflect agency policy and have not been adopted as such, they are properly withheld. |
| --- | --- | --- |
| 5255 | acp; wpd | Properly withheld under the work-product doctrine as an attorney's comments on a draft brief prepared in a specific case.  Likewise, the document is protected by the attorney-client privilege because it is a communication between agency attorneys similar to that of private attorneys, has an identifiable author and recipient, and was marked to be treated as confidential.  See Mem. Op., 2006 WL 2616187, at *14. |
| 5408 | acp; wpd | Properly withheld under the work-product doctrine.  This lengthy report was clearly prepared by agency attorneys in anticipation of litigation and/or enforcement actions against specific PRPs for a specific site.  EPA has not, however, met its burden of establishing that the attorney-client privilege applies.  Although the document is marked "confidential," neither in the document itself nor in the privilege log has EPA provided a list of recipients.  Accordingly, the Court cannot determine whether "non-essential third-parties" have been made privy to the document.  See Mem. Op., 2006 WL 26161787, at *16. |
| 5522 | wpd | Protected under the work-product doctrine because it was prepared in advance of, and recommends pursuit of, specific enforcement methods against a particular PRP at a particular site. |

| 5531 | wpd | Properly withheld under the work-product doctrine.  This cover memorandum, though light on content, does mention one issue of substance.  Since it was prepared by agency counsel with regard to a specific UAO to be issued to a specific party at a specific site, the document is protected. |
|------|-----|---------------------------------|
| 5803 | wpd | Properly withheld as attorney work product.  Both pieces of correspondence were prepared in connection with a specific UAO, enforcement action, and site - - the Toledo Tie Treatment Plant Site.  They therefore satisfy the specificity requirement and qualify as protected attorney work product. |
| 5903 | wpd | This document is a brief submitted by a PRP in proceedings before the EPA's Environmental Appeals Board.  EPA attorneys underlined (or otherwise marked) portions of the brief, and added two written comments in the 20-page document.  The only portions of the document that were prepared <u>by EPA</u> in advance of litigation are the underlining and related comments, as well as the cover page (which contains no substance and should be produced).  The remainder of the brief was prepared by counsel for the PRP.  Accordingly, EPA must produce the brief in redacted form.  Those redactions should leave in tact as much text as possible, removing only the attorneys' comments and the underlining or marginal markings that indicate that the attorney viewed a particular fact or argument as important.  Indeed, except for the two annotated comments, the underlining and other markings are only very marginally protected by the work-product doctrine.  In all other respects, the document is not protected. |

| 6058 | wpd; acp | Properly withheld as attorney work product because it is a letter drafted by agency attorneys in contemplation of specific, and in this case potentially imminent, litigation and/or settlement.  The document is also protected by the attorney-client privilege.  It consists of a draft letter and cover memorandum that constitute a communication among government attorneys made for a traditional legal purpose - - to wit, obtaining comments on a rough draft of a letter to be sent to encourage settlement.  Given that the letter and cover memo had an identifiable attorney author and recipient, EPA has met its burden of establishing that the privilege applies. |
|---|---|---|
| 6085 | wpd | EPA has not demonstrated that this document is entitled to work-product protection.  It is not clear, as an initial matter, that the document, an "enforcement plan and report" for a particular site, was drafted by or for an attorney.  The document does not include information that is inherently legal in nature or that would otherwise suggest that it was prepared with litigation or adversarial administrative proceedings in mind.  Even if it has satisfied the specificity requirement, EPA, as the party invoking the doctrine, must do more to demonstrate that it in fact applies.  Hence, the document must be produced. |

| 6161 | acp | This document consists of three e-mails from agency officials.  The earliest one notifies the identifiable recipients of a proposed enforcement action and the background of the case, the second one transmits that e-mail to another official, and the third one comments on the proposed enforcement action, raising concerns about the equities of enforcement and a court's potential view of the decision.  The key question here, as with P.L. No. 541 supra, is whether the attorneys are acting in their role as legal advisors, as opposed to offering policy and/or regulatory advice.  Although the question is a close one, the Court concludes that the e-mails sufficiently speak to potential legal (and litigation-related) issues to qualify for the privilege.  Specifically, the first author points to possible grounds on which PRPs may object to the enforcement action, and the third sender raises concerns about how a reviewing court would perceive the agency's conduct.  Hence, the document is properly withheld. |
|------|-----|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 6299 | wpd | Properly withheld under the work-product doctrine.  This memorandum prepared by an agency attorney contains the attorney's opinions and assessments and seeks approval of a UAO against specific PRPs at a specific site. |
| 6330 | wpd | Although this series of documents was prepared in advance of, or at least in connection with, the issuance of a UAO against specific PRPs at a specific site, there is no indication either in the privilege log or in the documents themselves that they represent the work of an attorney.  Because this basic prerequisite to invoking the work-product doctrine has not been satisfied, the documents must be produced. |

| 6436 | acp; wpd | This short e-mail message from one agency official to another qualifies for protection under the work-product doctrine because it was prepared in connection with a specific case and in advance of settlement negotiations and/or an enforcement action.  The message is also protected by the attorney-client privilege.  The message communicates what was ostensibly confidential information - - EPA's recently changed position on reducing a monetary penalty in a specific case - - to an identified agency recipient. |
| --- | --- | --- |
| 6444 | wpd | This document consists of a series of e-mails commenting on a memorandum that raised concerns about the enforceability of a specific UAO.  Because the original memo and the ensuing correspondence were all drafted in connection with a specific UAO at a specific site, they qualify for work-product protection. |
| 6604 | acp; wpd | This e-mail exchange is properly withheld under both the work-product doctrine and the attorney-client privilege.  The substantive e-mail was clearly prepared in anticipation of a specific Supreme Court case.  Moreover, the e-mail transmits confidential information in the form of previous changes to the government's brief, further suggestions in that regard, and the identity of government lawyers who had made certain changes.  Hence, both protections are fully applicable. |
| 6768 | wpd | This memorandum summarizes then-existing problems with CERCLA enforcement and recommends a particular solution.  There is, however, no indication that this memo was prepared with an eye toward specific litigation or, even under Delaney and Schiller, that it was prepared with a particular class of cases or legal challenges in mind.  Rather, the memo amounts to a broad policy discussion designed to advance regulatory goals.  It does not qualify for work-product protection. |